FILED
Court Administrator

| | | |
|---|---|---|
| STATE OF MINNESOTA | JUL 2 3, 2012 | DISTRICT COURT |
| COUNTY OF RAMSEY | By _____ Deputy | SECOND JUDICIAL DISTRICT |

---

| | | |
|---|---|---|
| Michael Brodkorb, | ) | Case type: Employment |
| | ) | |
| Plaintiff, | ) | Case No.: 62CV-12-5979 |
| vs. | ) | |
| | ) | **SUMMONS** |
| State of Minnesota, the Minnesota | ) | |
| | ) | |
| Senate, and Cal Ludeman, | ) | |
| | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

---

TO: THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANTS:

1.    **YOU ARE BEING SUED.**  The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

2.    **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons Philip G. Villaume , Villaume & Schiek, P.A. located at BLN Office Park, 2051 Killebrew Drive, Bloomington, MN 55424.

3.    **YOU MUST RESPOND TO EACH CLAIM.**  The Answer is your written response to the Plaintiff's Complaint.  In your Answer you must state whether you agree or disagree with each paragraph of the Complaint.  If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.    **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.**  If you do not Answer within 20 days, you will lose this case.  You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint.  If you do not want to contest the claims stated in the Complaint, you do not need to respond.  A Default Judgment can then be entered against you for the relief requested in the Complaint.



EXHIBIT
A

1

5.    **LEGAL ASSISTANCE.** You may with to get legal help from a lawyer.  If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance.  **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.    **ALTERNATIVE DISPUTE RESOLUTION.**  The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.   You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: July 23, 2012                     Respectfully Submitted,

                                         **VILLAUME & SCHIEK, P.A.**


                                         _____
                                         Philip G. Villaume (#112859)
                                         Jeffrey D. Schiek (#0305455)
                                         Attorneys for Plaintiff
                                         BLN Office Park
                                         2051 Killebrew Drive
                                         Bloomington, MN 55424
                                         952-851-9500


                                         **WALSH & GAERTNER, P.A.**


                                         _____
                                         Gregory J. Walsh (#291705)
                                         Attorneys for Plaintiff
                                         Walsh & Gaertner Building
                                         24 East Fourth Street
                                         St. Paul, MN 55101
                                         651-228-9968

2

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                                  SECOND JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| Michael Brodkorb, | ) | Case type: Employment |
| | ) | |
| Plaintiff, | ) | Case No.: |
| vs. | ) | |
| | ) | **COMPLAINT** |
| State of Minnesota, the Minnesota | ) | |
| | ) | |
| Senate, and Cal Ludeman, | ) | |
| | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

---

COMES NOW the Plaintiff, Michael Brodkorb, by and through his attorneys, Philip G. Villaume, Jeffrey D. Schiek, and Gregory J. Walsh, and for a Complaint against the Defendants, the State of Minnesota, the Minnesota Senate, and Cal Ludeman, states and alleges as follows:

## PARTIES

1.    The Plaintiff, Michael Brodkorb (hereinafter also referred to as "Brodkorb" or "Plaintiff") is, and at all times relevant to the actions complained of herein has been, a resident of the City of Eagan, County of Dakota, State of Minnesota.

2.    That Defendant, the Minnesota Senate of the State of Minnesota (hereinafter also collectively referred to as "the Minnesota Senate" or "Defendant") is headquartered in the City of St. Paul, County of Ramsey, State of Minnesota.  Pursuant to Minn. Stat. § 3.732, subd. 1, definitions section, the Minnesota Senate is an entity of the State of Minnesota.

1

3.  That the Defendant, Cal Ludeman, individually (hereinafter also referred to as "Ludeman"), is, and at all times relevant to the actions complained of herein has been, a resident of the City of Tracy, County of Lyon, State of Minnesota.

## JURISDICTION

4.  This court has jurisdiction over this matter because the Minnesota Senate is located in Ramsey County, Minnesota and conducts a significant amount of business in Ramsey County, Minnesota.  Further, this court has pendant jurisdiction over all federal claims.

