## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael Brodkorb,                                    Civil No. 12-1958 (SRN/AJB)

                Plaintiff,

      v.                                    **MEMORANDUM OPINION**
                                 **AND ORDER**

State of Minnesota, the Minnesota
Senate, and Cal Ludeman,
individually,

                Defendants.

───────────────────────────────────────────────

Gregory J. Walsh, Jeffrey D. Schiek, and Philip G. Villaume, Villaume & Schiek, P.A.,
2051 Killebrew Drive, Suite 611, Bloomington, Minnesota 55425, for Plaintiff.

Christopher J. Harristhal and Dayle Nolan, Larkin, Hoffman, Daly & Lindgren, Ltd.,
7900 Xerxes Avenue South, Suite 1500, Minneapolis, Minnesota 55431, for Defendants.

───────────────────────────────────────────────

SUSAN RICHARD NELSON, United States District Judge

      This matter is before the Court on Defendants' Motion for Partial Dismissal

Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. No. 10] and Defendants' Motion to Strike

Pursuant to Fed. R. Civ. P. 12(f) and Misjoinder Pursuant to Fed. R. Civ. P. 21 [Doc. No.

3].  For the reasons stated below, Defendants' motions are granted.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff Michael Brodkorb brought this employment-related suit against

Defendants the State of Minnesota, the Minnesota Senate, and Cal Ludeman, asserting

claims arising under the following: (1) the Minnesota Human Rights Act (the "MHRA")

(Count I); (2) 42 U.S.C. § 2000E, "Title VII" (Count III); (3) 42 U.S.C. § 1983 (Count

IV); and (4) state common law claims for defamation/slander (Counts V & VIII).[1] (Compl., Ex. 1 to Notice of Removal [Doc. No. 1-1].)

In December 2008, Brodkorb was hired as Communications Director for the Minnesota Senate Minority Caucus. (Id. ¶ 5.)  In 2010, after Republicans gained the majority in the Minnesota Senate, Brodkorb became Communications Director for the Minnesota Senate Majority Caucus. (Id. ¶7.)  At this time, Senator Amy Koch was elected Senate Majority Leader. (Id. ¶ 6.)  Brodkorb alleges that in September 2011, Deputy Majority Leader Geoff Michel, through Chief of Staff Cullen Sheehan, became aware that Brodkorb and Senator Koch were involved in an extramarital relationship.

On December 14, 2011, Brodkorb contends that Senator Michel, along with Senator Chris Gerlach, Senator Claire Robling, and Senator David Hahn met with Senator Koch to discuss her romantic involvement with Brodkorb. (Id. ¶¶ 9-10.)  The Complaint alleges that the senators requested that Koch resign immediately. (Id. ¶ 11.)  In addition, the Complaint alleges that the parties discussed plans for Brodkorb to be terminated by Senator Cal Ludeman, Secretary of the Senate, following Koch's resignation.[2] (Id.)

---

[1] Plaintiff also initially asserted claims under the St. Paul Code Ordinances, Chapter 183 (Count II); provisions of Minn. Stat. § 268.19 related to unemployment benefits (Counts VI & IX); and state law claims for invasion of privacy (Counts VII & X). (Compl., Ex. 1 to Notice of Removal [Doc. No. 1-1].)  Pursuant to the parties' stipulation, these counts were dismissed. (Order re: Stipulation of Dismissal [Doc. No. 23].)

[2] According to the Minnesota Senate's website, the Secretary of the Senate "conducts legislative business and oversees internal offices whose duties include legislative information, production and communications and administrative services." (Minnesota Senate Website, http://www.senate.mn/departments/office_bio.php?office_id

continue...

2

Brodkorb alleges that in additional discussions, the senators determined that "Brodkorb needed to be terminated because of his intimate relationship with Senator Koch." (Compl. ¶ 13, Ex. 1 to Notice of Removal [Doc. No. 1-1].)  On December 15, 2011, Senator Koch resigned from her position as Senate Majority Leader and indicated that she would not seek re-election.  (Id. ¶ 14.)

On December 16, 2011, Ludeman terminated Brodkorb.  (Id. ¶16.)  At this meeting, Ludeman allegedly referred to Koch's resignation the previous day, as well as the extramarital affair between Koch and Brodkorb.  (Id. ¶ 18.)  Brodkorb thus alleges that Ludeman and Republican leaders were aware of the relationship between Koch and Brodkorb prior to his termination.  (Id. ¶ 19.)  Brodkorb further asserts that Senator Ludeman did not offer him the possibility of transferring to another position prior to his termination.  (Id. ¶ 20.)  Brodkorb alleges that similarly situated female employees were not terminated despite relationships with male legislators.  (Id. ¶ 21.)

On March 13, 2012, Brodkorb served the Minnesota Senate with a Notice of Claims letter, alleging a gender discrimination claim.  (Id. ¶ 24.)  In the letter, Brodkorb issued a settlement demand of $500,000 and expressed his willingness to participate in the early mediation of his claims.  (Notice of Claims at 3, Ex. B to Aff. of C. Harristhal [Doc. No. 14-1].)  The following day, March 14, 2012, Senator Ludeman issued a press release to the general public.  (Id. ¶ 25.)  In the press release, printed on Minnesota Senate letterhead and entitled "Statement from Secretary Ludeman," Brodkorb's offer of

---

[2]...continue
=1005, Ex. I to Harristhal Aff. [Doc. No. 14-1].)

mediation was acknowledged and rejected.  (Press Release, Ex. A to Harristhal Aff. [Doc. No. 14-1].)  The press released further stated:

> Despite Mr. Brodkorb's efforts to disrupt the work of the Senate in the current legislative session, to distract members of the Senate, to extort a payment from the Senate, and to try his so-called claims in the media, the Senate will not allow that to succeed.

(Id.; Compl. ¶ 26, Ex. A to Notice of Removal [Doc. No. 1-1].)

In addition, Brodkorb alleges that on or about March 15, 2012, Ludeman stated to a newspaper reporter that Brodkorb was attempting to "'blackmail' the Senate, disrupt its work, and 'extort' payment."  (Compl. ¶ 27.)  On approximately April 5, 2012, Brodkorb served another Notice of Claims letter on the Minnesota Senate, identifying additional claims of defamation against the Senate.  (Id. ¶ 29.)

Plaintiff initially filed this lawsuit in Ramsey County State Court on July 23, 2012, and Defendants removed the action to this Court on August 9, 2012.  (Notice of Removal [Doc. No. 1].)

## II.    DISCUSSION

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move for partial dismissal, arguing that Plaintiff's claim based on 42 U.S.C. § 1983 (Count IV), and his state law claims for defamation/slander against the Minnesota Senate and its employees (Count V), and against Cal Ludeman individually (Count VIII), fail as a matter of law.   Defendants contend that the §1983 claim fails because Plaintiff has failed to plead and prove a constitutional violation.  (Defs.' Mem. Supp. Mot. to Dismiss at 3-4 [Doc. No. 13].)  As to Brodkorb's defamation/slander claims, Defendants argue that the statements at issue

constitute protected speech under the First Amendment and therefore cannot support a claim of defamation.  (Id. at 5.)  In addition, Defendants argue that the statements were absolutely privileged statements made by a high-level government official, and were also qualifiedly privileged, as statements made upon a proper occasion, from a proper motive, and based on reasonable or probable cause.  (Id. at 14-19.)

