UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Michael Brodkorb,

                Plaintiff,

      v.

Minnesota Senate,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

File No. 12-CV-01958 (SRN/AJB)

**DEFENDANT'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION
FOR RULE 37 SANCTIONS**


## INTRODUCTION

Defendant Minnesota Senate ("Defendant" or "Senate") seeks an award of sanctions, including dismissal of Plaintiff Michael Brodkorb's ("Plaintiff" or "Brodkorb") case for the deliberate disclosure of confidential documents on July 3, 2013. The Court issued a Protective Order ensuring that sensitive documents would not be released to the public. Instead, through his counsel, Plaintiff willfully and deliberately publicly filed confidential discovery materials in direct violation of the Protective Order via ECF as part of his response to the Defendant's Motion to Compel. Rather than being filed confidentially, these documents were made available to the public via ECF, and were able to be retrieved and viewed by the Associated Press, Minnesota Public Radio, and probably others. While the Plaintiff's attorneys claim that the public filing was done "mistakenly," it clearly was not, which can be seen by the evidence submitted pursuant to this motion and by Brodkorb's continued bizarre behavior – even after the Court sealed the improperly filed documents -- which belies <u>any</u> assertion of "mistake." Rather, it is a part of a pattern of behavior that suggests a deliberate strategy of trying this case before

the media rather than the Court, without regard to the innocent people hurt along the way. Such flagrant disregard for both the Court's Protective Order and the privacy of those whose names were leaked, causing them to be pursued by the media, justifies the highest sanction. The Senate respectfully requests that the Court issue sanctions against the Plaintiff and his counsel, including default judgment against the Plaintiff.

## FACTUAL BACKGROUND

In the remaining count in this action the Plaintiff has sued the Senate alleging that he was terminated on account of his gender. Part of the Plaintiff's "theory" has been that similarly situated female staffers were not terminated despite having illicit sexual relationships with male legislators. The Senate requested a protective order because of the sensitivity of such allegations[1] and the need to protect the privacy of those who could be named by Plaintiff in the suit. The Court originally issued a verbal protective order temporarily making all responses and documents produced "attorney's eyes only" and asked the parties to attempt to agree on the terms of a written order. On May 31, 2013, the Plaintiff submitted a proposed protective order. (Affidavit of Gregory J. Walsh, dated July 3, 2013, hereinafter referred to as "Walsh Aff." at ¶ 13, Ex. J.) The Walsh Affidavit and exhibits were filed with the Court in Response to the Senate's Motion to Compel. The Senate submitted its proposed changes to that order on June 5, 2013. (Affidavit of

---

[1] Which Plaintiff still has not provided any evidence of (admitting and conceding he has <u>no</u> documents to support his claims . . . "Plaintiff is not in possession of any documents that meet the criteria of Request No. 9." (Plaintiff's Memorandum of Law in Response to Defendant's Motion to Compel) and not answering subparts of Interrogatory 1.

Dayle Nolan in Support of Defendant's Motion for Rule 37 Sanctions, dated August 15, 2013, hereinafter referred to as "Nolan Aff." at ¶ 2.)  The Court then issued its Protective Order on June 6, 2013.  [Dkt. No. 58.]

On June 26, 2013, at the Senate's request (Nolan Aff. at ¶ 3, Ex. A) the Plaintiff designated certain of his responses to the Senate's interrogatories and document requests as "confidential" pursuant to the Court's Protective Order.  (Nolan Aff. at ¶ 4; Ex. B.) His list included information relating to the names of ten former members of the Senate, one current member and six staff employees (mostly former) supposedly involved in affairs that the Plaintiff alleges occurred.[2]

---

[2] Interrogatory No. 1 asked:

> Identify every state legislative staff member who you allege was similarly situated to your with respect to your relationship with Amy Koch, as alleged in paragraphs 20, 21, 38, 39, 41, 42, 56, 57, 59, and 60 of the Amended Complaint, and for each such staff person provide:
>
> a. The staff person's name and title at the time of any intimate relationship with an elected member of the legislature and the date(s) of the alleged relationship.
> b. The name and title of the elected member of the legislature who you believe or allege engaged in an intimate relationship with the staff member.
> c. All facts, if any, upon which you base a belief that the intimate relationship between the staff member and elected member of the legislature was known to the leadership of the house in which the elected member of the legislature served at the time of the relationship.
> d. The source(s) of your information about the relationship.

