UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Michael Brodkorb,

        Plaintiff,

v.

Minnesota Senate,

        Defendant.

File No. 12-CV-01958 (SRN/AJB)

**AFFIDAVIT OF DAYLE NOLAN IN SUPPORT OF DEFENDANT'S MOTION FOR RULE 37 SANCTIONS**

---

STATE OF MINNESOTA  )
                               ) ss.
COUNTY OF HENNEPIN  )

Dayle Nolan, being first duly sworn, upon oath, deposes and states:

1. I am an attorney with Larkin Hoffman Daly & Lindgren, Ltd., counsel for Defendant Minnesota Senate in the above-captioned action.

2. Pursuant to Judge Boylan's directive in the Rule 16 Conference, since the parties were unable to agree on the terms for a protective order, the Defendant submitted its version of an acceptable protective order on June 5, 2013, to Judge Boylan for consideration.

3. On June 25, 2013, the Defendant's counsel requested that Plaintiff identify what if any of the information he provided should be treated as confidential under the Protective Order. *See* email dated June 25, 2013, from Christopher Harristhal, attached hereto as **Exhibit A**.

4. On June 26, 2013, Plaintiff's counsel identified which of Plaintiff's responses to the Senate's interrogatories and document requests were to be treated as "confidential" pursuant to the Court's Protective Order. *See* letter dated June 26, 2013, from Gregory Walsh, attached hereto as **Exhibit B**.

5. The Senate filed a Motion to Compel Discovery and supporting documents on June 28, 2013. Plaintiff's Answers to Defendant's First Set of Interrogatories <u>Attorneys Eyes</u>

<u>Only</u> was attached as Exhibit C to the Affidavit of Christopher J. Harristhal in support of Defendant's Motion to Compel Discovery Responses and properly filed under seal pursuant to Plaintiff's designation of those answers as "confidential."

6. About 4:00 p.m. on July 3, 2013, Plaintiff responded to Defendant's motion to Compel Discovery. Plaintiff's ECF filing contained confidential information which Plaintiff's own attorneys had designated as "confidential" and subject to the Court's Protective Order, including the names of individuals who were allegedly involved in affairs while working for the Minnesota Senate. Plaintiff re-filed publicly the same "attorneys eyes only" interrogatory answers that Defendant filed under seal only a week prior.

7. Plaintiff alleges that the "confidential" documents were filed "mistakenly." *See* article entitled *AP: Fired Senate staffer details other affairs*, dated July 11, 2013, attached as **Exhibit K.**

8. I contacted the Court and Plaintiff's counsel to ensure that the documents were removed from ECF and re-filed under seal. *See* emails dated July 3, 2013, from Dayle Nolan, attached as **Exhibits C-D**

9. In Plaintiff's filings, only his memorandum of law was designated as being filed under seal—the affidavit attaching all of the exhibits containing confidential information was filed for public viewing via ECF. *See* July 3, 2013 filing correspondence from Plaintiff's counsel, certificates of service and ECF Placeholder for Memorandum of Law, attached hereto as **Exhibits E-I**. These documents illustrate Plaintiff's actions were deliberate and purposeful:

    (a) Plaintiff made a deliberate decision to file the responsive memorandum of law under seal pursuant to the Protective Order, while making the decision to file the other supporting documents publicly via ECF. *See* July 3, 2013 letter from Phil Villaume, attached as **Exhibit E**.

2.

(b)     Phil Villaume specifically referenced what documents were filed under seal, via conventional filing, and by ECF in his letter to Judge Nelson dated July 3, 2013, attached as **Exhibit F**.

(c)     The Certificate of Service Via Conventional Filing/Sealed Documents was signed by Greg Walsh certifying that he caused Plaintiff's Memorandum of Law to be filed conventionally with the Clerk of Court, which goes to show Plaintiff's counsel had made the deliberate decision to file the responsive memorandum under seal. Additionally a placeholder was created for the Plaintiff's responsive memorandum. *See* **Exhibits H and I**.

(d)     Another Certificate of Service was created and signed by Greg Walsh certifying that he caused the placeholder for the responsive memorandum and his affidavit along with the offending exhibits to be filed electronically with the Clerk of Court through ECF. *See* **Exhibit G**.