## FACTS

5.  In December of 2008, Senate Minority Leader David Senjem hired Brodkorb as Communications Director for the Minnesota Senate Minority Caucus.

6.  In 2010, after Republicans took partisan control of the Minnesota Senate, Senator Amy Koch (hereinafter "Senator Koch") was elected the Majority Leader of the Minnesota Senate.

7.  Brodkorb transitioned to the role of Communications Director for the Minnesota Senate Majority Caucus, filling the position created by the previous administration, which was controlled by the Senate Democratic Farmer-Labor Party.

8.  Upon information and belief, in September of 2011, Deputy Majority Leader Geoff Michel, through Chief of Staff Cullen Sheehan, became aware that Brodkorb was involved in an intimate relationship with Senator Koch.

9.  On the evening of December 14, 2011, Senator Michel, along with Senator Chris Gerlach, Senator Claire Robling, and Senator David Hahn met with Senator Koch at the Minneapolis Club.

10.    The purpose of the December 14, 2011 meeting was to discuss the above Senators'
       knowledge of an intimate relationship between Senator Koch and Brodkorb, and their
       request that she resign immediately and Brodkorb be terminated from his position.

11.    Senator David Hahn specifically stated at the meeting that Brodkorb would need to be
       terminated from his position, and that Ludeman, Secretary of the Minnesota Senate,
       would be contacted after Senator Koch resigned so that Ludeman could terminate
       Brodkorb.

12.    The same group of Senators met the following morning, December 15, 2011, and had
       further discussions that included requesting Senator Koch step down as Majority
       Leader.

13.    Additional conversations took place between the above mentioned Senators regarding
       the employment status of Brodkorb, and the Senators determined that Brodkorb
       needed to be terminated because of his intimate relationship with Senator Koch.

14.    On December 15, 2011, Senator Koch announced her resignation from her position as
       Senate Majority Leader and indicated she would not seek re-election.

15.    Senator Koch will testify that Brodkorb's employment was terminated by the
       Republican Leadership because of the intimate relationship between Senator Koch and
       Brodkorb, as will other legislators and legislative staffers.

16.    On December 16, 2011, Ludeman terminated Brodkorb at Moose Country in Mendota
       Heights, MN (a public restaurant) and informed Brodkorb that he was terminated from
       his position with the Senate, effective immediately.

3

17.   At this meeting on December 16, 2011, Ludeman stated: "This is off the record Michael, but those . . . there's two issues that related to the events of yesterday and the question has been posed as early as last night about your status..."

18.   The two issues, referred to by Cal Ludeman, were the resignation of Senator Koch as Senate Majority Leader the previous day, and the fact that Brodkorb had an intimate relationship with Senator Koch.

19.   Prior to illegally terminating Brodkorb, Ludeman and Republican Leaders were aware that there was an intimate relationship between Brodkorb and Senator Koch.

20.   Ludeman did not offer Brodkorb the opportunity to transfer to a different position or accept a different position before illegally terminating Brodkorb from his position as Director of Communications on December 16, 2011.

21.   Similarly situated female legislative employees, from both political parties, were not terminated from their employment positions despite intimate relationships with male legislators.

22.   Brodkorb was treated differently in his employment than similarly situated female employees.

23.   Brodkorb was terminated based on his gender.

24.   On or about March 13, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter, which is required by State statute, stating that the Minnesota Senate had discriminated against Brodkorb based on his gender in violation of Federal, State, and local laws.

25.   On or about March 14, 2012, Ludeman issued a press release to the general public regarding Brodkorb.

4

26. Ludeman, stated in his March 14, 2012, press release which was published to third parties, "Despite Mr. Brodkorb's efforts to disrupt the work of the Senate in the current legislative session, to distract members of the Senate, to extort a payment from the Senate, and to try his so-called claims in the media, the Senate will not allow that to succeed."

27. Ludeman also stated on or about March 15, 2012, to a newspaper reporter (the Star Tribune), that was published to third parties, that Brodkorb was trying to "blackmail" the Minnesota Senate. Specifically, Ludeman stated, that Brodkorb was attempting to "'blackmail' the Senate, disrupt its work, and 'extort' payment."