In opposition to Defendants' Motion to Dismiss, Plaintiff argues that his § 1983 claim is properly supported by his claim for relief under Title VII.   (Pl.'s Opp'n Mem. to Mot. to Dismiss at 13 [Doc. No. 29].)  In addition, Brodkorb contends that Defendants have waived Eleventh Amendment immunity by virtue of having removed this action to federal court.  (Id. at 11-12.)  As to his defamation claims, Brodkorb argues that Defendants' speech is not protected under the First Amendment and that his claims therefore survive.  (Id. at 16-17.)

In addition to their Motion for Partial Dismissal, Defendants also move to strike from the Complaint references to "the State of Minnesota" and the "employees" of the Minnesota Senate as immaterial and impertinent, pursuant to Fed. R. Civ. P. 12(f). (Defs.' Mem. Supp. Mot. Strike at 3-5 [Doc. No. 5].)  Defendants further argue that references to the "State of Minnesota" should be stricken from the Complaint on grounds of misjoinder, pursuant to Fed. R. Civ. P. 21.  (Id. at 10-12.)  In response, Plaintiff contends that the State of Minnesota should not be stricken from the Complaint because pursuant to Minn. Stat. § 3.732, subd. 1, the "State" includes officers in the legislative branch of government.  (Pl.'s Opp'n Strike Mem. at 5 [Doc. No. 18].)  Brodkorb asserts that because he has asserted proper causes of action under the doctrine of respondeat

superior against the State of Minnesota, the Minnesota Senate, its employees, and Cal

Ludeman individually, Defendants' Motion to Strike and for Misjoinder should be

denied.  (Id. at 7.)

### A.  Motion for Partial Dismissal

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the

facts in the Complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the non-moving party.  Morton v. Becker, 793 F.2d 185,

187 (8th Cir. 1986).  However, the Court need not accept as true wholly conclusory

allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir.

1999), or legal conclusions drawn from the facts pled.  Westcott v. City of Omaha, 901

F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a pleading must contain "enough facts to state a

claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

545 (2007).  Although a complaint or counterclaim need not contain "detailed factual

allegations," it must contain facts with enough specificity "to raise a right to relief above

the speculative level."  Id. at 555.  As the United States Supreme Court has stated,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S. 662, 663

(2009) (citing Twombly, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s]

to raise a reasonable expectation that discovery will reveal evidence of [the claim]."

Twombly, 550 U.S. at 556.

When considering a Rule 12 motion, the Court generally must ignore materials

outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint," <u>Missouri ex rel. Nixon v. Coeur D'Alene Tribe</u>, 164 F.3d 1102, 1107 (8th Cir. 1999), as well as materials that are "necessarily embraced by the pleadings." <u>Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co.</u>, 967 F. Supp. 1148, 1152 (D. Minn. 1997); <u>see also</u> 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 199 (1990) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").   While Brodkorb objects to the Court's consideration of Defendants' exhibits, some of these exhibits are clearly embraced by the Complaint. These include the March 14, 2012 Senate Press Release referenced in Paragraph 25 of the Complaint (Ex. A to Harristhal Aff. [Doc. No. 14-1]); the March 13, 2012 Notice of Claims referenced in Paragraph 24 of the Complaint (Ex. B to Harristhal Aff. [Doc. No. 14-1]; and published third-party news articles referencing or quoting the March 14 Senate Press Release (referenced in Paragraph 26 of the Complaint) and/or published third-party news articles containing additional statements (alleged in Paragraph 27 of the Complaint). ([Exs. C, D, E & H to Harristhal Aff. [Doc. No. 14-1].)  In fact, documents so clearly embraced by a complaint are routinely filed as exhibits to a complaint.  The Court will consider them.  In addition, the Court will consider exhibits describing the duties of various personnel in the Minnesota Senate, found at the Senate's public website, www.senate.leg.state.mn.us/departments/office, as a matter of public record.  (Exs. I, J, & K to Harristhal Aff. [Doc. No. 14-1].)  Moreover, the information in all of the exhibits noted above (Exs. A, B, C, D, E, H, I, J, & K to Harristhal Aff.) does not contradict the

Complaint and the Court will consider them without converting the instant motion into a motion for summary judgment.[3]  Nixon, 164 F.3d at 1107.

### 1.        § 1983 Claim Against Minnesota Senate and its Employees

Plaintiff's § 1983 claim is asserted against "the Minnesota Senate and its Employees."  (Count IV, Compl., Ex. A to Notice of Removal [Doc. No. 1-1].)  The Minnesota Senate argues that as an arm of the state, it is not a "person" for purposes of liability under § 1983, and that Plaintiff's § 1983 claim must therefore be dismissed.  In response, Plaintiff argues that Defendants have waived any rights to Eleventh Amendment immunity by virtue of having voluntarily removed this action from state court to federal court. (Pl.'s Opp'n Mem. to Mot. to Dismiss at 11-12 [Doc. No. 29].)   In addition, Brodkorb contends that his § 1983 claim is also asserted against Defendant Ludeman in his individual capacity and should not be dismissed.  (Id. at 10.)

### a.        § 1983 Liability Limited to "Persons"

42 U.S.C. § 1983 provides for civil relief when an individual is deprived "of any rights, privileges, or immunities secured by the Constitution and laws" by a "person" for deprivations occurring "under color of law." 42 U.S.C. § 1983.  The Supreme Court has held that "a State is not a person within the meaning of § 1983."  Will v. Mich. Dept. of State Police, 491 U.S. 58, 64 (1989); see also McLean v. Gordon, 548 F.3d 613, 617 (8th Cir. 2008), cert. denied, 129 Sc. Ct. 2444 (2009).   In McLean, the Eighth Circuit Court of Appeals considered a § 1983 and state law wrongful death claim against the Missouri

---

[3]  The Court will not consider Defendants' Exhibits F and G, as they do not appear to fall within any exception under Rule 12(b)(6).

Department of Social Services ("DSS") and individual social workers based on the accidental shooting death of a child in foster care.  The action was originally filed in state court and the defendants, including DSS, voluntarily removed it to federal court.  Id. at 618.  The district court held that DSS's voluntary removal resulted in the waiver of its Eleventh Amendment immunity.  Id.  On appeal, DSS appealed the district court's ruling and argued in the alternative that because the state is not a person for purposes of § 1983 litigation, it could not be sued under that statute.  The Eighth Circuit agreed with DSS's alternative argument, holding:

> We need not address the question of whether the State waived its Eleventh Amendment immunity by voluntarily removing this matter to federal court. Section 1983 provides for an action against a "person" for a violation, under color of law, of another's civil rights. As the Supreme Court reminded us, "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted."  Lapides v. Bd. of Regents, 535 U.S. 613, 617 (2002); Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); see Howlett v. Rose, 496 U.S. 356, 365 (1990) ("Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court.").  Thus, the district court erred in failing to grant summary judgment for DSS, an agency or "arm[ ] of the State," on the section 1983 claim brought by McLean.

Id.