Plaintiff did not or could not answer subparts c or d at all and only partially answered a.

3.

The Senate filed a Motion to Compel Discovery on June 28, 2013.  (Nolan Aff.
¶ 5.)  About 4:00 p.m. the afternoon of July 3, 2013, the Plaintiff publicly filed exhibits
via ECF [Dkt. No. 68] as part of his response to the Senate's Motion to Compel
Discovery.  (Nolan Aff. at ¶ 6.)  This public filing contained confidential information,
which Plaintiff's own attorneys had designated as confidential and subject to the Court's
Order, including the names of individuals who were allegedly involved in affairs while
working for the Minnesota Senate.  The filing should have been made under seal, but the
Plaintiff apparently told the media that it was "mistakenly" made public.  (Nolan Aff. at
¶ 7, Ex. K.)  The Senate's counsel contacted the Court and Plaintiff's counsel to ensure
that the documents were removed from the public ECF system and properly filed under
seal.  (Nolan Aff. at ¶ 8, Exs. C-D.)  In Plaintiff's filings, only his memorandum of law
was designated as being filed under seal—the affidavit attaching all of the exhibits
containing confidential information was filed ECF.  (Nolan Aff. at ¶ 9; Ex. E-I.)

Contained within the filings in his answers to interrogatories were Plaintiff's
allegations that ten named legislators and six named staffers engaged in extramarital
affairs "intimate sexual relationships" or other illicit relationships.  The named
individuals were not even aware that they would be named in this suit.  In addition, the
filings contained a host of material that was not the least bit relevant or germane to the
Plaintiff's response to the motion.  For instance, the Plaintiff chose to include the original
complaint which had been filed in Ramsey County and was obviously in the Court's files
already, the amended complaint (also obviously already in the Court's files), his first
answers to interrogatories (not at issue in the motion), and copies of the Senate's legal

bills, despite the fact that such bills had nothing to do with the Senate's motion, nor any relevant responses of Plaintiff.  (Nolan Aff. at ¶ 10.)

While the Plaintiff claims that his counsel subsequently made efforts to have the filing be placed under seal, the damage had already been done:  at this time at least two separate news organizations (Minnesota Public Radio and the Associated Press) were able to gain access to the filings and copy the files with the confidential information. (Nolan Aff. at ¶ 11.)  Media reports have shown that the filings, including the confidential information have also already been distributed to reporter Tom Lyden at KMSP/FOX9 News and attorney Stephen Cooper.  (Nolan Aff. at ¶ 12.)  It is only a matter of time before the confidential information becomes more widely known.  (Nolan Aff. at ¶ 13, Ex. J.)  The salacious material combined with the scent of scandal has guaranteed continuing public interest and increasing efforts to find out the names and stories of innocent people which may very well continue to disrupt families and marriages.  The information is totally uncorroborated and likely nothing more than rumor and gossip, as demonstrated by Plaintiff's vague and generic answers.  The information lacks any specifics and mostly regards people who left the Senate long ago, and thus is not even relevant to Plaintiff's claims even if any of it was true which we do not know.

Due to the leak, all of the alleged participants in affairs were contacted by the media.  (Nolan Aff. at ¶ 14, Ex. K.)  These individuals had no idea that they were involved with the case, and expressed denial and anger at being contacted and

confronted.[3]  These potential witnesses will undoubtedly be reticent and unhappy about any further connection in this case due to their identities being leaked.  The Senate and its attorneys were faced with the Hobson's choice of informing the named individuals of the disclosure, which would violate the Protective Order, or honoring the Court's Order, thereby exposing the individuals to unexpected and intense scrutiny by the Associated Press,  over a holiday weekend.

There is ample evidence not only that the filing caused and will cause harm but also that Plaintiff and Plaintiff's counsel's actions were intentional and deliberate.  The following examples provide the roadmap showing the obvious deliberate nature of their actions:

- The Plaintiff's interrogatory responses at issue herein was <u>already</u> in the Court file, having been filed <u>under seal</u> by Senate counsel on June 28, 2013, as part of the Motion to Compel, so Plaintiff and his attorneys were obviously deliberately and maliciously making it public.  (Nolan Aff. ¶¶ 5 and 6.)