10.     One of the documents that was filed publicly by Plaintiff was Plaintiff's answers to interrogatories "attorneys eyes only" in which he listed ten legislators and six staffers who had allegedly engaged in extramarital affairs or other illicit relationships. The filings also contained a host of material that was not the least bit relevant or germane to the Plaintiff's response to the motion. Plaintiff chose to include the original complaint, filed in Ramsey County and already part of the Court's record, the amended complaint, also part of the Court's record, his first answers to interrogatories, and copies of the Senate's legal bills, none of which had anything to do with the Senate's motion to compel nor any relevant responses of Plaintiff.

11.     At least two separate news organizations including the Minnesota Public Radio and the Associated Press, already obtained a copy of the documents containing the confidential information. Both news organizations contacted me multiple times.

12.     The media reports indicate that Tom Lyden and attorney Stephen Cooper have also been shown the confidential information.

13.     It is only a matter of time before the confidential information becomes more widely known as there are several hints and comments in various blogs and social media sources calling for the information to be released. *See* social media printouts attached as **Exhibit J**.

14. Due to the leak, the alleged participants in affairs were contacted by the media. *See* **Exhibit K**. These individuals had no idea they were involved in the case and expressed denial and anger at being contacted and confronted.

15. Plaintiff's attorney Greg Walsh did not respond to my email on July 3 until July 5, 2013 and then only vaguely stated that "all steps" were being taken to protect the information from being released any further without further explanation. *See*, email string beginning July 3, 2013 to July 5, 2013, attached as **Exhibit D**.

16. Phil Villaume is an experienced attorney who holds himself out to be an expert in litigation. He graduated law school in 1979 and has handled 28 U.S. district court federal court cases in the last 10 years. *See* Villaume firm profile and attorney federal case report, attached as **Exhibit L**.

17. Greg Walsh is also an experienced attorney who holds himself out to be a skilled and talented trial lawyer. He was admitted to practice law in Minnesota and U.S. District Court of Minnesota in 1999. *See* Walsh firm profile, attached as **Exhibit M**.

18. Within a day after the issuance of the Protective Order in this action, Greg Walsh issued a press release stating that Mr. Brodkorb fought against the Protective Order, stating that it could deny taxpayers an opportunity to learn the full details of the actions of the legislature and that it was his and his client's goal that this case will proceed in the normal, <u>open</u> and <u>transparent</u> legal process. *See* June 7, 2013, Press Release issue by Greg Walsh, attached as **Exhibit N**.

19. I implored Plaintiff's counsel to try and do something to minimize the damage they caused and would be causing innocent people by their deliberate disclosure of uncorroborated confidential information, but obviously nothing was done. *See* email dated July 5, 2013, from Dayle Nolan, attached as **Exhibit O**.

20. Brodkorb and his attorneys have continuously and repeatedly threatened to make names of other legislators and legislative employees public. This is consistent with their threats and efforts to extract money from the Senate and Minnesota taxpayers. A sampling of news articles from early 2012 to the present illustrating Brodkorb and his attorneys' statements are attached as **Exhibit P**.

21. Plaintiff has not acted contrite or concerned about the so-called "mistaken" filing. He contacted the press after the filing stating he had lots of other evidence that had been submitted on other Capitol relationships and that the interrogatories that had been publicly posted only "scratched the surface" of his other evidence that he had supposedly provided. *See* article entitled *Brodkorb: List of names isn't my only evidence of Capitol affairs*, by Brian Bakst, attached as **Exhibit Q**.

22. On August 1, 2013, Plaintiff again contacted various press to talk about Villaume's withdrawal and repeated the same assertions. However, no other details on other affairs has been provided. *See* **Exhibit Q**.

23. Plaintiff's attorneys initially refused to answer Interrogatory No. 1, stating they would "produce the information to the Court under seal," but then subsequently answered portions of the interrogatory "attorney's eyes only" thereby showing they knew that care needed to be employed. *See* Plaintiff's fully executed Answers to Defendant's First Set of Interrogatories, served May 9, 2013, attached as **Exhibit R**.

24. Because members of the press were able to retrieve the leaked documents, potential witnesses—and their staff—have been contacted by reporters. Those potential witnesses have been harmed as has the Senate's ability to continue to defend this case. Witnesses will understandably be loathe to furnish information or become involved after seeing

the spectacle made of witnesses named in the case. The problem has been manifest even for purposes of securing affidavits in conjunction with this motion.

  FURTHER YOUR AFFIANT SAYETH NOT.

s/ Dayle Nolan<br>Dayle Nolan (121290)

Subscribed and sworn to before me this
15th day of August, 2013.

s/ Melissa R. Roeglin
   Notary

1469479.3

6.