28. Stating that a person is extorting or blackmailing another person is a criminal act and is defamation per se and general damages are presumed.

29. On or about April 5, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter, which is required by State statute, that there were additional claims for defamation.

30. On April 13, 2012, multiple newspapers and media outlets (a/k/a "news articles") publicized that Brodkorb applied for unemployment benefits, was denied unemployment benefits, and appealed the denial of his unemployment benefits.

31. Ludeman was the individual who disseminated Brodkorb's unemployment benefits information to third parties, without Brodkorb's permission.

32. Shortly after December 16, 2011, Brodkorb did in fact apply for unemployment.

33. According to Minn. Stat. § 268.19, subd. 2(c), Brodkorb's unemployment information is "absolutely privileged", private data, and by releasing and disseminating said information, Ludeman and the Minnesota Senate are liable.

5

34. On or about June 25, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter, which is required by State statute, that there were additional claims for violating the unemployment statute and for violating Brodkorb's privacy rights.

35. On or about March 21, 2012, the Plaintiff filed a charge of discrimination with the EEOC.

36. The Plaintiff could initiate litigation of discrimination claims by filing a charge with the EEOC.

37. The charge was filed within 300 days after the Minnesota Senate took adverse action against the Plaintiff.

38. That shortly after March 21, 2012, pursuant to the work sharing agreement between the EEOC and the Minnesota Department of Human Rights, the Minnesota Department of Human Rights also received a cross complaint that was filed with the EEOC.

39. That on or about April 12, 2012, the Plaintiff requested a Right to Sue letter from the EEOC.

40. That on or about July 16, 2012, the Plaintiff received notice of dismissal of the charge from the U.S. Department of Justice, and was provided with notice of his right to file suit.

41. Plaintiff served the Defendants within ninety (90) days of receiving the right to file suit from the U.S. Department of Justice.

## COUNT I
## DEFENDANT THE MINNESOTA SENATE AND ITS EMPLOYEES
## VIOLATION OF MINN. STAT. § 363A.01 ET. SEQ. – MINNESOTA
## DEPARTMENT OF HUMAN RIGHTS ACT – STATE LAW

Plaintiff, for his first cause of action against the Minnesota Senate and its employees alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

42.    The Minnesota Senate is an employer under the Minnesota Department of Human Rights Act.

43.    The Plaintiff was at all times relevant to the Complaint, an employee under the Minnesota Department of Human Rights Act.

44.    The Plaintiff is a male, and is therefore a member of a protected class based on his gender.

45.    The Plaintiff was qualified to perform his job duties and responsibilities.

46.    That the Plaintiff had an intimate relationship with Senator Koch and that the Minnesota Senate knew that the Plaintiff had an intimate relationship with Senator Koch prior to his termination on or about December 16, 2011.

47.    That the Plaintiff was terminated by the Republican Leadership because of the intimate relationship between Senator Koch and Brodkorb.

48.    On December 16, 2011, Ludeman met with Brodkorb at Moose Country in Mendota Heights, MN (a public restaurant) and informed Brodkorb that he was terminated from his position with the Senate, effective immediately.

49. Prior to illegally terminating the Plaintiff, Ludeman did not offer Brodkorb the opportunity to transfer to a different position or accept a different position before illegally terminating Brodkorb from his position as Director of Communications on December 16, 2011.

50. Similarly situated female legislative employees from both political parties were not terminated from their employment positions despite having intimate relationships with male legislators.

51. Brodkorb was treated differently in his employment than similarly situated female employees.

52. Brodkorb was terminated based on his gender.

53. The Plaintiff's similarly situated female counterparts performed work that required substantially equal skill, effort, and responsibility to that of the Plaintiff.

54. The Plaintiff's similarly situated female counterparts performed their job duties under similar working conditions as the Plaintiff.

55. The Plaintiff is permitted to bring an action under the Minnesota Department of Human Rights Act.

56. The Minnesota Senate's actions as set forth above constitute gender discrimination in violation of the Minnesota Department of Human Rights Act.