Based on McLean, this Court likewise finds that the Minnesota Senate is not a "person" for purposes of liability under § 1983.  As Plaintiff himself alleges, the Minnesota Senate is part of the State of Minnesota.  (Compl. ¶ 2, Ex. A to Notice of Removal [Doc. No. 1-1].)  In fact, Plaintiff refers to the Minnesota Senate as "the Minnesota Senate of the State of Minnesota." (Id.)  Accordingly, the Minnesota Senate

is not subject to liability under § 1983 and Plaintiff's claims against it fail as a matter of

law.  McLean, 548 F.3d at 618.  Having reached this conclusion, as in McLean, this Court

need not reach the parties' additional arguments regarding immunity and waiver.

### b.    Individual Liability

Brodkorb argues that his § 1983 claim is also asserted against Defendant

Ludeman.  Defendants disagree, asserting that the Complaint simply fails to state a §

1983 claim specifically against Ludeman.

The Supreme Court has held that state officials, sued in their individual capacities,

as Ludeman is here, are "persons" within the meaning of § 1983.  Hafer v. Melo, 502

U.S. 21, 31 (1991).  "The Eleventh Amendment does not bar such suits, nor are state

officers absolutely immune from personal liability under § 1983 solely by virtue of the

'official' nature of their acts."  Id.

Viewing the Complaint as a whole, the Court notes that Ludeman is not named in

the heading of the § 1983 claim – Count IV of the Complaint (Compl. at 13, Ex. A to

Notice of Removal [Doc. No. 1-1].)  In contrast, Ludeman is named in the heading of

Count VIII for defamation/slander (id. at 19), while Plaintiff asserts a separate

defamation/slander count against "the Minnesota Senate and its Employees" in Count V

(id. at 15).  Plaintiff previously asserted a separate, now-dismissed state law claim against

Ludeman related to unemployment benefits in Count IX (id. at 22), while asserting the

same claim against "the Minnesota Senate and its Employees" in Count VI (id. at 17).  He

also previously asserted a separate, now-dismissed state law claim against Ludeman for

invasion of privacy in Count X (id. at 23), while asserting the same claim against "the

Minnesota Senate and its Employees" in Count VII (id. at 18).  The introductory

paragraphs of the counts specifically asserted against Ludeman also provide that the

identified "cause of action [is] against Cal Ludeman individually."  (Id. at 19, 22-23.)

Clearly, Plaintiff specified the defendants to which his various claims applied, as

noted in the captions of each count.  While Ludeman is mentioned in the factual

allegations of the § 1983 claim, he is merely alleged to have delivered the news of

Brodkorb's termination, without offering Brodkorb a different employment position in

the Senate.  (Id. ¶¶ 99-100.)  The § 1983 claim alleges that "Plaintiff was terminated by

the Republican leadership" because of his relationship with Koch.  (Id. ¶ 98.)  Even more

broadly, the Complaint makes clear that the § 1983 claim is brought against "the

Minnesota Senate":

> 94.  The Minnesota Senate engaged in illegal gender discrimination against
> the Plaintiff on the basis of sex in violation of 42 U.S.C. § 1983.
>
> 97.  That the Plaintiff had an intimate relationship with Senator Koch and
> that the Minnesota Senate knew that the Plaintiff had an intimate
> relationship with Senator Koch prior to his termination on or about
> December 16, 2011.
>
> 108.  The Minnesota Senate's conduct was perpetrated with ill will, malice,
> and willful and reckless disregard for the Plaintiff's rights.
>
> 109.  The Minnesota Senate's actions as set forth above constitute gender
> discrimination.
>
> 110.  As a result of the Minnesota Senate's actions, Plaintiff was caused to
> incur emotional distress.

(Id. ¶¶ 94; 97;108-110.)    Accordingly, the Court concludes that, as pled, Brodkorb's

§ 1983 claim is not asserted against Senator Ludeman.

Even if Ludeman could be considered "named" in the claim's caption as one of the "employees" of the Minnesota Senate, or if Plaintiff sought leave to amend his Complaint to include Ludeman in the § 1983 claim, the claim would nonetheless fail.  A claim for relief under § 1983 must be based on a constitutional violation.  "Standing alone, section 1983 does not establish any substantive rights."  Henley v. Brown, 686 F.3d 634, 640 (8th Cir. 2012).   The Complaint, however, merely alleges that the "Minnesota Senate engaged in illegal gender discrimination in violation of 42 U.S.C. § 1983" and that "the Defendants worked together to institute, engage in, and perpetrate gender discrimination in violation of 42 U.S.C. § 1983."  (Compl. ¶¶ 94; 107) (emphasis added).   The Complaint fails to allege the constitutional or statutory provision that supports Brodkorb's § 1983 cause of action.  In his opposition memorandum, Brodkorb asserts that his § 1983 claim is properly pled:

> The Plaintiff . . . alleged his right to be free from gender-based discrimination in employment was violated by the Defendant; this was an allegation that Defendants violated the Plaintiff's constitutional right. Moreover, the Plaintiff has stated that the Defendants violated his federal Title VII rights, which is clearly a federal violation.[4]

(Pl.'s Opp'n Mem. to Mot. to Dismiss at 14 [Doc. No. 29]) (citing Compl. ¶ 107.)

In Plaintiff's opposition memorandum, however, he fails to specify the "constitutional right" at issue.  More importantly, he fails to do so in his Complaint.   As to Plaintiff's argument that Title VII supports his § 1983 claim, § 1983 does not provide a remedy "where the governing statute provides an exclusive remedy for violations of its

---

[4] Plaintiff's alternating use of the singular "Defendant" and plural "Defendants" is in the original.

terms." Foster v. Wyrick, 823 F.2d 218, 221 (8th Cir. 1987). "Title VII provides a

comprehensive remedial system for the enforcement of rights created by Title VII." Id.

Addressing the intersection between Title VII and § 1983 employment-based claims, the

Eighth Circuit has further held that

> . . . while Title VII provides the exclusive remedy for employment
> discrimination claims created by its own terms, its exclusivity ceases when
> the employer's conduct also amounts to a violation of a right secured by the
> Constitution. See Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th
> Cir. 2011) (explaining that "[a]lthough section 704(a) of Title VII may not
> be the basis for a retaliatory discharge claim in a § 1983 action, § 1983
> provides a vehicle for redressing claims of retaliation on the basis of the
> First Amendment") (internal quotation marks and citation omitted); Hervey
> v. City of Little Rock, 787 F.2d 1223, 1233 (8th Cir. 1986) (stating an
> employment discrimination plaintiff may recover under section 1983 if she
> proves the alleged gender discrimination violated her equal protection rights
> under the Fourteenth Amendment).

Henley, 686 F.3d at 642. Applying these principles, the Henley court construed

Plaintiff's complaint to allege a Fourth Amendment excessive force violation against

certain individual defendants acting under color of state law, and an Equal Protection

claim in as much as she asserted that the state actor defendants intentionally discriminated

against her because of her gender. Id. at 643. Accordingly, the Eighth Circuit reversed

the district court's dismissal of the plaintiff's § 1983 claim for failure to comply with

Title VII's procedural requirements, but did not address whether Plaintiff's factual

allegations were sufficient to establish a plausible § 1983 claim, as the district court had

not addressed the merits of the claim. Id.