- The Protective Order, which had been in place since June 6, 2013, was explicit in its terms with regard to the methodology for dealing with confidential documents particularly when filing them with the Court.

---

[3] As noted in the AP article, "The AP attempted to contact those named and reviewed court records for those involved in divorces or other proceedings.  Four flatly denied allegations read to them, with some expressing anger at being pulled into the case.  Six declined comment or indicated they were consulting with an attorney.  Five didn't respond."  (Nolan Aff. Ex. K.)

- Even the Plaintiff's final proposed protective order, submitted to the Court for consideration, had recommended that identical filing process.  (Walsh Aff. ¶ 13, Ex. J.)

- On June 25, counsel for the Senate contacted Plaintiff's counsel and asked them to designate what, if any, information Plaintiff wanted to designate as confidential pursuant to the Protective Order so that the papers could be properly filed .  (Nolan Aff. ¶ 3, Ex. A.)

- Greg Walsh responded by letter dated June 26, 2013, specifically stating that, pursuant to the Protective Order and specifically paragraph 3(d), certain items were to be designated confidential.  He therefore obviously knew and had the responsibility to know the terms of the Protective Order and what was confidential, and presumably did not forget all about it less than a week later on July 3, 2013.  Walsh's letter even specifically stated that "disclosure of confidential information can only be made to the individuals identified in paragraph 5 of the protective order."  Phil Villaume was copied on the letter. (Nolan Aff. ¶ 4, Ex. B.)

- The Senate served and filed its motion papers on its motion to compel on June 28, 2013, and did so in accordance with the Protective Order in place, thus Plaintiff's counsel would have had yet another opportunity to view and review the correct manner in which to file their responsive papers and submissions.  (Nolan Aff. ¶ 5.)

- Plaintiff filed his Memorandum of Law in Opposition to Defendant's Motion to Compel under seal pursuant to the Protective Order, showing that deliberate

7.

decisions were made regarding the submissions as to what to file under seal pursuant to the Protective Order and what was determined not to be filed pursuant to the Protective Order.  (Nolan Aff. ¶ 9, Ex. E.)  Note also that the letter speaks of all documents filed via ECF clearly showing a deliberate intentional distinction between what was filed under seal and what was filed ECF available to the public.

- See also Nolan Aff. ¶ 9(a), Ex. F, specifically referencing that documents were filed under seal, via conventional filing, <u>and</u> by ECF, thereby further evidencing that distinctions between how the various submissions were handled were in fact deliberately made.

- See also Nolan Aff. ¶ 9(b), Ex. H, Certificate of Service Via Conventional Filing/Sealed Documents signed by Greg Walsh certifying that he "caused . . .Plaintiff's Memorandum of Law . . . to be filed conventionally with the Clerk of Court, and that the foregoing documents [sic] and notice of electronic filing of the applicable placeholder be delivered to" defense counsel.

- See also Nolan Aff. ¶ 9(c), Ex. I, which is the placeholder for the Memorandum of Law clearly indicating that only that document was filed under seal.

- See also Nolan Aff. ¶ 9(d), Ex. G which is the Certificate of Service signed by Greg Walsh certifying that he caused the placeholder for the Memorandum of Law to be filed under seal and his affidavit along with the offending exhibits and the word count compliance certificate to be filed electronically with the Clerk of Court through ECF).

- On July 3, immediately as the ECF filings were starting to come through, counsel for the Senate noticed the erroneous caption and contacted Greg Walsh, Phil Villaume and Judge Boylan's chambers, noting the wrong caption and requesting that they be called back and re-submitted correctly.  (Nolan Aff. ¶ 8, Ex. C.)

- Greg Walsh waited until Friday to respond to the email, vaguely stating that "all steps" were being taken to continue to protect the information from being released any further, with no further explanation.  (Nolan Aff. ¶ 15, Ex. D.)

Other indicia of the deliberate and intentional nature of Plaintiff and Plaintiff's attorneys' misconduct and violation of the Protective Order include:

- The amount of litigation experience that each attorney has had.  Phil Villaume is a 1979 graduate of law school, holds himself out to be an expert in litigation and has handled at least 28 U.S. district court federal court cases in the last 10 years. (Nolan Aff. ¶ 16, Ex. L.)

- Greg Walsh has been admitted to practice in Minnesota and to the U.S. District Court, District of Minnesota since 1999 and holds himself out to be a "skilled and talented trial lawyer."  (Nolan Aff. ¶ 17, Ex. M.)