57. As a result of the Minnesota Senate's actions, Plaintiff was caused to incur emotional distress.

58. As a result, the Plaintiff is entitled to recover all costs associated with this action, compensatory damages, punitive damages, and any other remedy this Court deems appropriate.

## COUNT II
## DEFENDANT THE MINNESOTA SENATE AND ITS EMPLOYEES
## VIOLATION OF ST. PAUL CODE ORDINANCES CHAPTER 183 ET. SEQ.

Plaintiff, for his second cause of action against the Minnesota Senate and its employees alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

59.   The Minnesota Senate is an employer under the St. Paul Code Ordinances Chapter 183.

60.   The Plaintiff was at all times relevant to the Complaint, an employee under the St. Paul Code Ordinance Chapter 183.

61.   The Plaintiff is a male, and is therefore a member of a protected class based on his gender.

62.   The Plaintiff was qualified to perform his job duties and responsibilities.

63.   That the Plaintiff had an intimate relationship with Senator Koch and that the Minnesota Senate knew that the Plaintiff had an intimate relationship with Senator Koch prior to his termination on or about December 16, 2011.

64.   That the Plaintiff was terminated by the Republican Leadership because of the intimate relationship between Senator Koch and Brodkorb.

65.   On December 16, 2011, Ludeman met with Brodkorb at Moose Country in Mendota Heights, MN (a public restaurant) and informed Brodkorb that he was terminated from his position with the Senate, effective immediately.

66. Prior to illegally terminating the Plaintiff, Ludeman did not offer Brodkorb the opportunity to transfer to a different position or accept a different position before illegally terminating Brodkorb from his position as Director of Communications on December 16, 2011.

67. Similarly situated female legislative employees, from both political parties, were not terminated from their employment positions despite having intimate relationships with male legislators.

68. Brodkorb was treated differently in his employment than similarly situated female employees.

69. Brodkorb was terminated based on his gender.

70. The Plaintiff's similarly situated female counterparts performed work that required substantially equal skill, effort, and responsibility to that of the Plaintiff.

71. The Plaintiff's similarly situated female counterparts performed their job duties under similar working conditions as the Plaintiff.

72. The Plaintiff is permitted to bring an action under the St. Paul Code Ordinances Chapter 183.

73. The Minnesota Senate's actions as set forth above constitute gender discrimination in violation of the St. Paul Code Ordinances Chapter 183.

74. As a result of the Minnesota Senate's actions, Plaintiff was caused to incur emotional distress.

75. As a result, the Plaintiff is entitled to recover all costs associated with this action, compensatory damages, punitive damages, and any other remedy this Court deems appropriate.

10

<u>COUNT III</u>
<u>DEFENDANT THE MINNESOTA SENATE AND ITS EMPLOYEES</u>
<u>VIOLATION OF - 42 U.S.C. § 2000E ET. SEQ. – FEDERAL LAW</u>

Plaintiff, for his third cause of action against the Minnesota Senate and its employees alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

76.     The Minnesota Senate is an employer under 42 U.S.C. § 2000e.

77.     The Plaintiff was at all times relevant to the Complaint, an employee under 42 U.S.C. § 2000e.

78.     The Minnesota Senate engaged in illegal gender discrimination against the Plaintiff on the basis of gender in violation of 42 U.S.C. § 2000e.

79.     The Plaintiff is a male, and is therefore a member of a protected class based on his gender.

80.     The Plaintiff was qualified to perform his job duties and responsibilities.

81.     That the Plaintiff had an intimate relationship with Senator Koch and that the Minnesota Senate knew that the Plaintiff had an intimate relationship with Senator Koch prior to his termination on or about December 16, 2011.

82.     That the Plaintiff was terminated by the Republican Leadership because of the intimate relationship between Senator Koch and Brodkorb.

83.     On December 16, 2011, Ludeman met with Brodkorb at Moose Country in Mendota Heights, MN (a public restaurant) and informed Brodkorb that he was terminated from his position with the Senate, effective immediately.