Under any analysis, Plaintiff fails to assert a plausible claim for relief under §

1983. The language of Brodkorb's § 1983 claim closely mirrors his Title VII claim,

suggesting that it is based solely on an alleged Title VII violation.  (Cf. Count III and Count IV, Compl., Ex. A to Notice of Removal [Doc. No. 1-1].)  Title VII provides the exclusive remedy for such a claim – which Plaintiff has pled in Count III – and Plaintiff's § 1983 claim must therefore be dismissed.

As pled, Plaintiff would require the Court to liberally construe his § 1983 claim to allege a violation of Equal Protection – which secures the right to be free from gender discrimination, Duckworth v. St. Louis Metro. Police Dep't, 491 F.3d 401, 406 (8th Cir. 2007) – merely by virtue of pleading "illegal gender discrimination" as the unlawful conduct.  In addition, for Plaintiff's claim to be viable, the Court would have to construe it to be asserted against Defendant Ludeman, either as 'an employee of the Senate' or otherwise.   The Complaint, however, cannot be so construed.

While Plaintiff alleges that "the Minnesota Senate" engaged in gender discrimination, and that the "Minnesota Senate's" conduct was perpetrated with ill will, malice, and willful and reckless disregard for Plaintiff's rights," he does not allege specific, actionable conduct by Ludeman that would give rise to individual liability under § 1983.  (Compl. ¶¶ 94;108, Ex. A to Notice of Removal [Doc. No. 1-1].)   Moreover, even assuming that the claim was alleged against Ludeman, Brodkorb does not allege that Ludeman – or anyone else – acted under color of state law, which is a required element for liability under § 1983.   42 U.S.C. § 1983.  At most, Plaintiff alleges that Ludeman delivered the news of Plaintiff's termination and did not offer an alternate position of employment.  (Compl. ¶¶ 99-100, Ex. A to Notice of Removal [Doc. No. 1-1].)  This is not the type of intentional conduct that supports a § 1983 claim.   For all of these reasons,

the claim is deficient and must be dismissed.

### c.      Plaintiff's Request for Leave to Amend

At the hearing on the instant motions, Plaintiff's counsel orally requested leave to amend the Complaint if the Court found the pleading in any way deficient.  Defendants opposed the motion on the basis of the futility of any such amendment.  Counsel for Defendants further noted that Defendants could not respond with any greater particularity, as Plaintiff had not identified any possible amendments.

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), a party may amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b).  Fed. R. Civ. P. 15(a)(1)(B).  In this case, Defendants' Motion to Dismiss [Doc. No. 10] was filed on August 30, 2012.  Plaintiff did not file a motion to amend the Complaint within the 21-day period, nor has he filed such a motion since that time, nor does his opposition memorandum request such relief.  [Doc. No. 29].

Although leave to amend the pleadings shall be "freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), the Local Rules of this Court require a party seeking leave to amend a pleading to file a motion seeking such relief, accompanied by a copy of the proposed amended pleading.  L.R. 15.1(b) (2012).  Plaintiff has not filed such a motion, nor has he presented Defendants or the Court with a copy of his proposed amended pleading.  In Drobnak v. Andersen Corp., 561 F.3d 778, 787-88 (8th Cir. 2009), the plaintiffs in a putative class action against a window manufacturer appealed the denial of a similar informal request to amend their complaint.   The district court addressed the plaintiffs' request in a post-dismissal order, finding that it failed both substantively and

procedurally, stating, "To the degree that Plaintiffs' oral request was a motion, it was

noncompliant because it was not accompanied by an amended pleading or for that matter

a clear representation from counsel that any named Plaintiff's window had, in fact, been

tested." Id.  The Eighth Circuit affirmed the district court's denial of the request to

amend, noting that it had previously affirmed such denials in cases where the substance of

the proposed amendment was unclear and the local rules were not followed.  Id. at 788

(citing Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913-14 (8th

Cir. 2002); Wolgin v. Simon, 722 F.2d 389, 394-95 (8th Cir. 1983)).  The Drobnak

plaintiffs also formally moved for leave to amend their complaint in the district court after

their case was dismissed for failure to state a claim.  Id. at 788.  The Eighth Circuit

affirmed the district court's post-judgment denial of leave to amend. Id.

Here too, Brodkorb did not move for leave to amend as of right within the 21-day

time period under Rule 15(a)(1)(B).  His request for leave to amend was submitted by

counsel in oral argument, as opposed to a properly noticed motion.  Moreover, the request

is unaccompanied by any proposed amended pleading.  In addition, the facts alleged

throughout the Complaint do not support a § 1983 claim against the one possible

Defendant, Mr. Ludeman, and therefore any amendment to name Ludeman as a

Defendant and to specify the constitutional violation at issue would be futile.

### 2.  Defamation/Slander

Defendants move to dismiss Plaintiff's claim for defamation/slander against the

Minnesota Senate in Count V, and against Cal Ludeman individually in Count VIII.[5]

(Compl. at 15, 19, Ex. A to Notice of Removal [Doc. No. 1-1].)  Brodkorb bases his

defamation claim on statements allegedly made by Ludeman on March 14 and 15, 2012.

(Id. ¶¶ 113-14; 145-146.)   Prior to making the statements, on March 13, 2012, counsel

for Brodkorb sent Defendants a Notice of Claims letter, describing his anticipated claims,

suggesting mediation, and issuing a settlement demand.  (Id. ¶ 112; 144; Notice of

Claims Letter, Ex. B to Harristhal Aff. [Doc. No. 14-1].)   As to his gender discrimination

claim, Brodkorb asserted in the letter that he was treated differently from similarly

situated female employees who were not terminated despite having had intimate

relationships with male legislators.  (Notice of Claims Letter at 5, Ex. B to Harristhal Aff.

[Doc. No. 14-1].)   The Notice of Claims letter further states, "[Brodkorb] intends to

depose all of the female legislative staff employees who participated in intimate

relationships, as well as the legislators who were party to those intimate relationships, in

support of his claims of gender discrimination."  (Id.)

    The Minnesota Senate issued Ludeman's statement in the March 14 press release

the following day.   (Press Release, Ex. A to Harristhal AFf. [Doc. No. 14-1].)  The press

release provides in full:

> The Minnesota Senate has refused Michael Brodkorb's request to mediate
> his complaints regarding termination from his position as former majority
> leader Senator Amy Koch's executive assistant and communications
> director.

---

[5]  Plaintiff asserts claims for "defamation/slander" in Counts V and VIII of the
Complaint.   The Court's references to "defamation" apply to these claims.

17

Despite repeated Senate requests to provide any factual basis for any dispute over his termination, Michael Brodkorb has failed and refused to do so. The attorney retained by the Senate has reviewed this matter thoroughly and concluded that his claims are without any merit whatsoever. <u>Despite Mr. Brodkorb's efforts to disrupt the work of the Senate in the current legislative session, to distract members of the Senate, to extort payment from the Senate, and to try his so-called claims in the media, the Senate will not allow that to succeed.</u>

The Senate handled Mr. Brodkorb's termination properly. All Senate employees are "at will" employees, including former employee Mr. Brodkorb. The Senate has the authority to terminate an employee at any time. Mr. Brodkorb's duties were closely tied to Senator Koch's position as Senate majority leader. When leadership changes occur in the Senate, changes in supporting staff are routine.