- Within a day after Judge Boylan executed and filed the Protective Order in this action, Greg Walsh issued a press release stating that Mr. Brodkorb fought against the Protective Order issued today by the Court, which could deny taxpayers an opportunity to learn the full details of the actions of the legislature and stating that it was his and his client's goal that this case will proceed in the normal, open and transparent legal process.  (Nolan Aff. ¶ 18, Ex. N.)

9.

- Senate counsel implored Plaintiff's counsel to try and do something to minimize the damage they caused and would be causing innocent people by their deliberate disclosure of uncorroborated confidential information, but obviously nothing was done.  (Nolan Aff. ¶ 19, Ex. O.)

- Along with their threats and efforts to extract money from the Senate and the Minnesota taxpayers, Brodkorb and his attorneys have continuously and repeatedly publicly threatened to make names of other legislators and legislative employees public.  (Nolan Aff. ¶ 20, Ex. P.)  The news articles are just a sampling of the many media sources with statements by Brodkorb and his attorneys reaching back to early 2012 and continuing to present.

- Plaintiff has certainly not acted contrite or concerned about a so-called "mistaken" filing.  After the filing, he contacted the press stating that he had lots of other evidence that had been submitted on other Capitol relationships adding that the answers to interrogatories that had been posted publicly "- - to say it scratched the surface is an insult to the surface."  (Nolan Aff. ¶ 21, Ex. Q.)  As recently as August 1, 2013, when he contacted various press to talk about Villaume's withdrawal, he again repeated the same assertions.  (Nolan Aff. ¶ 22, Ex. Q.)

- In the public filing, the Plaintiff's attorneys submitted material that was totally irrelevant to the Senate's motion and/or was already in the Court file.  The only explanation is that they intended it to be seen by the public.

- Plaintiff's attorneys had initially refused to answer the Interrogatory No. 1 claiming:

> ANSWER: Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory as improper to the extent that it seeks information already in the Defendant's possession, custody, or control. Subject to and without waiving any objections Plaintiff will produce the information relative to this Interrogatory to the Court <u>under seal</u> pursuant to the Court's Order issued April 25, 2013, after the Rule 16 Conference.

(Plaintiff's initial Answers to Defendant's First Set of Interrogatories, executed by Plaintiff on May 8, 2013 (emphasis added)) then later answered attorney's eyes only, showing that they knew that care needed to be employed.  (Nolan Aff. ¶ 23, Ex. R.)

Despite the Plaintiff's claims that the leak of confidential information was a "mistake" or inadvertent, it is part and parcel of Plaintiff's consistent, blatant and continuing litigation strategy of attempting to try this case before the media rather than the Court.  The Plaintiff's "accidental" public filing of confidential material was no accident—it was a deliberate attempt to further the Plaintiff's aim of embarrassing the Senate.  Not only is this a clear and direct violation of the Court's Protective Order, but it is also a flagrant abuse of the discovery process.  The Court is fully justified in levying the harshest sanctions against the Plaintiff.

## **ARGUMENT**

## I.   **FED. R. CIV. P. 37 AUTHORIZES SANCTIONS FOR VIOLATING PROTECTIVE ORDERS**

Fed. R. Civ. P. 37 provides for sanctions for parties in violation of discovery orders, including protective orders issued under Fed. R. Civ. P. 26(c).  *Sandoval v. Am.*

*Bldg. Maint. Indus.*, 267 F.R.D. 257, 264 (D. Minn. 2007).  The Rule states in pertinent part:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>
>> (iii) striking pleadings in whole or in part;
>>
>> (iv) staying further proceedings until the order is obeyed;
>>
>> (v) dismissing the action or proceeding in whole or in part;
>>
>> (vi) rendering a default judgment against the disobedient party; or
>>
>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  In addition to the sanctions made available by Rule 37, a court has the inherent power to award attorneys' fees for the violation of a protective order.  *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 45, 111 S. Ct. 2123 (1991)).