11

84.  Prior to illegally terminating the Plaintiff, Ludeman did not offer Brodkorb the
     opportunity to transfer to a different position or accept a different position before
     illegally terminating Brodkorb from his position as Director of Communications on
     December 16, 2011.

85.  Similarly situated female legislative employees, from both political parties, were not
     terminated from their employment positions despite having intimate relationships with
     male legislators.

86.  Brodkorb was treated differently in his employment than similarly situated female
     employees.

87.  Brodkorb was terminated based on his gender.

88.  The Plaintiff's similarly situated female counterparts performed work that required
     substantially equal skill, effort, and responsibility to that of the Plaintiff.

89.  The Plaintiff's similarly situated female counterparts performed their job duties under
     similar working conditions as the Plaintiff.

90.  The Plaintiff is permitted to bring an action under 42 U.S.C. § 2000e.

91.  The Minnesota Senate's actions as set forth above constitute gender discrimination in
     violation of 42 U.S.C. § 2000e.

92.  As a result of the Minnesota Senate's actions, Plaintiff was caused to incur emotional
     distress.

93.  As a result, the Plaintiff is entitled to recover all costs associated with this action,
     compensatory damages, punitive damages, and any other remedy this Court deems
     appropriate.

## COUNT IV
## DEFENDANT THE MINNESOTA SENATE AND ITS EMPLOYEES
## 42 U.S.C.A. § 1983– FEDERAL LAW

Plaintiff, for his fourth cause of action against the Minnesota Senate and its employees alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

94.    The Minnesota Senate engaged in illegal gender discrimination against the Plaintiff on the basis of sex in violation of 42 U.S.C. § 1983.

95.    The Plaintiff is a male, and is therefore a member of a protected class based on his gender.

96.    The Plaintiff was qualified to perform his job duties and responsibilities.

97.    That the Plaintiff had an intimate relationship with Senator Koch and that the Minnesota Senate knew that the Plaintiff had an intimate relationship with Senator Koch prior to his termination on or about December 16, 2011.

98.    That the Plaintiff was terminated by the Republican Leadership because of the intimate relationship between Senator Koch and Brodkorb.

99.    On December 16, 2011, Ludeman met with Brodkorb at a public restaurant and informed Brodkorb that he was terminated from his position with the Senate, effective immediately.

100.    Prior to illegally terminating the Plaintiff, Ludeman did not offer Brodkorb the opportunity to transfer to a different position or accept a different position before illegally terminating Brodkorb from his position as Director of Communications on December 16, 2011.

101. Similarly situated female legislative employees, from both political parties, were not terminated from their employment positions despite having intimate relationships with male legislators.

102. Brodkorb was treated differently in his employment than similarly situated female employees.

103. Brodkorb was terminated based on his gender.

104. The Plaintiff's similarly situated female counterparts performed work that required substantially equal skill, effort, and responsibility to that of the Plaintiff.

105. The Plaintiff's similarly situated female counterparts performed their job duties under similar working conditions as the Plaintiff.

106. The Plaintiff is permitted to bring an action under 42 U.S.C. § 1983.

107. The Defendants worked together to institute, engage in, and perpetrate gender discrimination in violation of 42 U.S.C. § 1983.

108. The Minnesota Senate's conduct was perpetrated with ill will, malice, and willful and reckless disregard for the Plaintiff's rights.

109. The Minnesota Senate's actions as set forth above constitute gender discrimination.

110. As a result of the Minnesota Senate's actions, Plaintiff was caused to incur emotional distress.

111. As a result, the Plaintiff is entitled to recover all costs associated with this action, compensatory damages, punitive damages, and any other remedy this Court deems appropriate.

## COUNT V
## DEFENDANT THE MINNESOTA SENATE AND ITS EMPLOYEES
## DEFAMATION/SLANDER – STATE LAW

Plaintiff, for his fifth cause of action against the Minnesota Senate and its employees alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

112.   On or about March 13, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter, which is required by State statute, stating that the Minnesota Senate had discriminated against Brodkorb based on his gender in violation of Federal, State, and local laws.

113.   On or about March 14, 2012, Ludeman, as an agent of the Minnesota Senate, issued a press release to the general public regarding Brodkorb.