(<u>Id.</u>) (emphasis added.)

Plaintiff further alleges that on March 15, 2012, Ludeman made additional statements to the Star Tribune to the effect that Brodkorb was attempting to "blackmail" the Senate and "extort" payment. (Compl. ¶¶ 115; 147, Ex. A to Notice of Removal [Doc. No. 1-1].) The use of the word "blackmail" in the March 15 statements involves two variations. In some published March 15 news accounts, the statement attributed to Ludeman appears as follows: "The admission [of the Brodkorb-Koch affair] came as the Minnesota Secretary of the Senate refused a mediation of Brodkorb's claims and said that Brodkorb . . . has been engaged in '<u>blackmail negotiations</u> that needed to come to an end.'" (Rachel E. Stassen-Berger, <u>Former Sen. Majority Leader Koch, Brodkorb Affair Confirmed</u>, Star Tribune, Mar. 14, 2012, Ex. C to Harristhal Aff. [Doc. No. 14-1]; Rachel E. Stassen-Berger, <u>GOP Senate Affair Confirmed; The Revelation of an Amy Koch-Michael Brodkorb Relationship Comes in Wrangle Over His Termination,</u>

startribune.com, Mar. 15, 2012, Ex. E to Harristhal Aff. [Doc. No. 14-1]) (emphasis

added).  The other use of "blackmail" appears in a newspaper blog by the same

newspaper reporter, and states, "Secretary of the Senate Cal Ludeman said Wednesday

that Brodkorb was attempting to '<u>blackmail</u>' the Senate, disrupt its work, and 'extort'

payment.  (Rachel E. Stassen-Berger, <u>BLOG: Hot Dish Politics: Brodkorb: Other Staffers</u>

<u>Had Affairs with Lawmakers, Treated Differently</u>, Star Tribune, Mar. 15, 2012, Ex. D to

Harristhal Aff. [Doc. No. 14-1]) (emphasis added).

Brodkorb contends that the March 14 and 15 statements allege criminal acts and

therefore constitute "defamation per se."  (Compl. ¶¶ 117; 149, Ex. A to Notice of

Removal [Doc. No. 1-1].)  Defendants, however, argue that the challenged statements are

protected speech under the First Amendment and cannot support a claim for defamation.

(Defs.' Mem. Supp. Mot. Dismiss at 5 [Doc. No. 13].)  Moreover, Defendants contend

that the statements are entitled to the absolute privilege applicable to statements made by

high government level officials.  (<u>Id.</u> at 14.)  In addition, Defendants argue that the

statements are qualifiedly privileged as "statements made upon a proper occasion, from a

proper motive and based upon reasonable or probable cause."  (<u>Id.</u> at 19) (citing

<u>Stuempges v. Parke Davis & Co.</u>, 297 N.W.2d 252, 256-57 (Minn. 1980)).

### a.    Defamation Per Se

To establish a defamation claim under Minnesota law, a plaintiff must show that

the defendant made a false and defamatory statement to a third party that harmed the

19

plaintiff's reputation in the community.[6]  Weinberger v. Maplewood Review, 668 N.W.2d

667, 673 (Minn. 2003).  However, certain statements are considered defamatory per se,

such as those that "falsely accuse a person of a crime, of having a loathsome disease, or

of unchastity, or if they refer to improper or incompetent conduct involving a person's

business, trade, or profession."  Longbehn v. Schoenrock, 727 N.W.2d 153, 158-159

(Minn. Ct. App. 2007) (citations omitted).  Courts have also held that statements that

impute serious sexual misconduct are defamatory per se.  Id. (citing Richie v. Paramount

Pictures Corp., 544 N.W.2d 21, 25 n. 3 (Minn. 1996)).  In Longbehn, the Minnesota

Court of Appeals held that a reference to a former police officer as "Pat the Pedophile"

was defamatory per se.  Id. at 159. The court reasoned, ". . . we hold that in almost every

circumstance a reasonable listener would believe that calling a person a pedophile

imputes serious sexual misconduct or criminal activity to that person."  Id.

In Greenbelt Co-op Pub. Ass'n. v. Bresler, 398 U.S. 6, 8 (1970), the Supreme

Court held that the term "blackmail," used to characterize a public figure's negotiating

position was neither slanderous, as to a spoken statement, nor libelous, as to a printed

statement, as a matter of law.  Bresler had been engaged in negotiations with the city

council to obtain certain zoning variances, while at the same time, the city sought to

---

[6] For purposes of the instant motions, the parties have not addressed the extent to
which Plaintiff might be considered a public figure or a limited purpose public figure.  If
a defamation plaintiff is a public official or public figure, an element of his or her claim is
clear and convincing proof of actual malice.  Jadwin v. Minneapolis Star and Tribune Co.,
367 N.W.2d 476, 480 (Minn. 1985) (citing N.Y. Times Co. v. Sullivan, 376 U.S. 254
(1964)).  The Court assumes for the instant motions that Plaintiff is a private figure for
whom the "actual malice" standard of proof is not applicable.

purchase a different property owned by Bresler for the construction of a school.  Id. at 7.

The "concurrent negotiations obviously provided both parties considerable bargaining

leverage," leading some speakers at public meetings to characterize Bresler's negotiating

position as "blackmail."  Id.  These comments were published in the press.  Id.   In its

analysis of Bresler's defamation claim against the publishing entity, the Supreme Court

considered the heated context of the negotiations in which the statements were made:

> It is simply impossible to believe that a reader who reached the word
> 'blackmail' in either article would not have understood exactly what was
> meant: it was Bresler's public and wholly legal negotiating proposals that
> were being criticized. No reader could have thought that either the speakers
> at the meetings or the newspaper articles reporting their words were
> charging Bresler with the commission of a criminal offense. On the
> contrary, even the most careless reader must have perceived that the word
> was no more than rhetorical hyperbole, a vigorous epithet used by those
> who considered Bresler's negotiating position extremely unreasonable.

Id. at 14.  In addition, the Court found that "the record [was] completely devoid of

evidence that anyone in the city of Greenbelt or anywhere else thought Bresler had been

charged with [the] crime [of blackmail]."  Id.

Plaintiff cites an Iowa Supreme Court decision, Rees v. O'Malley, 461 N.W.2d

833, 834 (Iowa 1990), in which the following statement, expressed by defendant's legal

counsel at a city council meeting, was found to be slander per se: "If you sell that

property to Mr. Rees and what the devil he will use it for with that situation, I don't

know, other than for extortion."   The court held that the use of the word "extortion"

unambiguously accused the plaintiff of a crime.  Id. at 836.  However, at least one other

court has reached the opposite conclusion involving the verb form of the same word –

"extort" – as is the case here. See Blevins v. W.F. Barnes Corp., 768 So.2d 386, 391 (Ala.