## II.     PLAINTIFF'S WILLFUL VIOLATION OF THE PROTECTIVE ORDER WARRANTS DISMISSAL OF HIS CASE

One of the remedies available under Rule 37 is the rendering of a default judgment against the disobedient party.  Fed. R. Civ. P. 37(b)(2)(A)(vi).  Default judgment is appropriate "where the party against whom the judgment is sought has engaged in willful violations of court rules, contumacious conduct, or intentional delays." *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001).  "[A] party is responsible for the actions and conduct of [his] counsel and . . ., under Rule 37 – appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions." *Denton v. Mr. Swiss of Mo., Inc.*, 564 F.2d 236, 241 (8th Cir. 1977).  "[A]lthough preclusion of evidence and dismissal of the action are harsh remedies and should be imposed only in rare situations, they are necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a 'paper tiger.'" *Update Art, Inc. v. Modiin Pub, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (*quoting Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1064 (2d Cir. 1979) (internal citation omitted)).  To justify the sanction of dismissal there must be (1) a discovery order providing or permitting discovery, which includes protective orders,[4] (2) a willful violation of that order, and

---

[4] *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) ("the district court here concluded that its Protective Order in this case was an 'order to provide or permit discovery' as the phrase is used in Rule 37(b)(2). We agree."); *see also United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 911 (9th Cir. 1986) (upholding the court's grant of sanctions under Rule 37(b) for violation of a protective order); *see also Coleman v American Red Cross*, 979 F2d 1135, 1196 (6th Cir 1992) (applying Rule 37 sanctions to violation of protective order but finding insufficient evidence of prejudice to support dismissal); *but see Lipscher v LRP Publications, Inc.*, 266 F.3d 1305, 1323 (11th Cir, 2001) (overturning sanctions for the violation of a

(3) prejudice to the other party.  *Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co.*,

559 F.3d 888, 899 (8th Cir. 2009); *see also Schoffstall v. Henderson,* 223 F.3d 818, 823

(8th Cir. 2000).  All three of those elements are met here.

First, the Court's Protective Order, issued June 6, 2013 [Dkt. No. 58], constitutes a

discovery order for purposes of the sanctions rule.  This district has followed the Fifth,

Sixth and Ninth Circuits in holding that violations of Rule 26(c) protective orders are

subject to Rule 37 sanctions:

> Rule 37(b) of the Federal Rules of Civil Procedure provides
> for sanctions for the violation of discovery orders, *which
> include protective orders issued under Federal Rule of Civil
> Procedure 26(c).  See Schiller v. City of New York*, No. 04
> Civ. 7921KMK/JCF, 2007 U.S. Dist. LEXIS 40253, 2007
> WL 1623108 at *3 (S.D.N.Y. 2007) (string citation omitted).
> Further, the Court has the inherent power to assess attorneys'
> fees as a sanction for willful disobedience of a protective
> order.  *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th
> Cir. 1998) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 45,
> 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)); *see also Excellus
> Health Plan, Inc. v. Tran*, 222 F.R.D. 72, 73 (W.D.N.Y.
> 2004) ("Of course, violations of the protective order's
> provisions are subject to the full range of sanctions available
> pursuant to the Federal Rules of Civil Procedure and the
> inherent power of the court.") (citation omitted).

*Sandoval v. Am. Bldg. Maint. Indus.*, 267 F.R.D. 257, 264 (D. Minn. 2007) (emphasis

added).  This same position was taken by Judge Keyes in a more recent case:

> Under Federal Rule of Civil Procedure 37(b)(2), when a party
> fails to obey an order to provide or permit discovery,
> *including a protective order*, the court may impose any of the
> sanctions available under Rule 37(b)(2)(A)(i)-(vii), and "may

---

protective order on the grounds that Rule 26(c) protective orders are not within the
purview of Rule 37(b) sanctions).

> issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A);
> *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257,
> 264 (D. Minn. 2007) ("Rule 37(b) of the Federal Rules of
> Civil Procedure provides for sanctions for the violation of
> discovery orders, which include protective orders under
> Federal Rule of Civil Procedure 26(c).").

*United States ex rel. Johnson v. Golden Gate Nat'l Senior Care, L.L.C.*, 2013 U.S. Dist.

LEXIS 39011, 23–24 (D. Minn. Mar. 20, 2013) (emphasis added).  The terms of the

Protective Order are binding on all parties in this litigation and allow for the designation

of documents and other materials as "confidential."  Confidential information must be

filed under seal.  Accordingly, the Protective Order is an order that is protected by the

Court's power to sanction under Rule 37.