114.   Ludeman, stated in his March 14, 2012, press release which was published to third parties, "Despite Mr. Brodkorb's efforts to disrupt the work of the Senate in the current legislative session, to distract members of the Senate, to extort a payment from the Senate, and to try his so-called claims in the media, the Senate will not allow that to succeed."

115.   Ludeman also stated on or about March 15, 2012, to the Star Tribune, that was published to third parties, that Brodkorb was trying to "blackmail" the Minnesota Senate. Specifically, Ludeman stated, that Brodkorb was attempting to "'blackmail' the Senate, disrupt its work, and 'extort' payment."

116. That on March 14, 2012 and March 15, 2012, Ludeman made false statements about the Plaintiff that were slanderous and libel statements toward and about the Plaintiff and in reckless disregard of the truth.

117. That stating that a person is extorting or blackmailing another person is a criminal act, and is defamation per se, and general damages are presumed.

118. That the statements made by Ludeman were broadcast and communicated to the public.

119. That the contents of Ludeman's statements made on March 14, 2012 and March 15, 2012 were false.

120. Such statements made by Ludeman were slanderous and defamatory per se because the false statements involved alleged criminal conducted, and were directed toward Brodkorb's business profession.

121. The above mentioned statements made by Ludeman were made in reckless disregard of the truth by an agent of the Minnesota Senate.

122. That the statements made by agents of the Minnesota Senate harmed Plaintiff's reputation and lowered him in the estimation of the political community and the community in general.

123. That the slanderous and defamatory statements caused permanent damage to the Plaintiff's professional reputation.

124. That the statements made by an agent of the Minnesota Senate were false, and were statements that were not factually true in nature.

125. As a result of the reckless disregard of the truth and facts by the Minnesota Senate, Plaintiff was caused to incur emotional distress.

126.   As a result, the Plaintiff is entitled to recover all costs associated with this action,
       compensatory damages, punitive damages, and any other remedy this Court deems
       appropriate.

## COUNT VI
## DEFENDANT THE MINNESOTA SENATE AND ITS EMPLOYEES
## VIOLATION OF MINN. STAT. § 268.19 ET. SEQ. – STATE LAW

Plaintiff, for his sixth cause of action against the Minnesota Senate and its employees
alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count
and further alleges that:

127.   On or about April 5, 2012, the Plaintiff served the Minnesota Senate with a Notice of
       Claims letter, which is required by State statute, that there were additional claims for
       defamation.

128.   On April 13, 2012, a news article publicized that Brodkorb applied for unemployment
       benefits, was denied unemployment benefits, and appealed the denial of
       unemployment benefits.

129.   Ludeman, as an agent of the Minnesota Senate, was the individual who disseminated
       Brodkorb's non-public unemployment benefits information to third parties, without
       Brodkorb's permission.

130.   Shortly after December 16, 2011, Brodkorb did in fact apply for unemployment.

131.   According to Minn. Stat. § 268.19, subd. 2(c), Brodkorb's unemployment information
       is "absolutely privileged" and by releasing said information, Ludeman and the
       Minnesota Senate are liable.

17

132.  On or about June 25, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter which is required by State statute that there were additional claims for violating the unemployment statute and for violating Brodkorb's privacy rights.

133.  As a result of the violation of Minn. Stat. § 268.19, et. seq., Plaintiff was caused to incur emotional distress.

134.  As a result, the Plaintiff is entitled to recover all costs associated with this action, compensatory damages, punitive damages, and any other remedy this Court deems appropriate.

## COUNT VII
## DEFENDANT THE MINNESOTA SENATE AND ITS EMPLOYEES
## INVASION OF PRIVACY CLAIM – STATE LAW

Plaintiff, for his seventh cause of action against the Minnesota Senate and its employees alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

135.  On or about April 5, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter which is required by State statute that there were additional claims for defamation.

136.  On April 13, 2012, a news article publicized that Brodkorb applied for unemployment benefits, was denied unemployment benefits, and appealed the denial of unemployment benefits.