Civ. App. 1999).  In Blevins, the defendant's statement that Blevins "tried to extort money out of me because I refused to pay his demands" was printed in a newspaper article concerning a different lawsuit against Barnes.  Id.  The court observed that while the crime of extortion is a punishable offense, the word is also subject to a broader non-legal use:

> The verb "extort," however, includes the meaning "to obtain from a person by force, intimidation, or undue or illegal power" and the meaning "to gain especially by ingenuity or compelling argument." Miriam Webster's Collegiate Dictionary 412 (10th ed. 1997) [sic].  In addition, the word "extort," in the context of Barnes's remarks, is what the United States Supreme Court has characterized as "rhetorical hyperbole, a vigorous epithet used by [Barnes] who considered [Blevins's] negotiating [tactics] extremely unreasonable." Greenbelt, 398 U.S. at 14 (characterizing the word "blackmail" as rhetorical hyperbole and unable to support a libel or slander claim in the context in which it was used); see also Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648 (Pa. Super. Ct. 1999) (characterizing the word "patronage" as rhetorical hyperbole and not capable of supporting a defamation claim).

> Because the word "extort" is not confined to its meaning that suggests the crime of extortion and because the use of the word in the context in which it was spoken indicates that it was rhetorical hyperbole, we conclude that Barnes's statement did not amount to slander per se because it did not charge Blevins with an indictable offense. See Marion v. Davis, 114 So. 357, 359 (Ala. 1927). Therefore, the summary judgment for [the defendant] on the slander count was proper.

Id. at 391.

As the court in Blevins observed, the definition of the verb "extort" is not limited to solely criminal conduct - it is also used colloquially.  See Merriam-Webster Website, "Extort," (Feb. 11, 2013), http://www.merriam-webster.com/dictionary/extort (defining "extort" as "to obtain from a person by force, intimidation, or undue illegal power: wring; also: to gain especially by ingenuity or compelling argument.")

The same is true of "blackmail" – a term that Defendants appear to have used in a non-recognized form – that is, as an adjective in the phrase "blackmail negotiations," and also as a verb.  (Rachel E. Stassen-Berger, Former Sen. Majority Leader Koch, Brodkorb Affair Confirmed, Star Tribune, Mar. 14, 2012, Ex. C to Harristhal Aff. [Doc. No. 14-1]; Rachel E. Stassen-Berger, GOP Senate Affair Confirmed; The Revelation of an Amy Koch-Michael Brodkorb Relationship Comes in Wrangle Over His Termination, startribune.com, Mar. 15, 2012, Ex. E to Harristhal Aff. [Doc. No. 14-1]; Rachel E. Stassen-Berger, BLOG: Hot Dish Politics: Brodkorb: Other Staffers Had Affairs with Lawmakers, Treated Differently, Star Tribune, Mar. 15, 2012, Ex. D to Harristhal Aff. [Doc. No. 14-1].)  "Blackmail" is defined as a noun with the following meanings: "(1) a tribute anciently exacted on the Scottish border by plundering chiefs in exchange for immunity from pillage; (2)(a) extortion or coercion by threats especially of public exposure or criminal prosecution; (b) the payment that is extorted."  Id., "Blackmail," (Feb. 11, 2012), http://www.merriam-webster.com/ dictionary/blackmail.  The Court finds that here, "extort" and "blackmail" were used in a generalized sense, and not as a label for punishable criminal offenses.  The use of the phrases clearly refer to the Plaintiff's settlement overtures and plans for deposition discovery.

Moreover, as in Greenbelt, the challenged statements were made in a heated context.  Defendants were responding to Plaintiff's Notice of Claims, either in the press release or the subsequent comments to the press.  While Plaintiff asserts that his Notice of Claims was a required legal document and was confidentially transmitted, the March 14, 2012 press release makes clear that the press release was issued in response to the parties'

23

negotiations of Brodkorb's employment dispute.  (Press Release, Ex. A to Harristhal Aff. [Doc. No. 14-1]) (stating, "The Minnesota Senate has refused Michael Brodkorb's request to mediate his complaints regarding termination from his position . . . .")   The comments to the effect that Brodkorb was attempting to disrupt the work of the Senate, to "extort a payment" and try his "so-called claims" in the media, are in response to the threatened litigation and litigation tactics.  (Id.)  In his Notice of Claims letter, Brodkorb had issued a demand for $500,000 and had also announced his intention to depose female legislative staff about their alleged extramarital affairs.  (Notice of Claims at 5, Ex. B. to Harristhal Aff. [Doc. No. 14-1].)  The statements in the challenged March 13 press release and the March 14 newspaper articles are similarly heated and full of bluster.  In this specific context, the use of the verb "extort" in the press release and newspaper articles, and the use of "blackmail" as an adjective in the phrase "blackmail negotiations," or as a verb, while intemperate choices, cannot reasonably be interpreted to accuse Plaintiff of engaging in the crimes of extortion and blackmail.

As in Greenbelt, no reasonable reader could read Defendants' challenged statements and not understand that they referred to Plaintiff's negotiating tactics. Greenbelt, 398 U.S. at 14.   While Brodkorb distinguishes Greenbelt on the basis that the defendant was a newspaper publisher and not the actual "speaker" of the remarks, the Court finds such a distinction irrelevant.  The Supreme Court's analysis, and the portions of the opinion relied on herein, focus on the use of the word "blackmail" as stated by the actual speaker.  Id.   For all of the reasons set forth above, the Court finds that the statements at issue are not defamatory per se.

### b.      Claim of Defamation

Because Defendants' statements are not considered defamatory per se, the Court considers whether the statements nonetheless establish the necessary elements of falsity, publication, and damage to support a plausible defamation claim.  Weinberger, 668 N.W.2d at 673.  Because there appears to be no dispute that the statements were published to third parties, the Court addresses the other elements.

While Minnesota common law does not distinguish between statements of "fact" versus "opinion," Weissman v. Sri Lanka Curry House, Inc., 469 N.W.2d 471, 473 (Minn. Ct. App. 1991), "[i]t is well recognized in Minnesota that the First Amendment absolutely protects opinion that lacks "a provably false statement of fact."  Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005) (citing McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 853 (8th Cir. 2000)).  Moreover, "[s]tatements about matters of public concern not capable of being proven true or false and statements that reasonably cannot be interpreted as stating facts are protected from defamation actions under the First Amendment."  Turkish Coal. of Am., Inc. v. Bruininks, 678 F.3d 617, 625 (8th Cir. 2012) (citing Geraci v. Eckankar, 526 N.W.2d 391, 397 (Minn. Ct. App. 1995).  Whether a statement is capable of being proven false is a question of law.  McClure, 223 F.3d at 853 (citing Geraci, 526 N.W.2d at 397).  To determine whether a statement is provably false, Minnesota courts examine four factors: (1) specificity and precision of the statement; (2) verifiability; (3) literary and social context; and (4) public context.  Id.; Janklow v. Newsweek, Inc., 788 F.2d 1300, 1302–03 (8th Cir. 1986).

As to the factors of specificity and verifiability, the Eighth Circuit has found that "remarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of 'falsity' is possible in such circumstances." McClure, 223 F.3d at 853.   The statements at issue here make no reference to criminal liability or prosecution for the crimes of extortion and blackmail.  While the press release does acknowledge the Senate's refusal of Plaintiff's settlement demand and refers to Brodkorb's efforts to "extort" payment, it also refers broadly and dismissively to Plaintiff's attempts to "disrupt" the Senate with his "so-called claims."  (Press Release, Ex. A to Harristhal Aff. [Doc. No. 14-1].)  These statements, along with the comments made the following day repeating the word "extort" and adding the phrase "blackmail negotiations, " are simply subjective statements of rhetoric and hyperbole.  (Rachel E. Stassen-Berger, Former Sen. Majority Leader Koch, Brodkorb Affair Confirmed, Star Tribune, Mar. 14, 2012, Ex. C to Harristhal Aff. [Doc. No. 14-1].)  As such, they lack the specificity and verifiability required to be proven false.  See e.g., Janklow, 788 F.2d at 1302–03.