Second, the Plaintiff's conduct constitutes a willful violation of the Court's

Protective Order.  The public filing of confidential information was not done mistakenly

as Plaintiff's counsel apparently alleges, but part of the continuing pattern of strategic

leaks and threats to do so.  Such defiance of the Court's Protective Order shows a

shocking disrespect for the Court and its orders, and should be punished with the highest

sanctions.  There is substantial evidence to support the position that the leak was

intentional as detailed supra:  The Plaintiff's filing contained the required placeholder

showing that the memorandum of law would be filed under seal, but did not contain a

placeholder for the affidavit or exhibits which were instead filed publicly.  [Dkt. No. 67-

2.]  Thus, the requisite practice for filing under seal was known and available for the

filing, but simply not followed for the most sensitive documents involved.  The lead

attorneys in the action, Phil Villaume and Greg Walsh, have extensive litigation

experience.  Mr. Villaume has been practicing law for 34 years, has handled at least 28 federal court cases, and holds himself out as an expert in litigation.  Working in conjunction with Mr. Walsh, who has been admitted to practice in Minnesota for 14 years, more than adequate experience existed to preclude any accidental publication of confidential information.

Even more damning are Plaintiff's comments to the press after the Court stepped into seal the record.  When the legal pundits quoted in the press noted the irrelevance of the situations described in Plaintiff's publicly filed interrogatory answer, Plaintiff bragged that the names in his sworn interrogatory answer had not "scratched the surface" of the evidence submitted by him.  (Nolan Aff. at ¶ 24; Ex. Q.)  Plaintiff's transparent attempt to keep alive his long standing threat to publish embarrassing information points to his ongoing litigation strategy of attempting to sway public opinion in his favor and hold the threat of publicity as a club hanging over the Senate.  In reality, as shown by the very limited and irrelevant information in his interrogatory answer,[5] Plaintiff has no further information to share.  However, he wants the specter of the release of additional information, coupled with his demonstrated willingness to release it in violation of the Protective Order, to give him leverage in the case.  Plaintiff's gasconade and lack of contrition, even after the Court sealed the information Plaintiff filed publicly, shows this was no mistake, but a willful strategy.  Plaintiff opposed the imposition of *any* protective

---

[5] Plaintiff was required to furnish a complete answer to Interrogatory No. 1, about the names of comparably situated personnel.  He signed the answers under <u>oath</u>.  If his answer truly did not "scratch the surface" of the names and facts known to him, Plaintiff's answer is perjury.

order.  Rule 26(f) Report, p. 5.  His opposition to a protective order failed, and his

attorney trumpeted to the press how Plaintiff had opposed its imposition, preferring that

the legal process be "transparent."  (Nolan Aff. ¶ 25, Ex. N.)  Plaintiff has now, willfully,

secured the publication of information in violation of the Order he opposed.

Where a violation of a protective order is willful or the result of bad faith, a

sanction of dismissal is appropriate.  *See, e.g., Boogaerts v. Bank of Bradley*, 961 F.2d

765, 768 (8th Cir. 1992).  When the facts demonstrate willfulness and bad faith, the court

need not investigate the propriety of a less extreme sanction, but may proceed to

dismissal.  *Hairston v. Alert Safety Light Products, Inc.*, 307 F.3d 717, 719 (8th Cir.

2002); *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527 (8th Cir. 2000).  Here, the

substantial evidence of bad faith and willfulness justifies the highest sanctions.

Finally, these leaks have resulted in prejudice, not only to the Senate, but to many

individuals and their families who have had their names and reputations placed in

jeopardy by the Plaintiff's willful and flagrant violations of the Court's Protective Order.

Prejudice to an opposing party is found when the violation impairs that party's ability to

determine the factual merits of a party's claim.  *Avionic Co. v. General Dynamics Corp.*,

957 F.2d 555, 559 (8th Cir. 1992).  Plaintiff's willful violation of the Protective Order

has impaired the Senate's ability to gather actual facts.

Because the Associated Press and other news agencies were able to retrieve the

leaked documents, potential witnesses – and staff -- have been contacted by reporters.

Some of those inquiries were not only offensively intrusive, but clearly based on

complete falsehoods in Plaintiff's interrogatory answer.  *See, e.g.*, Affidavit of

Defendant's Affiant No. 1(filed under seal).  This harms not only the potential witnesses, some of whom have reportedly expressed anger at being contacted by the media[6], but also the Senate's ability to continue to defend this case.  Witnesses will understandably be loathe to furnish information or become involved after seeing the spectacle made of witnesses named in the case.  That problem has been manifest even for purposes of securing affidavits in conjunction with this motion.  (Nolan Aff. ¶26.)