137.  Ludeman was the individual who disseminated Brodkorb's unemployment information to third parties, without Brodkorb's permission.

138.  Shortly after December 16, 2011, Brodkorb did in fact apply for unemployment.

18

139. On or about June 25, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter which is required by State statute that there were additional claims for violating the unemployment statute and for violating Brodkorb's privacy rights.

140. On or about April 13, 2012, the Minnesota Senate invaded Plaintiff's right to privacy and solitude by, without Plaintiff's consent, releasing his unemployment information to the general public.

141. The disclosure of the Plaintiff's unemployment benefits information is highly offensive in nature, concerned the private life of the Plaintiff, and the information was released to the public.

142. As a result of the privacy violations, Plaintiff was caused to incur emotional distress.

143. As a result, the Plaintiff is entitled to recover all costs associated with this action, compensatory damages, punitive damages, and any other remedy this Court deems appropriate.

## COUNT VIII
## DEFENDANT CAL LUDEMAN, INDIVIDUALLY
## DEFAMATION/SLANDER – STATE LAW

Plaintiff, for his eighth cause of action against Cal Ludeman, individually alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

144. On or about March 13, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter which is required by State statute, stating that the Minnesota Senate had discriminated against Brodkorb based on his gender in violation of Federal, State, and local laws.

19

145. On or about March 14, 2012, Ludeman issued a press release to the general public regarding Brodkorb.

146. Ludeman, stated in his March 14, 2012, press release which was published to third parties, "Despite Mr. Brodkorb's efforts to disrupt the work of the Senate in the current legislative session, to distract members of the Senate, to extort a payment from the Senate, and to try his so-called claims in the media, the Senate will not allow that to succeed."

147. Ludeman also stated on or about March 15, 2012, to the Star Tribune, that was published to third parties, that Brodkorb was trying to "blackmail" the Minnesota Senate.  Specifically, Ludeman stated, that Brodkorb was attempting to "'blackmail' the Senate, disrupt its work, and 'extort' payment."

148. That on March 14, 2012 and March 15, 2012, Ludeman made false statements about the Plaintiff that were slanderous and libelous statements toward and about the Plaintiff and in reckless disregard of the truth.

149. That stating that a person is extorting or blackmailing another person is a criminal act and is defamation per se and general damages are presumed.

150. That the statements made by Ludeman were broadcast and communicated to the public.

151. That the contents of Ludeman's statements made on March 14, 2012 and March 15, 2012 were false.

152. Such statements made by Ludeman were slanderous and defamatory per se because the false statements involved alleged criminal conducted, and were directed toward Brodkorb's business profession.

153.   The mentioned acts on the part of Ludeman were the result of reckless disregard of the truth by Ludeman.

154.   That the statements made by Ludeman harmed Plaintiff's reputation and lowered him in the estimation of the political community and the community in general.

155.   That the slanderous and defamatory statements caused permanent damage to the Plaintiff's professional reputation.

156.   That the statements made by Ludeman were false, and were statements that were not factually true in nature.

157.   As a result of the reckless disregard of the truth and facts by Ludeman, Plaintiff was caused to incur emotional distress.

158.   As a result, the Plaintiff is entitled to recover all costs associated with this action, compensatory damages, punitive damages, and any other remedy this Court deems appropriate.

**COUNT IX**
**DEFENDANT CAL LUDEMAN, INDIVIDUALLY**
**VIOLATION OF MINN. STAT. § 268.19 ET. SEQ. – STATE LAW**

Plaintiff, for his ninth cause of action against Cal Ludeman, individually alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

159. On or about April 5, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter, which is required by State statute, that there were additional claims for defamation.

160. On April 13, 2012, a news article publicized that Brodkorb applied for unemployment benefits, was denied unemployment benefits, and appealed the denial of unemployment benefits.

161. Ludeman was the individual who disseminated Brodkorb's unemployment information to third parties, without Brodkorb's permission.

162. Shortly after December 16, 2011, Brodkorb did in fact apply for unemployment.

163. According to Minn. Stat. § 268.19, subd. 2(c), Brodkorb's unemployment information is "absolutely privileged" and by releasing said information, Ludeman is liable.