Turning to the literary and social context in which the statements were made, "the 'literary context' factor includes the type of forum or 'social context' in which the statement was made, the category of publication, its style of writing, and the intended audience."  Secrist v. Harkin, 874 F.2d 1244, 1249 (8th Cir. 1989) (citing Janklow, 788 F.2d at 1302-03).   The Eighth Circuit has stated that the challenged statements "must be taken as part of a whole, including tone and the use of cautionary language."  Janklow, 788 F.2d at 1302-03 (citing Ollman v. Evans, 750 F.2d 970, 982-83 (D.C. Cir. 1984),

26

cert. denied, 471 U.S. 1127 (1985)).  "Cautionary language" typically is qualified speech, such as words and phrases that serve as disclaimers, such as "basically," "probably," or "not necessarily."  Deupree v. Iliff, 860 F.2d 300, 303-304 (8th Cir. 1988).  While the statements at issue lack such cautionary language, the overall hyperbolic tone of the statements, referring to Brodkorb's "so-called claims," and "blackmail negotiations," makes clear that they were made in the context of heated, back and forth negotiations between the parties.

Plaintiff argues that Senator Ludeman's comments were not hyperbole, but were instead direct accusations of criminal wrongdoing.  (Pl.'s Opp'n Mem. to Mot. to Dismiss at 16 [Doc. No. 29].)   In analyzing a defamation claim, however, courts consider "not necessarily the literal phrase published but rather what a reasonable reader would have understood the author to have said."   Fine v. Bernstein, 726 N.W.2d 137, 144 (Minn. Ct. App. 2007) (citing Jadwin, 390 N.W.2d at 441).  The context of the speech is therefore critically important.  As previously discussed herein, the challenged statements were made in response to Plaintiff's settlement demand and announcement of his intention to depose female Senate staffers involved in extramarital affairs.  In this reciprocal exchange of escalating rhetoric, "it was [Brodkorb's] public and wholly legal negotiating proposals that were being criticized."  Greenbelt, 398 U.S. at 14.   The words "extort," and "blackmail negotiations" or "blackmail" did not appear in a rhetorical vacuum.  Furthermore, the larger contextual backdrop for these statements was the political arena, where speakers – even those from the same political party, as here – often engage in provocative or inflammatory speech.  Given the reciprocal context of the challenged

27

statements, the Court finds that they were subjective statements regarding the parties' efforts to negotiate Brodkorb's employment dispute.  A reasonable reader, reading these statements in context, would understand them to be subjective statements of opinion. Price v. Viking Penguin, Inc., 676 F. Supp. 1501, 1510 (D. Minn. 1988) (finding that a reasonable reader, viewing the context of the challenged book, would consider the literary and public context of the work, and conclude that it did not support a defamation claim).

Finally, as to the public context of the statements, courts consider whether certain contexts are necessarily argumentative.  For instance, in Gernander v. Winona State Univ., 428 N.W.2d 473, 477 (Minn. Ct. App. 1988), the court found that the academic promotion process was "heavily laden with debate."   Certain statements made in that public context were found not actionable, particularly as the plaintiff-applicant had willingly opened her record of past performance and was knowingly subject to the judgment of her peers.   The broader public context of the statements at issue here, involving the Minnesota Senate, politicians, and a public employee, is likewise debate-filled and in the public spotlight, as reflected in the newspaper publication of some of the challenged statements.  (See, e.g., Rachel E. Stassen-Berger, Former Sen. Majority Leader Koch, Brodkorb Affair Confirmed, Star Tribune, Mar. 14, 2012, Ex. C to Harristhal Aff. [Doc. No. 14-1]; Rachel E. Stassen-Berger, BLOG: Hot Dish Politics: Brodkorb: Other Staffers Had Affairs with Lawmakers, Treated Differently, Star Tribune, Mar. 15, 2012, Ex. D to Harristhal Aff. [Doc. No. 14-1].)

In sum, the application of the Janklow factors leads the Court to conclude that

Defendants' statements cannot be proven false, and therefore cannot form the basis of a defamation claim.  Having reached this conclusion, the Court need not address the final element of injury or damage.   Also, because the Court finds that Plaintiff's defamation claims fail on the merits as a matter of law, the Court does not address Defendants' arguments regarding absolute privilege and qualified privilege.  Defendants' Motion to Dismiss, as it relates to Brodkorb's defamation claims (Counts V and VIII), is granted.

### B.     Motion to Strike and for Misjoinder

#### 1.     Motion to Strike under Rule 12(f)

As previously noted, Defendants move to strike "the State of Minnesota" as a party and, as to the Minnesota Senate, to strike references to "its employees" from the Complaint.  Plaintiff served Defendants, including the State of Minnesota, with the Summons and Complaint in this action.  However, the State of Minnesota did not enter an appearance, nor respond to the Complaint.  Alan Gilbert, Solicitor General of the State of Minnesota, filed a letter in this action indicating that Defendants' counsel from the law firm of Larkin, Hoffman, Daly & Lindgren is "defending against all claims made in Plaintiff's Complaint."  (Letter of 10/15/12 from A. Gilbert to D. Nolan [Doc. No. 38].)

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because this form of relief is considered an "extreme measure," motions under Rule 12(f) are infrequently granted.  E.E.O.C. v. Product Fabricators, Inc., 873 F. Supp.2d 1093, 1097 (D. Minn. 2012) (citing Stanbury Law Firm, P.A. v. Internal Revenue Serv., 221

F.3d 1059, 1063 (8th Cir.2000); <u>Daigle v. Ford Motor Co.</u>, 713 F. Supp.2d 822, 830 (D.

Minn. 2010)).  Under the permissive language of the rule, however, the Court has "liberal

discretion" to strike, <u>Stanbury</u>, 221 F.3d at 1063, and a motion to strike should be granted

"if the result is to make a trial less complicated or otherwise streamline the ultimate

resolution of the action." <u>Daigle</u>, 713 F. Supp.2d at 830.

As to the Defendants' request that the State of Minnesota be stricken from the

Complaint, Defendants argue that the inclusion of the State of Minnesota in the case

caption and as a Defendant in this suit is impertinent and/or redundant under Rule 12(f).

(Defs.' Mem. Supp. Mot. Strike at 4; 8 [Doc. No. 5].)  "Under the case law, 'impertinent'

matter consists of statements that do not pertain, and are not necessary to the issues in

question."  5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §

1382 (3d ed. 2004).  "'Redundant' matter consists of allegations that constitute a needless

repetition of other averments in the pleading."  <u>Id.</u>

Defendants argue that references to the State of Minnesota are not necessary to the

issues in question because none of the claims in the Complaint are actually asserted

against the "State of Minnesota."  (Defs.' Mem. Supp. Mot. Strike at 4 [Doc. No. 5].)  As

Defendants contend, "[t]he Complaint refers to the State of Minnesota and the Minnesota

Senate as "defendants" (plural), such as in the caption and the introductory paragraph,

and yet blurs them together in a single phrase as a single defendant in ¶ 2," referring to a

singular defendant – "the Minnesota Senate of the State of Minnesota."  (<u>Id.</u>) (quoting

Compl. ¶ 2, Ex. A to Notice of Removal [Doc. No. 1-1].)  As to redundancy, Defendants

argue that if Plaintiff is merely attempting to refer back to the Minnesota Senate with his references to the State of Minnesota, then the inclusion of the State of Minnesota is needlessly repetitive and should be stricken.  (Id. at 8.)