Additionally, the Senate and its attorneys were unable to warn the named individuals because that would violate the terms of the order, and therefore have probably not endeared themselves to the individuals.  Those persons may now, understandably, resist informal interviews or even discovery making presentation of the Senate's defenses far more difficult.  Others persons and news media beyond those currently known may also have access to the improper filings, and once publicly disseminated, the damage to the Senate's case and the privacy interests of the people named will only increase.  Those named may not have been involved in any illicit affairs while at the Capitol, but the damage done to their names, families, and reputations from Plaintiff's lies could nevertheless be enormous (*see, e.g.,* Affidavit of Defendant's Affiant No. 1 filed under seal with this motion).

The resultant damage to the Senate's case is irreparable.  In light of the attendant publicity, anyone who learns that his or her name is being brought up in the litigation will understandably assume that privacy cannot be guaranteed, and that false statements about

---

[6] Nolan Aff., Ex. K.

them may be published without recourse. This will make it acutely difficult to secure their cooperation, as they may fear falling victim to Plaintiff's scorched earth tactics. Although the litigation might be processed with all such witnesses being put under subpoena to force their participation, it would be unfair to require them to participate as deponents and witnesses when the Court cannot assure their privacy. If the Senate cannot secure cooperation from witnesses whom Plaintiff pillories with allegations, summary judgment cannot be fairly considered. Plaintiff's public barratry of innocent witnesses has created this unworkable state of affairs, and the dismissal of his case should be the outcome.

The leaks are part of the Plaintiff's strategy of litigating this case in the court of public opinion rather than in the courtroom. His and his attorneys' actions are a willful attempt at continuing the Plaintiff's improper litigation strategy and inflaming prejudice against the Senate. These actions will not stop until the Plaintiff and his counsel are properly sanctioned, and the appropriate sanction for such flagrant acts is dismissal.

## III.  ALTERNATIVELY, THE PLAINTIFF SHOULD BE PRECLUDED FROM USING THE LEAKED MATERIAL AT TRIAL OR OPPOSING SUMMARY JUDGMENT

While dismissal is an appropriate and just sanction given the nature of the Plaintiff and his counsels' actions, the Court may alternately restrict the Plaintiff from using the leaked evidence at trial under Fed. R. Civ. P. 37(b)(2)(A)(ii). *See, e.g., EEOC v. CRST Van Expedited, Inc.*, 670 F.3d 897, 932 (8th Cir. 2012). Sanctions less than dismissal or default judgment may be levied even if the party's conduct was *not* willful or in bad faith. *Rottlund Co. v. Pinnacle Corp.*, 222 F.R.D. 362, 375 (D. Minn. 2004). Although

adequate evidence establishes that Plaintiff acted willfully so as to justify dismissal, Plaintiff should, at a minimum, be foreclosed from using any evidence, or making any allegations, pertaining to the persons identified in the improperly published answer to Interrogatory No. 1.

The combined effect of Plaintiff's repeated threats to make his allegations of affairs involving other members of the Senate public, and his improper public filing of precisely that information despite a Court Order precluding its dissemination, has hamstrung the defense, particularly with regard to the persons who were defamed and whose privacy the Plaintiff violated. Continued intrusions into the lives of those persons should be avoided, as they undoubtedly would prefer to be left alone. Exclusion of evidence would at least put an end to the Plaintiff's attacks against them. If the Court allows the case to proceed at all, then at least those persons who have had their names, and false statements about them put in the hands of the media and other persons, should be shielded from further attention and all discussion of them should be excluded from evidence.

The exclusion of this evidence will not materially affect Plaintiff's case. None of the persons identified in Plaintiff's answer to Interrogatory No. 1 could support Plaintiff's claims even if they had participated in affairs, which the Senate in no way concedes. As the Court is aware, Plaintiff bears the burden of showing that other, female staffers who he alleges were treated more favorably are comparably situated. *Lynn v. Deaconess Medical Ctr.-West Campus*, 160 F.3d 484, 487 (8th Cir.1998) (citation omitted). If Plaintiff cannot make that showing, his claim of discrimination has no viability. The

information in the interrogatory answer does not indicate that those persons were comparably situated even if they had affairs, since they are all radically different in a number of critical respects. They all involve completely different decision makers, many are decades old, do not involve Senate leadership, and occurred when a different political party held the majority position. They cannot possibly support Plaintiff's claims. *EEOC v. Kohler Co.*, 335 F.3d 766, 776 (8th Cir. 2002). Plaintiff will not be prejudiced in his ability to litigate the case by this exclusion, but only in his ability to cause collateral damage to innocent bystanders.

The use of this sanction would be substantially more limited than full dismissal of the case, but would serve the purpose of punishing the Plaintiff's and his attorneys for their flagrant disregard of the Court's Protective Order, and deterring further future conduct.

## IV.    THE SENATE SHOULD ALSO RECOVER THE FEES INCURRED BY PLAINTIFF'S WILLFUL DISREGARD OF THE PROTECTIVE ORDER

The Plaintiff's willful disregard of the Court's Protective Order is additionally sanctionable by an award of attorneys' fees. Rule 37 and a court's inherent authority to issue sanctions allow for the assessment of attorneys' fees against a party that violates a court's orders or the Rules of Civil Procedure. *Greiner*, 152 F.3d at 789. "Fed. R. Civ. P. 37(b) empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, Fed. R. Civ. P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Falstaff Brewing Corp.*

21.

*v. Miller Brewing Co*., 702 F.2d 770, 784 (9th Cir. 1983).  Attorney fee awards under

Rule 37 have been granted for violations of court protective orders.  *See, e.g., Smith &*

*Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) ($29,667.71

in fees and expenses awarded to party after opposing counsel leaked confidential

information); *see also United States v. Nat'l Med. Enters., Inc*., 792 F.2d 906, 911 (9th

Cir. 1986) (upholding the court's grant of sanctions under Rule 37(b) for violation of a

protective order); *Am. Nat'l Bank & Trust Co. v. AXA Client Solutions, LLC*, 2002 U.S.

Dist. LEXIS 9511 (N.D. Ill., May 24, 2002)(awarding all legal fees incurred investigating

the protective order violation).  *See also Trenado v. Cooper Tire & Rubber Co*., 274

F.R.D. 598, 600- 601 (S.D. Tex. 2011) (collecting additional cases).  Here, an award of

fees is more than adequately justified.

The Plaintiff's deliberate leaks have caused additional expense, including bringing

this motion, expenses which are inevitably borne by the taxpayers of the State of

Minnesota.  Such a blatant violation of the Court's Protective Order should not go

unpunished.  Sanctions are "not merely to penalize those whose conduct may be deemed

to warrant such a sanction, but [also] to deter those who might be tempted to such

conduct in the absence of such a deterrent."  *Nat'l Hockey League v. Metro. Hockey*

*Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778 (1976).  Here, monetary sanctions would

further the goal of deterring such conduct as well as reimbursing the taxpayers of

Minnesota for the harm that Plaintiff's actions have caused.

## <u>CONCLUSION</u>

The Plaintiff's actions in allowing material that the Plaintiff knew was confidential, as shown by the fact that he had designated it as confidential, represents a clear violation of the Court's Protective Order.  This leak has caused damage not only to the Senate's ability to defend itself against the Plaintiff's accusations, but also has infringed upon the privacy and reputations of other non parties to this case.  Such an act is deserving of the highest sanction under Rule 37.  Accordingly, the Minnesota Senate respectfully asks the Court to enter an Order granting default judgment against the Plaintiff dismissing his complaint with prejudice and awarding the Senate the reasonable attorneys fees and costs it incurred because of the violations, including in bringing this motion.  If the Court is unwilling to dismiss the action, then the Senate asks that, in addition to an award of fees and costs, foreclosing Plaintiff from offering any evidence or making any mention of or allegations about in an y manner himself or through others, verbally, by documentation in motions or at trial pertaining to any of the persons listed in the improperly disclosed interrogatory answer.

Respectfully submitted,

Dated: August 15, 2013

s/ Dayle Nolan
Dayle Nolan (121290)
Christopher J. Harristhal (175754)
Larkin Hoffman Daly & Lindgren Ltd.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota  55431-1194
(952) 835-3800

Attorneys for Defendant

1464951.7

23.