164. As a result of the violation of Minn. Stat. § 268.19, et. seq., Plaintiff was caused to incur emotional distress.

165. As a result, the Plaintiff is entitled to recover all costs associated with this action, compensatory damages, punitive damages, and any other remedy this Court deems appropriate.

22

<u>COUNT X</u>
<u>DEFENDANT CAL LUDEMAN, INDIVIDUALLY</u>
<u>INVASION OF PRIVACY CLAIM – STATE LAW</u>

Plaintiff, for his tenth cause of action against Cal Ludeman, individually alleges as follows:

Plaintiff incorporates all paragraphs of this complaint as if fully set forth under this count and further alleges that:

166.   On or about April 5, 2012, the Plaintiff served the Minnesota Senate with a Notice of Claims letter, which is required by State statute, that there were additional claims for defamation.

167.   On April 13, 2012, a news article publicized that Brodkorb applied for unemployment benefits, was denied unemployment benefits, and appealed the denial of unemployment benefits.

168.   Ludeman was the individual who disseminated Brodkorb's unemployment information to third parties, without Brodkorb's permission.

169.   Shortly after December 16, 2011, Brodkorb did in fact apply for unemployment.

170.   On or about April 13, 2012, Ludeman invaded Plaintiff's right to privacy and solitude by, without Plaintiff's consent, released his unemployment information to the general public.

171.   The release of the Plaintiff's unemployment information is highly offensive in nature, concerned the private life of the Plaintiff, and was released to the public.

172.   As a result of the privacy violations, Plaintiff was caused to incur emotional distress.

23

173. As a result, the Plaintiff is entitled to recover all costs associated with this action, compensatory damages, punitive damages, and any other remedy this Court deems appropriate.

## DAMAGES

174. As a result of the foregoing, Plaintiff has suffered past and future pecuniary losses, consequential damages, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, loss of attorneys' fees, and other non-pecuniary losses. All of these damages are in an amount yet to be determined but are believed to be in an amount exceeding $50,000.00.

WHEREFORE, Plaintiff prays for judgment against the Defendants for a reasonable amount, together with costs, disbursements, reasonable attorneys' fees, all damages enumerated under the Minnesota Department of Human Rights Act, St. Paul Code Ordinance Chapter 183, the Equal Employment Opportunity Commission Act, any other damages, statutory prejudgment interest herein, and any other relief deemed necessary to make the Plaintiff whole.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS SO TRIABLE.**

**PLAINTIFF RESERVES THE RIGHT TO AMEND HIS COMPLAINT TO ALLEGE**

**PUNITIVE DAMAGES.**

Dated: July 23, 2012

VILLAUME & SCHIEK, P.A.

Philip G. Villaume (#112859)
Jeffrey D. Schiek (#0305455)
Attorneys for Plaintiff
BLN Office Park
2051 Killebrew Drive, Suite 611
Bloomington, MN 55425
(952) 851-9500

WALSH & GAERTNER, P.A.

Gregory J. Walsh (#291705)
Attorneys for Plaintiff
24 East Fourth Street
St. Paul, MN 55101
651-228-9968

25

## ACKNOWLEDGMENT

IT IS HEREBY ACKNOWLEDGED that the allegations of this Complaint are well-grounded in fact and are warranted by existing law or good faith argument for its extensions modification reversal. Plaintiff brings this Complaint in good faith and not for any improper purposes.  The Plaintiff, acknowledge that costs, disbursements and reasonable attorney and witness fees may be awarded to Defendants.

Dated: July 23, 2012

VILLAUME & SCHIEK, P.A.

Philip G. Villaume (#112859)
Jeffrey D. Schiek (#0305455)
Attorneys for Plaintiff
BLN Office Park
2051 Killebrew Drive, Suite 611
Bloomington, MN 55425
(952) 851-9500

WALSH & GAERTNER, P.A.

Gregory J. Walsh (#291705)
Attorneys for Plaintiff
24 East Fourth Street
St. Paul, MN 55101
651-228-9968