In response to the Motion to Strike, Plaintiff argues that he named the State of Minnesota as a Defendant because he believed he was required to do so by statute. Brodkorb points to language in Minn. Stat. § 3.736, Subd. 5 that required him to serve his Notice of Claim on the Minnesota Attorney General. (Pl.'s Opp'n Mem. to Mot. Strike at 2 [Doc. No. 18].)  In addition, Plaintiff refers to language in Minn. Stat. § 3.732 that requires the Minnesota Attorney General to approve in writing any settlement for claims of money damages against the State of Minnesota.  (Id. at 6) (citing Minn. Stat. § 3.732, Subd. 3.)   Citing Minn. Stat. § 3.732, Subd. 1, which defines the various entities that comprise the "State," Plaintiff argues that "[i]t is clear from the plain reading of the statute that the Minnesota Senate is an entity of the State of Minnesota, and thus the State of Minnesota is a properly pled Defendant."  (Id.)  Plaintiff further contends that it has asserted proper causes of action "under the doctrine of respondeat superior against the State of Minnesota, the Minnesota Senate, and its employees, and individually against Cal Ludeman."  (Id. at 7.)

While Rule 12(f) is an unusual mechanism by which to strike a party from an action, the Court finds the use of the rule appropriate in these circumstances.  First, there is no dispute that the Minnesota Senate is an entity of the State of Minnesota.  Minn. Stat. § 3.732, Subd. 1.  Second, the fact that a party must serve a Notice of Claim upon the

Attorney General prior to filing certain types of claims against the State and its entities or employees, and also must obtain the Attorney General's approval to settle for money damages does not require the "State of Minnesota" to be named as a party to an action when an entity of the State is otherwise named as a party.   Moreover, it appears that Plaintiff named the State of Minnesota as a Defendant merely because the Minnesota Senate – the true party in interest – is an entity of the State.   (See Compl. ¶ 2, Ex. A to Notice of Removal [Doc. No. 1-1]) (alleging, "That Defendant, the Minnesota Senate of the State of Minnesota (hereinafter referred to as 'the Minnesota Senate' or 'Defendant'). . . .".).   In addition, no causes of action are asserted against the "State of Minnesota," as they are with all other Defendants.

Under these circumstances, the inclusion of the State of Minnesota is not necessary to this action and may be stricken as impertinent.  To the extent that the State of Minnesota is included merely because it is a larger body that includes the Minnesota Senate, the inclusion of the State of Minnesota is also redundant.  Moreover, the effect of striking the State of Minnesota as a party in the Complaint will have no prejudicial or negative effect on Plaintiff.  The Minnesota Senate and Defendant Ludeman remain parties to the action and are the parties against whom Brodkorb's claims are pled.

As to Plaintiff's argument that the State of Minnesota is a named party based on the doctrine of respondeat superior, he has not actually alleged that the State is being sued under the theory of respondeat superior – in fact, as noted, he has not alleged that the State is being sued under any legal theory.   In any case, the Minnesota Senate was

Brodkorb's employer (id. ¶¶ 5-7), and eliminating references to the State of Minnesota will also eliminate any confusion on this matter and streamline the case.  Daigle, 713 F. Supp.2d at 830.  Although the procedural posture is a bit unusual in that Defendants are moving to strike from the Complaint a named party that has made no appearance, in Curacao Trading Co. v. Fed. Ins. Co., 3 F.R.D. 203, 204 (S.D.N.Y. 1942), the court permitted a defendant's motion under Rule 12(f) to strike references in the complaint related to a separate defendant.   For all the reasons noted herein, the Court grants Plaintiff's Motion to Strike as it relates to the State of Minnesota.

Regarding Defendants' Motion to Strike references to "its employees" in the phrase "the Minnesota Senate and its employees," there are no factual allegations that 'Senate employees' engaged in actionable conduct, other than allegations concerning Defendant Ludeman, which are specifically pled in separate counts.   (See, e.g., Compl. at 19, Ex. A to Notice of Removal [Doc. No. 1-1].)  Other than Ludeman, no other Senate employees are identified in the captions of the various counts, and therefore no other Senate employees have been served with process.  While factual allegations in the Complaint identify other senators by name (see id. ¶¶ 8-9), no factual allegations refer to "unnamed Senate employees," similar to allegations that civil rights plaintiffs frequently plead with respect to personally-involved "unnamed police officers," for example.  No causes of action in the Complaint identify the "Senate employees" in question, and none have therefore been served with process.  Instead, as noted, Plaintiff has asserted his claims against the Minnesota Senate and against Cal Ludeman individually.  Accordingly, pursuant to Rule 12(f), the Court strikes the references in the Complaint to "Senate

employees" as not necessary, and for purposes of eliminating confusion and streamlining the action.

## 2. Motion for Misjoinder under Rule 21

Defendants also seek to have the State of Minnesota dropped as a party pursuant to Fed. R. Civ. P. 21. Rule 21 provides:

> Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21. In Stark v. Indep. Sch. Dist. No. 640, 163 F.R.D. 557, 564 (D. Minn. 1995), this Court exercised its discretion under Rule 21 to drop a party. In reaching its decision, the Court observed that it is appropriate for courts to consider judicial economy and efficiency in fashioning relief under Rule 21. Id. In Minn. Mining and Mfg. Co. v. Rynne, 661 F.2d 722, 724 (8th Cir. 1981), the Eighth Circuit affirmed the district court's dismissal of one of the defendants, who was not a necessary party under Rule 21 because of a de facto merger between two parties. As noted, the Minnesota Senate is an entity of the State of Minnesota, and the Senate was Brodkorb's employer. Plaintiff asserts no claims against the State of Minnesota. The State of Minnesota is therefore not a necessary party under Rule 21 and the interests of judicial economy and efficiency are best served if the State of Minnesota is not a party to this litigation. Furthermore, Plaintiff will suffer no prejudice from dropping the State of Minnesota as a party to his litigation. Accordingly, in addition to the reasons set forth herein regarding Rule 12(f), the Court dismisses the State of Minnesota from this litigation under Rule 21 on grounds

of misjoinder.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Defendants' Motion for Partial Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. No. 10] is **GRANTED**;

2.  Defendants' Motion to Strike Pursuant to Fed. R. Civ. P. 12(f) and Misjoinder Pursuant to Fed. R. Civ. P. 21 [Doc. No. 3] is **GRANTED**;

3.  Counts IV, V, and VIII of the Complaint are **DISMISSED WITH PREJUDICE**;

4.  The State of Minnesota is stricken as a party to this action, and is therefore **DISMISSED**; and

5.  References in the Complaint to the "employees" of the Minnesota Senate are stricken, as set forth herein.


Dated:   February 13, 2013                 s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge