# EXHIBIT A

**Nolan, Dayle**

**From:** Harristhal, Christopher J.
**Sent:** Tuesday, June 25, 2013 1:05 PM
**To:** 'greg@walsh-gaertner.com'; 'pgvassoc@att.net'; 'jeffschiek@att.net'
**Cc:** Nolan, Dayle
**Subject:** Brodkorb v. Senate - confidentiality designations

Counsel,

Although Plaintiff had designated some information as "Attorneys Eyes Only" prior to issuance of the court's protective order, no such category of protection exists under the actual protective order. The protective order makes allowance for the designation of information to be "confidential," but none of the plaintiff's discovery responses have been so designated.

As you know, we will be filing a motion to compel discovery this week, and we need to know what, if any, information the plaintiff wishes to designate as "confidential" so we can determine whether any further designations are appropriate and properly file our papers which may have to be filed under seal depending upon what is so designated. So, please advise by 9 a.m. tomorrow as to what information plaintiff has produced that he is designating "confidential" under the protective order. If we do not receive such designations by then, we will assume that none of the information plaintiff produced is intended by plaintiff to be "confidential."

**Christopher Harristhal**
**Shareholder**
**MSBA Certified Labor & Employment Law Specialist**
p | 952-896-3312
f | 952-842-1710
www.larkinhoffman.com

Larkin Hoffman Attorneys

# EXHIBIT B



**Gregory J. Walsh**
Attorney at Law
Direct: 651-379-0973
Email: greg@walsh-gaertner.com

**Walsh & Gaertner Building**
24 East Fourth Street
St. Paul, MN 55101
T 651-228-9968
F 651-224-2672

June 26, 2013

Mr. Christopher J. Harristhal
Larkin Hoffman
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, MN 55431

Re: Michael B. Brodkorb vs. Minnesota Senate
Our File No.: 12096B

Dear Mr. Harristhal:

Pursuant to the Protective Order, and specifically paragraph 3(d), the following Answers to Interrogatories and Responses to Request for Production of Documents are deemed by Plaintiff to be "Confidential."

1. Plaintiff's Answer to interrogatory No. 1;
2. Plaintiff's Answer to Interrogatory No. 4(c);
3. Plaintiff's Answer to interrogatory No. 6;
4. Plaintiff's Answer to interrogatory No. 8;
5. Plaintiff's Response to Request for Production No. 11; and
6. Plaintiff's Response to Request for Production No. 13.

Disclosure of confidential information can only be made to the individuals identified in paragraph 5 of the Protective Order. Additionally, Defendant has not yet identified the members of the Minnesota Senate's litigation team as discussed at the Rule 16 Conference. This information must be disclosed to Plaintiff prior to the re-disclosure of any information produced by Plaintiff through discovery or in his initial disclosures.

Very truly yours,

G. J. Walsh

Gregory J. Walsh

GJW/pk

cc: Michael B. Brodkorb
Phil Villaume, Esq.

EXHIBIT
tabbies
B

# EXHIBIT C

**Nolan, Dayle**

**From:** Nolan, Dayle
**Sent:** Wednesday, July 03, 2013 4:20 PM
**To:** Greg Walsh (greg@walsh-gaertner.com); pgvassoc@att.net
**Cc:** Arthur Boylan (boylan_chambers@mnd.uscourts.gov); Harristhal, Christopher J.
**Subject:** ECF filings
**Attachments:** Document.pdf

Greg: your ECF filings have the WRONG caption. Please immediately call those back and submit correctly. These are public documents upon filing and should be done correctly.

Dayle Nolan (Ms.)

# EXHIBIT D

**From:** Greg Walsh [greg@walsh-gaertner.com]
**Sent:** Friday, July 05, 2013 8:16 AM
**To:** Nolan, Dayle; pgvassoc@att.net
**Cc:** 'Arthur Boylan'; 'Kathy_Thobe'; Harristhal, Christopher J.; Estrem, Tammy J.
**Subject:** RE: email to Walsh et. al
**Attachments:** image001.gif; image002.jpg

Within minutes of the filing of the affidavit it we realized a document we classified as confidential was live on the ECF-Filing system. We immediately contacted the Court Clerk and had the entire affidavit locked from viewing on the website. Mr. Villaume has spoken with Andrea (Judge Nelson's Clerk) about this situation. All steps are being taken to continue to protect the information from being released any further.

**From:** Nolan, Dayle [mailto:dnolan@larkinhoffman.com]
**Sent:** Wednesday, July 03, 2013 6:00 PM
**To:** Greg Walsh (greg@walsh-gaertner.com); pgvassoc@att.net
**Cc:** Arthur Boylan (boylan_chambers@mnd.uscourts.gov); 'Kathy_Thobe (Kathy_Thobe@mnd.uscourts.gov)'; Harristhal, Christopher J.; Estrem, Tammy J.
**Subject:** email to Walsh et. al

**Counsel: We understand that you publicly filed information that you had designated in a letter June 26 as CONFIDENTIAL pursuant to the Protective Order, in violation of the Protective Order.**
**We demand that it immediately be removed and that you contact the court for its removal.**
**Because we cannot determine the full extent of your violations given the voluminous material and late hour we are designating all the exhibits to the Walsh affidavit as CONFIDENTIAL pursuant to paragraph 3d of the Protective Order, subject to our own review.**

**Dayle Nolan (Ms.)**
**Shareholder**
p | 952-896-3275
f | 952-842-1725
www.larkinhoffman.com

Larkin Hoffman

EXHIBIT
tabbies
D

**CONFIDENTIALITY NOTICE:**

INFORMATION IN THIS MESSAGE, INCLUDING ANY ATTACHMENTS, IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE RECIPIENT(S) NAMED ABOVE. This message may be an Attorney-Client communication from the law firm of Larkin Hoffman Daly & Lindgren Ltd., and as such is privileged and confidential. If you are not an intended recipient of this message, or an agent responsible for delivering it to an intended recipient, you are hereby notified that you have received this message in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you received this message in error, please notify the sender immediately, delete the message, and return any hard copy print-outs. No legal advice is being provided or implied via this communication unless you are (1) a client of Larkin Hoffman Daly & Lindgren Ltd., and (2) an intended recipient of this message.

# EXHIBIT E

Villaume & Schiek P.A.
Attorneys at Law

Attorneys:
Philip G. Villaume
Jeffrey D. Schiek
Lisa McLeod Lofquist

Of Counsel:
Dean M. Barkley

July 3, 2013

Clerk of Court
United States District Court
U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

**VIA HAND DELIVERY**

**RE: Michael Brodkorb vs. The Minnesota Senate**
**District Court Number: 12-CV-01958 (SRN/AJB)**

To Whom it May Concern:

Please find enclosed for filing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel, which are filed under seal pursuant to the protective order in this case. A courtesy copy of this document and all documents filed via ECF today are being served on opposing counsel.

Should you have any questions or concerns please feel free to contact me at your earliest convenience.

Thank you for your attention to this matter.

Sincerely,
**VILLAUME & SCHIEK, P.A.**

Phil Villaume

Philip G. Villaume
Attorney at Law

Enclosures

cc: Dayle Nolan
Christopher Harristhal
Greg Walsh
Michael Brodkorb

EXHIBIT
tabbies
E

BLN Office Park
2051 Killebrew Drive
Suite 611
Bloomington, MN 55425

Phone: 952.851.9500
Fax: 952.851.9510

# EXHIBIT F

Villaume & Schiek, P.A.
Attorneys at Law

**Attorneys:**
Philip G. Villaume
Jeffrey D. Schiek
Lisa McLeod Lofquist

**Of Counsel:**
Dean M. Barkley

July 3, 2013

The Honorable Susan Richard Nelson
U.S. Courthouse
Suite 774
316 North Robert Street
St. Paul, MN 55101

**RE: Michael Brodkorb vs. State of Minnesota, the Minnesota Senate and Cal Ludeman, individually**
**Court File No.: 12-CV-01958 (SRN/AJB)**

Dear Judge Nelson:

Please find enclosed two (2) courtesy copies of documents filed today via ECF and via conventional filing and under seal.

Thank you for your attention to this matter.

Sincerely,
**VILLAUME & SCHIEK, P.A.**

Phil Villaume (SA)

Philip G. Villaume
Attorney at Law

Enclosures

cc: Christopher Harristhal (w/out enclosures)
Dayle Nolan (w/out enclosures)
Greg Walsh (w/out enclosures)
Michael Brodkorb (w/out enclosures)

EXHIBIT F

BLN Office Park
2051 Killebrew Drive
Suite 611
Bloomington, MN 55425

Phone: 952.851.9500
Fax: 952.851.9510

# EXHIBIT G

**United States District Court**
**for the**
**District of Minnesota**

| | | |
|---|---|---|
| Michael Brodkorb,<br><br>Plaintiff,<br><br>vs.<br><br>State of Minnesota,<br>the Minnesota Senate, and<br>Cal Ludeman, individually,<br><br>Defendants. | ) | Case type: Civil<br><br>**CERTIFICATE OF SERVICE**<br><br>Civil Action No.: 12-CV-01958 (SRN/AJB) |

I, hereby certify that on July 3, 2013, I caused the following documents:

1. Placeholder for Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel, filed underseal;
2. Affidavit of Gregory J. Walsh along with Exhibits; and
3. LR 7.1 Word Count Compliance Certificate.

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

Christopher J. Harristhal – charristhal@larkinhoffman.com
Ms. Dayle Nolan – dnolan@larkinhoffman.com

Dated: July 3, 2013

Respectfully submitted,
**VILLAUME & SCHIEK, P.A.**

By *s/Gregory J. Walsh*
Philip G. Villaume (#112859)
Jeffrey D. Schiek (#0305455)
Gregory J. Walsh (#291705)
Attorneys for Plaintiff
BLN Office Park
2051 Killebrew Drive, Suite 611
Bloomington, MN 55425
(952) 851-9500

EXHIBIT
G

# EXHIBIT H

**United States District Court**
**for the**
**District of Minnesota**

---

| | | |
|---|---|---|
| Michael Brodkorb, | ) | Case type: Civil |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE VIA CONVENTIONAL FILING/SEALED DOCUMENTS** |
| vs. | ) | |
| | ) | |
| State of Minnesota, the Minnesota Senate, and Cal Ludeman, individually, | ) | |
| | ) | Civil Action No.: 12-CV-01958 (SRN/AJB) |
| Defendants. | ) | |

---

I, hereby certify that on July 3, 2013, I caused the following documents:

1. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel.

to be filed conventionally with the Clerk of Court, and that the foregoing documents and the notice of electronic filing of the applicable placeholder be delivered to the following

Christopher J. Harristhal
Ms. Dayle Nolan
Larkin Hoffman Daly & Lindgren, Ltd.
7900 Xerxes Ave. South
Suite 1500
Minneapolis, MN 55431

EXHIBIT
tabbies
H

Dated: July 3, 2013                   Respectfully submitted,
                                      **VILLAUME & SCHIEK, P.A.**

                                       By   *s/Gregory J. Walsh*
                                      Philip G. Villaume (#112859)
                                      Jeffrey D. Schiek (#0305455)
                                      Gregory J. Walsh (#291705)
                                      Attorneys for Plaintiff
                                      BLN Office Park
                                      2051 Killebrew Drive, Suite 611
                                      Bloomington, MN 55425
                                      (952) 851-9500

# EXHIBIT I

# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

**PLACEHOLDER FOR**
***PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL***

*Michael Brodkorb,*

Plaintiff(s)

v. Case Number: 12-CV-01958 SRN/AJB

*The Minnesota Senate,*

Defendant(s)

---

This document is a place holder for the following item(s) which are filed in conventional or physical form with the Clerk's Office:

*Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel.*

If you are a participant in this case, this filing will be served upon you in conventional format.

This filing was not e-filed for the following reason(s):

___ Voluminous Document* (Document number of order granting leave to file conventionally: ___ )

___ Unable to Scan Documents (e.g., PDF file size of one page larger than 15MB, illegible when scanned)

___ Physical Object (description):

___ Non Graphical/Textual Computer File (audio, video, etc.) on CD or other media

_X_ Item Under Seal pursuant to a court order* (Document number of protective order: ___ )

___ Item Under Seal pursuant to the Fed. R. Civ. P. 5.2 and Fed. R. Crim. P. 49.1

___ Other (description):

* Filing of these items requires Judicial Approval.

E-file this place holder in ECF in place of the documents filed conventionally. File a copy of this Placeholder and a copy of the NEF with the Clerk's Office along with the conventionally filed item(s).

EXHIBIT
tabbies
I

# EXHIBIT J



CBS Minnesota Buy Tickets Health More FOLLOW US LOGIN | REGISTER Search

MONEY TODAY! OFF ✓ No Sales Tax ✓ Comfort Guarantee US-Mattress.com 1-800-455-1052 how to buy a mattress

# Should The Media Release The "BRODKORB" Cheaters List?

July 11, 2013 3:47 PM

Like 7 Tweet 0 Share ? View Comments

(credit: CBS)

Should the Twin Cities News Media...Radio, TV, Newspapers, release the names on the so called "CHEATER LIST" from Michael Brodkorb?

Yes! 73.97%

No! 26.03%

Like 0

Comments (0) Return To Poll

From The John Williams Show

**Filed Under**

Uncategorized

**Related Tags**

Legislature, Michael Brodkorb, Senate, State Capitol

Listen LIVE sponsored by LAND O'LAKES

Why choose BiPro?
- Purest whey protein isolate
- All natural
- No artificial flavors
- No carbs, no sugars, no fat

Why use whey protein?
- Muscle recovery
- Weight management
- Reduce muscle loss with age
- Overall health

VISIT BIPROUSA.COM
1-877-MYBIPRO (692-4776)

CBS LOCAL Offers
CBS Minnesota

DEAL OF THE DAY
74% off from 2-cos
See Details

See more Deals for CBS Minnesota›

Get CBS Minnesota Deal Alerts by email
Enter email address here Sign Up

VIDEO NEWS

Sponsored Links

Hot New Stock Pick
This Proven Gainer Could Be Your Best Move Yet-- Learn More!
www.TopMicroCapStock.com

New BlackBerry® Z10
Experience a new way to use your smartpho...
BlackBerry.com/BlackBerry-Z10

Blue Fire Stock
Invest In the Future Of America's Oil Production. Buy Shares Now!
http://www.financialdigest.info

Buy a link here

6 Hurt As Plane's Nose Gear Collapses At...

More Videos

## MOBILE WEATHER WATCHER

Like 7 Tweet 0 Share ? View Comments

## FROM AROUND THE WEB

Ask E. Jean: Three Occasions on Which You May Lie to a Man (ELLE)

12 Jobs on the Brink of Extinction (Salary.com)

5 Dog Breeds That Are Sadly Losing Popularity (Vetstreet)

What Does Google Think of You? (WebiMax)

Jennifer Aniston: Check Me Out (Hollyscoop)

Amazing Joe Mauer GIF (MLB Fan Cave)

## WE RECOMMEND

Man Hospitalized After Tractor Rollover In Stearns County

Jail Releases New Photo Of Aaron Schaffhausen

Brother's Dying Wish Has One Man Dropping 2,000% Tips

Celebs Coming To St. Paul To Help The World Hear

Theis Story Difficult For WCCO Reporter Chris Simon

53 'Johns' Arrested In 6-Day Minneapolis Prostitution Bust

Recommended by 

## LATEST GALLERIES

Baseball Shots Of The Week -...

Royal Baby Madness

Must-Have School Supplies

2013 Primetime Emmy Nominees

2 comments

Leave a message...

Newest Community Share

Playadude · 12 days ago
We pay their salaries, they work for us so they answer to us.
Reply Share ›

Karen Peters · 12 days ago
Release the names. Lets see those religious conservative republicans squirm some more when they are found out for more adultery.
Reply Share ›

Comment feed Subscribe via email DISQUS

## Follow CBS Minnesota

WCCO-TV | CBS Minnesota
Like 33,795

Follow @WCCO 23.8K followers

+1 Like

Follow More Stations and Personalities ►

WCCO Radio Podcasts 

   

Share 0 More Next Blog» Create Blog Sign In

# MINNESOTA CONSERVATIVES

OPTIMISM IS COWARDICE -SPENGLER

SUNDAY, JUNE 9, 2013

## Media Must Intervene In Brodkorb Lawsuit

On Friday, June 6th, United States Federal Magistrate for the District of Minnesota, the Honorable Arthur Boylan, issued a protective order in the Michael Brodkorb v. Minnesota Senate lawsuit addressing how sensitive information and material should be treated now that discovery is set to proceed in earnest. For Brodkorb, getting to the heart of his gender discrimination claim has been a long time coming. Unfortunately for him, the protective order effectively renders his federal lawsuit invisible to the public. Worse, though, than one private litigant's discomfort, the protective order keeps the people of Minnesota from knowing how their elected officials handled this by now very public matter.

The reason for this is that the protective order breathtakingly allows one party to designate "confidential" anything they see fit. The only remedy to this egregious grant of discretion is for the other party to file a motion and hash it out before the Magistrate. This is called motion practice and it isn't cheap. Typically protective orders delineate those things that can reasonably be anticipated to be confidential as such, with provisions for one party to assert confidentiality as to others but with the burden of proof on that party.

The current protective order places no burden of proof, as an initial

NEOCOUNTER

SUBSCRIBE TO

BLOG ARCHIVE

▼ 2013 (17)
▼ June (1)
Media Must Intervene In Brodkorb Lawsuit
► May (3)
► April (4)
► March (2)
► February (5)
► January (2)
► 2012 (36)
► 2011 (13)
► 2010 (87)
► 2009 (381)

ABOUT ME

JOHN HUGH GILMORE
MINNEAPOLIS/ST. PAUL, MINNESOTA, UNITED STATES

John Gilmore lives in St. Paul and is

matter, on the party claiming confidentiality but, rather, allows it carte blanche and shifts the burden to the objecting party. In the posture of the current lawsuit, Brodkorb is tasked with fighting every disingenuous designation of "confidentiality" that Minnesota Senate lawyers will make, whether or not that strictly would be helpful to his case. This is grossly unfair but more to the public than to Brodkorb, as unfair as that is.

For a glimpse into the mindset of Senate counsel, hired unilaterally by the profoundly stupid then Secretary of the Senate Cal Ludeman, look at what $330 an hour attorney Dayle Nolan had to say about the protective order: "The press coverage has been fast but fact-free, and would support the idea that a protective order would be making the litigation be more normal litigation." Stupid squared.

The usual disclosures: I'm friends with Brodkorb and am an attorney, though I do not represent him in his federal lawsuit. Amy Koch is my client and friend as well. All this has been public record for some time but bears repeating for those readers of this post who may not know it. If I'm going to blog about transparency, I should try to embody it.

Put another way, the protective order keeps from, at least as an initial matter, the Minnesota public what both republican and democrat senators did in this matter. What possible public policy good could be advanced by such onerous provisions? Both the attorneys defending the lawsuit, as well as the Senate itself, are funded by the taxpayers. It seems the Magistrate gave the public no shrift, let alone short, in his decision making process. This is error.

Brodkorb has from the first moment of his lawsuit stated publicly and repeatedly that the names of the other relationships of which he is aware ought not and should not be become public during the discovery process. I understand he and his lawyers readily agreed to keep such information confidential. For anyone to suggest otherwise is dishonest and malicious.

No, the problem here is what is called in law "over breadth." Some confidentiality should obtain in this lawsuit. The problem is that what the Magistrate has ordered keeps from the public information legitimately in the public domain.

active in local, state and national conservative causes.

VIEW MY COMPLETE PROFILE

As one friend put it: "I think I'm entitled to know what Senator
Senjem said to Senator Michel about this matter." Quite right. But
the current protective order allows the senate to slap "confidential"
on that discussion and leaves it to a private litigant with necessarily
limited financial resources to strip that label from the information.
I'd even put it another way: I'm entitled to know what Sen. Bakk has
said to others about this lawsuit, including political calculations not
covered by the attorney client privilege. I've always thought Senator
Bakk should settle this lawsuit and hang it around Senator Hann's
neck. But that's just lovable me.

Now then to the point: Minnesota media should intervene in this
lawsuit for the sole purpose of challenging a shockingly over broad
protective order. I'd feel the same way if the litigant was a democrat
suing what was then a DFL controlled senate. Why do I suggest this?

Because the press, traditionally, has thought of itself as a safe keeper
of the public's right to know. If I can put aside my cynicism on this
point for a moment, you can too. That media in our age have become
an arm of the Democratic Party should not prevent Minnesota media
from doing their job in this instance. Whether bloggers would have
standing to intervene is an interesting question. Maybe Powerline
would like to become relevant again and explore that possibility.

The question is straightforward: why should the operations of the
Minnesota Senate be exempt from public scrutiny in a public
lawsuit? They should not. We simply can't depend on the meager
resources of Brodkorb and his attorneys to vindicate this important
point. Those are not his fish to fry, not why he filed his lawsuit. That
point has, however, become directly implicated in his lawsuit.

Brodkorb's attorneys must file an appeal to the federal judge
assigned to this matter, the Honorable Susan Nelson. At that point
attorneys for any number of media outlets should seek permission to
intervene in support of making the protective order less onerous, less
broad, less an affront to those of the governed. If traditional media
do not do so, I'm happy to gather a number of pro bono attorneys
and solicit Aaron Rupar & City Pages to intervene. It would hardly be
the first time they showed up local media. No matter how it happens,
media must intervene.

It's showtime, folks.

POSTED BY JOHN HUGH GILMORE AT 10:51 AM
LABELS: AMY KOCH, BRODKORB, DFL, FIRST AMENDMENT, MINNESOTA, MNGOP, PRESS

## 1 COMMENT:

Anonymous said...

John, you're sailing along in what seems a well reasoned and thoughtful post, when suddenly you tie a boat anchor around your own neck and sink yourself and your argument.
How? "That media in our age have become an arm of the Democratic Party." This is the raving of the blindly partisan in the age of Rupert Murdoch. The rest of your essay immediately follows this immense turd down the toilet of incredibility. You've flushed yourself.

JUNE 10, 2013 AT 8:28 AM

Post a Comment

## LINKS TO THIS POST

Create a Link

Home Older Post

Subscribe to: Post Comments (Atom)

MY BLOG LIST

**THE CORNER ON NATIONAL REVIEW ONLINE**
DOUG BAILEY, R.I.P.
*13 MINUTES AGO*

**WEEKLY STANDARD BLOG**
STATE DEPT. INSPECTOR GENERAL: U.S. AMBASSADOR TO BELGIUM 'SOLICITED PROSTITUTES, INCLUDING MINORS'
*29 MINUTES AGO*

**POWER LINE**
RICH LOWRY: LINCOLN UNBOUND
*2 HOURS AGO*

**REFUGEE RESETTLEMENT WATCH**
MAINE: SOMALI YOUTH SENTENCED TO 8 YEARS FOR RAPING WOMAN; NO PROSPECT FOR REHABILITATION SAYS JUDGE
*4 HOURS AGO*



  

Search Refresh

brodkorb

**Michael Brodkorb**
@mbrodkorb

**Cory Brodkorb**
@CBrodkorb

**Stephanie Brodkorb**
@stephhleanne

View more people

**The NewZ** @TheUsNewz 14m
BRODKORB LIST: Fired Senate staffer's lawsuit cites other affairs #Minneapolis bit.ly/1aeOBjZ
View details ·

Brian Bakst follows

**Zack Stephenson** @zackstephenson 15m
So... is there a less responsible media outlet than @AP that has actually published the names on Brodkorb's list? Asking for a friend.
View details ·

Kelly Gunderson follows

**Mark J. Westpfahl** @MarkJWestpfahl 59m
I don't want to know what Brodkorb leaked... to the press... or anywhere!!!!
View details ·

**FOX 9 News** @MyFOX9 1h
Michael Brodkorb's lawsuit cites other alleged affairs in #mnleg myfoxtwincities.com/story/22817563... #capitolaffairs
View details ·

**BringMeTheNews** @BringMN 2h
AP gets hands on Brodkorb court docs detailing alleged Capitol affairs dlvr.it/3f0xCJ
View details ·

Ron Rosenbaum follows

**David Kaplan** @DavidKaplanMN 2h
Wondering hoe long the @AP keeps the Brodkorb list to themselves before they release it. Or will they wait for someone else to do it first.

View details ·

**MinnPost** @MinnPost 2h

Brodkorb papers that were mistakenly made public include a list of alleged affairs involving 10 Minnesota lawmakers. minnpo.st/12puBJV

View details ·

Michael Brodkorb follows

**MinnPost RSS** @MinnPostRSS 2h

Brodkorb papers mistakenly made public includes list of alleged legislative affairs minnpo.st/1av1g63

View details ·

Bill Gleason follows

**Mark Sommerhauser** @msommerhauser 2h

C/o @Stowydad & @pcondonap - Specific allegations of lawmaker-staffer affairs detailed in Brodkorb lawsuit: sctimes.com/viewart/201307…

View summary ·

MPR Politics follows

**Briana Bierschbach** @bbierschbach 2h

Brodkorb story cred goes to both @pcondonap and @Stowydad. Nice work Team @AP

View details ·

**Pioneer Press** @PioneerPress 3h

Michael Brodkorb's lawsuit over his Senate firing lists other legislative staffers' affairs: ow.ly/mSrlS #mnleg

View details ·

**Phillip Pina** @PhilPina 3h

Brodkorb's lawsuit over firing cites other affairs. AP gets list ... twincities.com/politics/ci_23…

View details ·

**Mary Divine** @MaryEDivine 3h

Brodkorb's lawsuit over firing cites other affairs - TwinCities.com twincities.com/politics/ci_23…

View details ·

**Sally Jo Sorensen** @sallyjos 3h

So Brodkorb's publicity hound lawyers 4 mistakenly posted doc w/ names on publicly accessible website? Cats laughing across state #mnleg

View details ·

**ArtHughes** @ArtHughes 3h

AP has the names RT @Stowydad: RT @DouglasGlass: For first time, Brodkorb lists other affairs in case against state: bit.ly/189FkZU

View details ·

**KSTP** @KSTP 3h

Brodkorb lawsuit cites other affairs at the Capitol kstp.mn/6k28b

View details ·

 **Douglas Glass** @DouglasGlass 3h

For first time, Brodkorb lists other affairs in case against state: bit.ly/189FkZU ... via @Stowydad and @pcondonap

View details ·

**Star Tribune** @StarTribune 3h

Fired #Minnesota Senate aide Brodkorb's wrongful termination lawsuit cites other sexual affairs at Capitol. strib.mn/189FkZT

View details ·

**Nathan M. Hansen** @nathanmhansen 6d

Will tonight be the night that Hann & Bakk present Brodkorb with his oversize novelty check on #tptalmanac?

View details ·

**MinnPost** @MinnPost 01 Jul

Brodkorb tapes: "the highest and best use of these tapes is to rattle cages and get publicity." minnpo.st/1auUFra by @cyndybrucato

View details ·

Load older Tweets

Settings Help

Back to top · Turn images off

# EXHIBIT K



Create Account

# AP: Fired Senate staffer details other affairs

*Posted: Jul 11, 2013 1:40 PM CDT*
*Updated: Jul 11, 2013 8:53 PM CDT*

By BRIAN BAKST and PATRICK CONDON
Associated Press

ST. PAUL, Minn. (AP) -- For the first time, a fired Minnesota Senate operative has made detailed accusations central to his federal wrongful termination lawsuit: a list of other lawmakers and staff members who allegedly carried on affairs over the years without losing their jobs.

The list opens the possibility that those people -- some long gone from the Legislature -- could ultimately be asked to testify about allegations of secret affairs that date back to the 1980s. Whether it helps Michael Brodkorb prove his case is an open question, experts say, because many of the alleged affairs are old and happened under different circumstances.

Brodkorb was the Senate GOP's communications director when he was fired after his extramarital affair with then-Senate Majority Leader Amy Koch became public in December 2011. Koch resigned from her leadership post immediately and left the Legislature following her term. Now, Brodkorb is seeking more than $500,000 in damages with an unusual gender discrimination claim that argues he was fired for an affair while many female staffers romantically linked to lawmakers were not.

Since Brodkorb filed the lawsuit last July, the litigation has cast a cloud over the Capitol with its suggestion that he would allege infidelities by other members of the Legislature. The list of affairs was included in a mistaken filing last week by Brodkorb's attorneys in a case that is under protective seal. It was put up briefly on a publicly accessible electronic federal courts website, then taken down, but not before The Associated Press downloaded the filing. A hearing in the case was scheduled for Thursday and court-ordered settlement talks could resume this fall.

Senate attorney Dayle Nolan said she will seek sanctions against Brodkorb's side for violating the protective order, but said the details don't change the case. Brodkorb's attorneys did not comment ahead of the hearing.

"To the extent there could possibly be a grain of truth to any of the allegations, which we do not concede, nothing supports the plaintiff's claims and nothing will have any impact on the litigation going forward," Nolan said Thursday.

Top senators and the Senate's attorneys have long maintained that past romances don't matter in defending against Brodkorb's lawsuit because he was an "at-will" employee who could be terminated at any time. The case has already cost taxpayers $225,000 and another $500,000 has been set aside for ongoing defense fees.

That his list became public now probably won't help Brodkorb build pressure for a deal in a case at least a year away from a possible trial, said Columbia University Law Professor Vivian Berger, who specializes in employment cases.

"The guillotine is more effective when the blade is hanging over you, not when the guillotine comes down," Berger said.

The document offers scant evidence to back up his allegations. They also would have occurred under different leaders than those who fired Brodkorb. Most of the supposed affairs involved no direct boss-subordinate relationship.

Despite her position as majority leader and his as chief caucus spokesman, Koch said Thursday she had no such relationship with Brodkorb, noting he reported to the GOP caucus chief of staff, not her.

Brodkorb names 10 legislators -- all but one now out of office -- whom he claims had an "intimate sexual relationship" with legislative staff members who remained employed afterward. It names six of the employees.

The AP is not naming the people identified on Brodkorb's list because they have not yet been called to testify or accused of anything illegal. Many didn't know they were on it.

Brodkorb names both Republican and Democratic lawmakers of varying stature. The brief narratives make repeated references to the relationships being "widely known" in the Legislature. In one case, it suggests a male senator also had relationships with female members of the Legislature.

The AP attempted to contact those named and reviewed court records for those involved in divorces or other proceedings. Four flatly denied allegations read to them, with some expressing anger at being pulled into the case. Six declined comment or indicated they were consulting with an attorney. Five didn't respond.

One person confirmed the filing's assertion about her, which was backed up by a court record showing the other party to the affair admitting paternity of a child born during his time in office. Two sets of allegations include a lawmaker-staffer pairing who are now married.

One staff member named said she had been contacted by a private investigator while another told AP that a law firm asked a while back to speak with her about the affair. She said she declined.

In one case, the lawmaker and staff member independently denied the existence of an affair and said close working relationships that are routine at the Capitol can be easily misconstrued. The former senator said he regularly gave the staff member rides to and from the Capitol to spare her parking fees and to provide safe transportation after late-night shifts.

Employment law experts caution that allegations involving differing circumstances are viewed skeptically -- if they are admitted as evidence at all at trial. Attorneys commonly spar over what information produced in the discovery phase is allowed at trial, and whether Brodkorb's examples involve similarly situated affairs will be up for debate as the case progresses.

There is little evidence to prove the affairs in the filing, though Brodkorb's attorneys could provide more details as the case goes on. "Discovery is continuing," the filing said.

Stephen Befort, an authority in employment law at the University of Minnesota Law School, said Brodkorb could find a discrimination claim more difficult to make if the other examples he cites vary widely from the lead-up to his own firing or happened under previous Senate regimes.

"I think it weakens the claims if it's not identical circumstances," Befort said. He added that the dated nature of some of Brodkorb's examples could also undermine his case. "The closer you are both in time and circumstances, the stronger the discrimination claim."

Beth Brascugli De Lima, president of California-based human resources firm HRM Consulting Inc., pointed out that employee codes of conduct could have evolved over time. She also said that the close connection between a supervisor and employee matters in workplace relationships because closer proximity can expose

EXHIBIT
K
tabbles

an organization to sexual harassment actions.

"The issue of direct report is very important when you're talking about relationships in any organization," she said.

Yet employment lawsuits like Brodkorb's are rare enough that older cases or those that aren't identical could be valuable, said David Larson, an employment law scholar at Hamline Law School in St. Paul.

"As long as the facts are roughly analogous, they can be very helpful to the plaintiff," he said. However, Larson also stressed that those alleging employment discrimination have a high legal bar and "it remains extremely difficult to prove."

RECOMMENDED VIDEOS

Flight 214 crash animation

Alyson Hannigan: Sarah Michelle Gellar Was 'Most Tired' At End

Mother of hit-and-run victim says intersection filled with 'drunks'

Why Stylists Hate Boxed Haircolor

Men: Diet Soda Makes You Fat!

Prince's jet parked at MSP airport

FROM AROUND THE WEB

- 'Why I Had A Wedding-Day Quickie' (HuffPost Live)
- I HAVE SEEN MY HAT: Six Inappropriate Children's Books (The Alleyland)
- The 5 Warning Signs of Prostate Cancer (Newsmax Health)
- Child Stars: Where Are They Now? (Parent Society)
- Top 10 Athletes Turned Actors of All Time (Rant Sports)
- U.S. Economy Headed For Largest Crash Since Great Depression (Money Morning)

YOU MIGHT BE INTERESTED IN

- Body found in parked car in New Hope, Minn. - KMSP-TV
- Man shot in rear end in north Minneapolis - KMSP-TV
- Cat owners: Be careful with kitty litter - KMSP-TV
- St. Paul man found guilty for killing woman while robbing home - KMSP-TV
- 2 killed in head-on collision near Duluth - KMSP-TV
- Coon Rapids couple killed in motorcycle crash near Crosby - KMSP-TV

Add a comment...

Comment

Facebook social plugin

worldnow

myFOX9.COM

SEARCH FOR IT HERE

Privacy Policy Terms of Service Ad Choices

# EXHIBIT L

- Contact
- Minnesota Courthouses
- Site Map
- Home
- »Profile

***Firm:*** **Villaume & Schiek, P.A.**
*2051 KillebrewDrive, Suite 611*
*Bloomington, MN 55425* - *Get directions at Google Maps*

Phone: 952 851-9500
Fax: 952 851-9510
Email: philip@philipgvillaume.com
Website: http://www.defendmn.com

**Practice Areas**

Criminal Defense, Felonies, Misdemeanors, Employment, Wrongful Termination, Harassment, Professional Malpractice, School, Education, Mediation/Arbitration

**Firm Profile**

Founded in 1979, Philip G. Villaume and Associates has been providing legal services to professionals and organizations for the past 28 years. Mr. Villaume is a national leader in representing professionals accused of employment-related misconduct. He and his associates have handled several of Minnesota?s high-profile cases involving allegations of professional misconduct since 1985. In 1986, the law firm successfully defended the leading teacher rights case in the country, State v. Gruhl; and in 1990, a precedent-setting case before the Supreme Court involving religious freedom with respect to the Amish and the slow-moving vehicle emblem, State v. Hershberger. The firm also provides pro bono legal advice to the Amish community in Minnesota. In 1996, the firm successfully handled the precedent-setting case, York v. Wood, that involved workplace harassment of a public school teacher by a parent.

**Biography**

Philip G. Villaume has repeatedly been selected by his peers as a Leading Attorney in the areas of Employment Law and Criminal Law since 1994. Less than six percent of the state's attorneys are Leading Minnesota Attorneys. Mr. Villaume concentrates his practice in criminal defense law and employment law, representing professionals facing employment-related misconduct allegations. He represents victims of workplace abuse and harassment. Mr. Villaume has represented over 1000 professionals since 1986, including 500 educators. He

conducts workshops nationwide on the topics of criminal law and procedure diversity in education, the community and the workplace, and on the topics of the prevention of workplace violence and harassment and is considered a national expert and consultant on topics of professional misconduct, harassment and violence in schools and in the workplace. Mr. Villaume was awarded a Certificate of Excellence in 1990 from Hamline University School of Law and the Judges Choice Award, Most Well-Prepared Lawyer in 1991. He has lectured for the National Institute for Trial Advocacy. He is an adjunct professor for the University of Minnesota and University of St. Thomas and has been the course chair and a lecturer on criminal law, trial skills and employment law, and professional ethics for Minnesota Continuing Legal Education programs. He is the author of The Law & Procedure Handbook for Minnesota Educators, 1990; The Better Work Environment, 1997; and a coauthor of The Book, Teachers At Risk, 1993. In 1999, the firm successfully defended the case of Savior v. Jesse Ventura, which contested the gubernatorial election of Governor Jesse Ventura. Mr. Villaume was a 1990 and 1999 appointee to the Minnesota Judicial Merit Selection Committee and has been selected annually as a ?Super Lawyer? by Minnesota Law & Politics since 1998.

**Admissions**

1979 Minnesota; 1984 Wisconsin

1984 U.S. Sup. Ct.

**Education**

JD 1979, Hamline University School of Law

BA 1971, Macalester College (magna cum laude).

**Associations**

Minnesota State Bar Association

Hennepin County Bar Association

Minnesota Judicial Merit Selection Commission (1990 and 1999 Gubernatorial Appointee).

## Litigation: Court Trends & Analysis

The Court Trends & Analysis section displays the state and federal courts in which the attorney has litigated during the selected date range. Litigation events are analyzed by the overall share of events litigated in a particular jurisdiction.

**Courts Distribution**

| Courts | Occurrences | % |
|---|---|---|
| State Courts > Minnesota - State Courts | 93 | 64.6% |
| U.S. District Courts > Minnesota - Federal Courts | 28 | 19.4% |
| U.S. Courts of Appeal > United States Court of Appeals, Eighth Circuit | 13 | 9.0% |
| State Courts > Wisconsin - State Courts | 8 | 5.6% |
| U.S. District Courts > North Dakota - Federal Courts | 1 | 0.7% |
| U.S. District Courts > Wisconsin - Federal Courts | 1 | 0.7% |

View Report Online

**Courts Trend**

*Data for partial year only

# EXHIBIT M

WALSH & GAERTNER, P.A.
Experienced Personal Injury Representation in the Twin Cities
CALL FOR A FREE CONSULTATION
LOCAL 651-323-2457 TOLL-FREE 888-863-4160

# Gregory John Walsh

---

Location:
St. Paul, Minnesota
Phone:
651-228-9968 (Main Office)
888-863-4160 (Toll-Free)
Fax:
651-224-2672
Email:
E-mail Me

A skilled and talented trial lawyer, Mr. Walsh represents clients in specific areas of civil litigation. He has represented individuals in personal injury cases and families of in wrongful death matters throughout Minnesota. He has defended high profile clients in defamation claims and prosecuted claims against corporations and the government for discrimination, fraud and shareholder disputes. After only three years of practicing law Mr. Walsh was recognized as a "Super Lawyer" by Twin Cities Business Monthly and Minnesota Law and Politics; a distinction afforded less than 6% of all Minnesota Lawyers and almost never bestowed upon a lawyer practicing fewer than 5 years.

Mr. Walsh earned his undergraduate degree from the College of St. Thomas and his law degree from William Mitchell College of Law. In his final year of law school he was a National Finalist in the Student Trial Advocacy Competition sponsored by the American Association for Justice.

Mr. Walsh is a partner in the firm of Walsh & Gaertner, P.A. Together with his law partner and their dedicated staff, Walsh & Gaertner, P.A. have assisted thousands of individuals, families and corporations across Minnesota.

Mr. Walsh is a member of the American Association of Justice, Minnesota Association of Justice, Minnesota Bar Association, and Ramsey County Bar Association. Mr. Walsh is also a member of the Million Dollar Advocates Forum, recognition granted to lawyers who have obtained million dollar verdicts or settlements for their clients.

When not practicing law, Mr. Walsh is active in youth athletics as a coach and parent. He is also a member of the St. Paul Curling Club where he is on the Board of Directors.



## Areas of Practice

- Personal Injury
- Automobile Accidents
- Corporate Disputes
- Semi-Truck Collisions
- Wrongful Death Cases
- Civil Litigation
-

## Bar Admissions

- Minnesota, 1999
- U.S. District Court District of Minnesota, 1999

## Education

- **William Mitchell College of Law, St Paul, Minnesota**
    - J.D. - 1999
    - Honors: National Finalist, Student Trial Advocacy Competition
- **University of St. Thomas, St. Paul, Minnesota**
    - B.A. - 1990
    - Major: Journalism/Advertising

## Honors and Awards

- "Super Lawyer", Twin Cities Business Monthly and Minnesota Law and Politics
- Member, Million Dollar Advocates Forum

## Professional Associations and Memberships

- American Association of Justice, Member
- Minnesota Association of Justice, Member
- Minnesota Bar Association, Member
- Ramsey County Bar Association, Member

## Pro Bono Activities

- Coach, Eagan Athletic Association and Inver Grove Heights Youth Sports

---

**Walsh & Gaertner, P.A.**
24 East 4 th Street
St. Paul, MN 55101
St Paul Law Office

Phone: 651-323-2457

Toll Free: 888-863-4160
Fax: 651-224-2672

---

© 2013 by Walsh & Gaertner, P.A. All rights reserved. Disclaimer | Site Map
Privacy Policy | Business Development Solutions by FindLaw, a Thomson Reuters business.

# EXHIBIT N



FOR IMMEDIATE RELEASE
June 7, 2013

Contact: Greg Walsh
(651) 379-0973

STATEMENT FROM MICHAEL BRODKORB'S ATTORNEY ON PROTECTIVE ORDER

(St. Paul, MN) – Greg Walsh, attorney for Michael Brodkorb, released the following statement regarding the protective order issued by United States Chief Magistrate Judge Boylan:

"The attorneys for the Minnesota Senate have collected over one hundred thousand dollars from the taxpayers of Minnesota defending a wrongful termination lawsuit. The Senate's lawyers, knowing they have an open check book, have persuaded the Court to issue a Protective Order to potentially hide from public view all the misdeeds of the Minnesota Senate.

The net affect of this Protective Order will only cost the taxpayers of Minnesota more money.

While Mr. Brodkorb wishes to protect other families from the public glare he continues to endure, other actions involving his wrongful termination should be available to the public.

Mr. Brodkorb fought against the potential overreaching aspects of the protective order issued today by the Court, which could unfortunately deny taxpayers an opportunity to learn the full details of the actions taken by certain members of the Minnesota Legislature involving Mr. Brodkorb's employment at the Minnesota Senate.

In December of 2012, Senate Majority leader Dave Senjem said, "this case needs to go forward in the openness of a court session" as he feared the perception of "a cover-up." It was only minutes after disclosing to counsel for the Minnesota Senate hundreds of pages of documents, including audiotapes from meetings between Mr. Brodkorb and representatives of the Minnesota Senate which we believe support Mr. Brodkorb's claim the he was wrongfully terminated, did counsel for the Minnesota Senate immediately request a protective order to potentially hide this information from public view.

It is our goal that this case will proceed in the normal, open and transparent legal process, that is afforded to all parties in federal court."

EXHIBIT
tabbies
N

# EXHIBIT O

From: Nolan, Dayle
Sent: Friday, July 05, 2013 2:50 PM
To: greg@walsh-gaertner.com; Villaume Phil
Cc: Harristhal, Christopher J.; Boylan Arthur
Subject:

I have received word that AP intends to publish names of affairs. I suggest that you do something to belatedly try to somehow minimize the damage you will be causing innocent people from your egregious acts violating a direct court order deliberatiely disclosing sensitive uncorroborated information that you yourself designated as confidential.
I am outraged.

Dayle Nolan

# EXHIBIT P

St. Paul Pioneer Press (Minnesota)

March 14, 2012 Wednesday

# Brodkorb threatens to expose other Capitol affairs

**BYLINE:** By Megan Boldt mboldt@pioneerpress.com

**SECTION:** BREAKING; Politics; Legislature; News

**LENGTH:** 681 words

Attorneys for former state Senate GOP staffer Michael **Brodkorb** say he can prove other legislative employees had affairs with Minnesota lawmakers but kept their jobs, and that their names could become public if a lawsuit is filed.

**Brodkorb**, who filed a claim with the U.S. Equal Employment Opportunity Commission, says he was fired because of his affair with then-Senate Majority Leader Amy Koch, adding that he was treated differently from other workers involved with legislators.

"Mr. **Brodkorb** has evidence that similarly situated female legislative employees, from both political parties, were not terminated from their employment positions despite intimate relationships with male legislators. It is clear that Mr. **Brodkorb** was terminated based on his gender," according to a notice of the claim provided by his attorneys Thursday, March 15.

Phil Villaume, **Brodkorb's** attorney, said his client is seeking more than $500,000 in damages. State law caps settlements with public employees at $1.5 million.

**Brodkorb** lost his job as Koch's executive assistant in December, one day after the Buffalo lawmaker resigned her leadership post over an "inappropriate relationship" with a staffer. Koch admitted to having an affair with a male staffer but refused to name him. An affair between the two had been widely suspected but hadn't been confirmed before this week.

**Brodkorb's** attorneys plan to depose all of the female staffers who were believed to be in the intimate relationships, as well as the legislators involved, to support his claims of gender discrimination.

In the EEOC proceedings, Villaume said, those depositions would be done in private and identities would not be released. If the case winds up in state or federal court, however, the names would be public.

Talks broke down Tuesday between **Brodkorb's** attorneys and Senate officials for sending the dispute over his dismissal to mediation.

The Senate refused **Brodkorb's** mediation request because he hadn't given any reason to dispute his termination, Senate Secretary Cal Ludeman said in a statement.

"Despite Mr. **Brodkorb's** efforts to disrupt the work of the Senate in the current legislative session, to distract members of the Senate, to extort a payment from the Senate and to try his so-called claims in the media, the Senate will not allow that to succeed," the statement read.

Ludeman on Thursday reiterated that **Brodkorb** was an "at-will" employee and could be dismissed at any time. But **Brodkorb** asserts that Ludeman told him he was fired because of his affair with Koch.

Ludeman denied that claim and said new Senate leadership that took over after Koch's resignation wanted to make the staffing change.

"These kinds of personnel changes based on leadership changes happen regularly," Ludeman said.

Ludeman also said he had no knowledge of **Brodkorb's** claims that other staffers had affairs with current or former legislators and kept their jobs and that he knew of nothing in personnel files to back up **Brodkorb's** claim.

And the Senate's attorney, Dale Nolan, said she would block any depositions.

"I have found no basis so far either in law or in fact to support a claim against the Senate, senators or Senate staff by Mr. **Brodkorb**," Nolan said in a statement.

"I will object to and work to prevent any attempts to see needless discovery from any current or former employee or senator as a part of a fishing expedition by Mr. **Brodkorb's** attorneys."

"(**Brodkorb's**) career has been irreparably damaged," Villaume said. "He's having a very difficult time finding new employment."

Ludeman said the Senate has no interest in settling with **Brodkorb**.

"We're very confident where we sit...that we're on solid ground on this matter," Ludeman said.

**Brodkorb's** notice of claim also said he might sue GOP Sens. Geoff Michel, David Hann and Chris Gerlach as well as former Senate GOP Chief of Staff Cullen Sheehan and committee administrator Aaron Cocking, claiming invasion of privacy.

Michel said Thursday he had no comment on the matter. Koch also declined to comment.

Megan Boldt can be reached at 651-228-5495. Follow her attwitter.com/meganboldt .

**LOAD-DATE:** March 16, 2012

**LANGUAGE:** ENGLISH

**GRAPHIC:** Michael **Brodkorb,** Senate Republican spokesman, fields questions outside the governor's office Thursday, June 30, 2011 in St. Paul, Minn., as negotiations between Republican lawmakers and Democratic Gov. Mark Dayton continued in efforts to come to a budget agreement to avoid a government shutdown at midnight. (AP Photo/Jim Mone)

**PUBLICATION-TYPE:** Newspaper

Copyright 2012 St. Paul Pioneer Press
All Rights Reserved

NEWS THE CURRENT CLASSICAL Archive Events Member info Support Shop About us Search MPR GO

MPRnews
Member Supported · Join Now ›

Monday, March 19, 2012
65° in Twin Cities
(more cities)
Weather Report ›
Traffic Report ›

Mobile
Newsletters
RSS Feeds
Podcasts

DONATE
TO MPR

# Brodkorb asserts other staffers had affairs with government officials, weren't fired

by Tom Scheck, Minnesota Public Radio
March 15, 2012

ST. PAUL, Minn. — Attorneys for former Senate Republican caucus spokesman Michael Brodkorb said Thursday that they would pursue legal action against the Senate for firing Brodkorb because he had an affair with his boss, former Senate Majority Leader Amy Koch.

Brodkorb's attorneys said they are willing to expose sexual affairs between other Senate staffers and lawmakers to show that their client was wrongly fired in December, when Koch resigned her post.

Despite rumors that the two were having an affair, Senate officials have said Brodkorb was dismissed because there was no longer the will to keep the "at-will employee" employed. His potential lawsuit, which has put Senate leaders on the defensive, could cost state taxpayers money.

Brodkorb's attorney Phil Villaume said today that there is no record in Brodkorb's personnel file that he didn't do his job well. They also said that the secretary of the senate, Cal Ludeman told Brodkorb he lost his job because of the affair. Villaume said the firing was illegal because female staffers who had relationships with male legislators were not dismissed.

"Our client was treated differently than other similarly situated employees who had relationships with members of government," Villaume said.

Brodkorb intends to file a complaint with the federal Equal Employment Opportunity Commission and then file a lawsuit, Villaume said. The attorney said he's willing to call witnesses including past and present staffers and lawmakers to show that others had similar affairs.

Villaume declined to name anyone. He insisted he and his client were not trying to blackmail the Senate to force a settlement.

"We don't threaten. We're trial lawyers and we litigate cases," he said. "We believe Mr. Brodkorb has a meritorious claim of discrimination based on disparate treatment. These are not threats. This is not blackmail. We're not threatening anybody. We're talking about litigation."

Villaume said Brodkorb was seeking at least $500,000. He targeted most of his criticism towards Ludeman, the top operations officer in the Senate and the person who fired Brodkorb.

In a statement issued Wednesday, Ludeman said the Senate refused to enter settlement talks with Brodkorb. The statement also said Brodkorb's claims were without merit and that Brodkorb was trying his case in the media.

On Thursday, Ludeman said Brodkorb's firing was legal, and that he never mentioned Brodkorb's relationship with Koch when he fired him.

"There was no conversation or no word uttered by me about that in that event."

Ludeman insisted that the Senate was on strong legal ground and said they would not settle with Brodkorb. Senator Majority Leader Dave Senjem, R-Rochester, offered a different opinion. Senjem declined to address the prospects of a lawsuit but suggested there's still room to negotiate.

"We don't know if they're going to so unless they do, that's just conjecture," he said. "Mediation still isn't out of the question but it would have to be resurrected."

Senjem said there was no talk of a financial settlement during the early discussions about entering mediation.

However, the prospect that the lawsuit might bring up embarrassing situations for legislators could be incentive for Republican leaders to settle. Brodkorb's legal claim left open the option of suing three other Republican senators: Geoff Michel of Edina, David Hann of Eden Prairie and Chris Gerlach of Apple Valley. They were among the group of Republican senators who held a press conference the day after Koch stepped down and revealed she was leaving because of an inappropriate relationship. Brodkorb also may sue Koch's former chief of staff Cullen Sheehan and current staffer Aaron Cocking for invasion of privacy.

The filing also said Koch, who to declined comment today, is willing to testify on Brodkorb's behalf. If Brodkorb is successful, the Senate would have to pay him. Senate Minority Leader Tom Bakk, DFL-Cook, said he expects a lawsuit could take years to resolve.

"I think the Senate will prevail but we will certainly have attorney bills that have mounted up over time and they will be substantial and there will be an obligation of the Senate budget. The state Senate budget is state general fund money."

That means taxpayer money. Brodkorb's attorneys say the strategy behind his case is relatively new in Minnesota. Employment attorney Stephen Cooper said the complaint has merit if Brodkorb can effectively argue that female workers who had intimate relationships with legislators were treated differently than he was.

"If you have a set of rules for men and you have a set of rules for women and they're different, you have to be able to justify why it is that the rules actually are reasonable. That's tough to do."

Brodkorb's attorney said he was still trying to determine whether the suit would be filed in state or federal court.

Brodkorb Complaint

The Associated Press State & Local Wire

March 15, 2012 Thursday 11:27 PM GMT

# Brodkorb threatens to expose other Capitol affairs

**SECTION:** STATE AND REGIONAL

**LENGTH:** 356 words

**DATELINE:** MINNEAPOLIS

A fired Minnesota Senate GOP staffer is threatening to expose adulterous affairs by other legislators as part of a potential lawsuit over his firing, according to a document made public Thursday.

Michael **Brodkorb's** legal strategy was laid out in a "notice of claims" document his attorneys filed with the state Tuesday. He was fired in December over an affair with his boss, then-Majority Leader Amy Koch.

In the document, attorney Philip Villaume wrote that **Brodkorb** is the victim of gender discrimination because female staffers who've had affairs with male legislators weren't fired.

"He intends to depose all of the female legislative staff employees who participated in intimate relationships, as well as the legislators who were party to those intimate relationships, in support of his claims of gender discrimination," the notice said.

The notice did not say how many female staffers **Brodkorb** believes had affairs with male legislators.

Dayle Nolan, an outside attorney hired by the Senate, said in a statement she would try to block any depositions "as part of a fishing expedition by Mr. **Brodkorb's** attorneys." She said his attorneys haven't provided any evidence to support their claims.

**Brodkorb** is demanding more than $500,000 in damages, the notice said. It also threatens invasion-of-privacy claims against three former members of the Senate GOP leadership and a current and former Senate staffer.

Talks broke down Tuesday between **Brodkorb's** attorneys and Senate officials for sending the dispute over his dismissal to mediation.

Koch abruptly resigned her leadership position in December. **Brodkorb** was fired one day later without a public explanation. She later acknowledged she had had an improper relationship with a staffer, but wouldn't reveal his identity, which went unconfirmed until Villaume acknowledged Wednesday that it was **Brodkorb**.

Koch was in her first term as majority leader but was regarded as a rising star in the party. **Brodkorb** was paid more than $90,000 a year for serving as her executive assistant and as the Senate GOP's communications director, where he was known as an aggressive and effective spokesman.

**LOAD-DATE:** March 16, 2012

**LANGUAGE:** ENGLISH

**PUBLICATION-TYPE:** Newswire

Copyright 2012 Associated Press
All Rights Reserved

Star Tribune (Minneapolis, MN)

March 16, 2012 Friday
METRO EDITION

# Capitol affairs are in the cross hairs

**BYLINE:** RACHEL E. STASSEN-BERGER; STAFF WRITER, STAR TRIBUNE (Mpls.-St. Paul)

**SECTION:** NEWS; Pg. 1A

**LENGTH:** 925 words

**HIGHLIGHT:** To prove he was treated differently, fired staffer Michael **Brodkorb** is threatening to seek sworn statements from others who have had trysts.

Fired Minnesota Senate staffer Michael **Brodkorb** is threatening to seek sworn statements from legislators and staffers who may have had trysts to prove he was treated differently for having an affair with former Senate Majority Leader Amy Koch.

**Brodkorb** is a longtime GOP operative whose work as a blogger and strategist played a role in bringing Republicans to power at the Capitol. His attorneys say they are prepared to take sworn depositions from romantically linked legislators and subordinates in order to help his potential gender-discrimination lawsuit. **Brodkorb** is seeking more than $500,000 in damages and legal costs, and his suit is based on what his attorney called "new and creative" legal reasoning.

The political and legal fallout of **Brodkorb's** threat, which rocked the Capitol on Thursday, came a day after Secretary of the Senate Cal Ludeman released a sternly worded statement saying there would be no negotiated settlement with **Brodkorb** regarding his termination.

**Brodkorb** lawyer Phil Villaume summoned journalists to his office Thursday, vowing "to come out and fight back."

Who would be deposed?

The aftershocks of the Koch-**Brodkorb** relationship has lingered at the Capitol since late last year, when the Republican from Buffalo announced she was stepping down as leader. The next day, Ludeman confronted **Brodkorb** at a restaurant away from the Capitol and told him he was fired. It was not until this week that anyone confirmed the affair.

**Brodkorb** had long been seen as a powerful and brash Senate GOP communications chief, unafraid to confront colleagues and even senators.

Ludeman accused **Brodkorb** of trying to "blackmail" and "extort" the Senate. The Senate's private attorney dismissed the former staffer's claims as a fishing expedition. But the allegations got the Capitol rumor mill buzzing over whom, precisely, **Brodkorb** could identify.

Neither Villaume nor a legal document from **Brodkorb's** side provided any hint of which lawmakers might face deposition, which would be done privately.

"Not me," said Steve Sviggum, who replaced **Brodkorb**. Sviggum served as the House Republican leader and then speaker for more than a decade, until 2006. Asked whether he knew of a single lawmaker other than Koch who had an affair with a staffer, he said: "We are going to let the attorneys handle this. You are pushing me in a way I don't want to go."

Roger Moe, a DFLer who served as the Senate majority leader for two decades, also demurred about whether he knew of lawmakers who had sexual relations with staffers during his time.

"If I did, I wouldn't tell you," said Moe, now a lobbyist.

Senate Majority Leader Dave Senjem, R-Rochester, referred all questions to the attorney the Senate hired to deal with the **Brodkorb** matter.

Senate Minority Leader Tom Bakk, DFL-Cook, said he doesn't know of any current lawmakers who have had affairs with staffers. Bakk is married to a current Senate staffer but noted that she worked in the Senate at that time and he was a House member.

Legal questions, too

**Brodkorb's** claims raise legal questions as well.

Villaume said that his case is a "very, very, very" rare one with a "relatively new and creative" legal theory.

At its heart, **Brodkorb's** legal case is that he was fired even though female staffers who had affairs with lawmakers were kept on or transferred to other state jobs. **Brodkorb** said he was treated differently, a case of gender discrimination.

"Similarly situated female legislative employees, from both political parties, were not terminated from their employment positions despite intimate relationships with male legislators," his attorneys said.

Senate officials said **Brodkorb** has no evidence to back up his claim and was an "at- will" employee who could be fired at any time.

Ludeman said **Brodkorb** was dismissed because Koch was no longer in leadership and he worked for her. His dismissal, Ludeman said, had nothing to do with the affair he had with Koch.

"There was no conversation or no word uttered by me about that at that event" regarding the affair, Ludeman said.

Documents by **Brodkorb's** attorneys contradicted Ludeman, saying he specifically noted the affair when he fired **Brodkorb** on Dec. 16.

**Brodkorb's** legal team said they believe Koch will "testify that Mr. **Brodkorb's** employment was terminated by the Republican leadership because of the intimate relationship." Villaume said that testimony would be public. Koch, who is married, said Thursday that she had no comment.

On Thursday, Dayle Nolan, the private attorney the Senate hired to handle the **Brodkorb** matter, said: "I have found no basis so far either in law or in fact to support a claim against the Senate, senators or Senate staff."

**Brodkorb** is holding out the possibility that he could separately sue Republican Sens. Geoff Michel, David Hann and Chris Gerlach, as well as former Senate chief of staff Cullen Sheehan and Senate committee administrator Aaron Cocking. All were said to have knowledge of **Brodkorb's** relationship with Koch or were involved in the events surrounding his dismissal.

Senjem, who was also involved in those events and first hired **Brodkorb** years ago when the party was in the minority, was not included in that list of possible legal targets.

Michel, who lost his post as deputy Senate majority leader in the aftermath of the Koch scandal, refused to comment. He and Gerlach announced recently that they are not seeking re-election.

Hann said that it was "probably not good for me to make any other comments because I don't have any firsthand knowledge of it."

Rachel E. Stassen-Berger Twitter: @rachelsb

**LOAD-DATE:** March 16, 2012

**LANGUAGE:** ENGLISH

**PUBLICATION-TYPE:** Newspaper

Capitol affairs are in the cross hairs Star Tribune (Minneapolis, MN) March 16, 2012 Friday

Copyright 2012 Star Tribune
All Rights Reserved

001181

# Michael Brodkorb's bitter fight with his former Senate employers goes public

by Paul Demko

Published: March 16th, 2012

Three months have passed since the resignation of Senate Majority Leader Amy Koch and the firing of key Senate staffer Michael Brodkorb. But the episode has once again gripped the Capitol during the past week as Brodkorb's attorneys and Senate officials traded public accusations.

Secretary of the Senate Cal Ludeman announced last week that the Senate had refused to mediate a complaint of wrongful termination from former staffer Michael Brodkorb. (Staff photo: Peter Bartz-Gallagher)

Secretary of the Senate Cal Ludeman initiated the furor with a statement issued late Wednesday announcing that the Senate had refused to mediate Brodkorb's complaints of wrongful termination. "The attorney retained by the Senate has reviewed this matter thoroughly and concluded that his claims are without any merit whatsoever," Ludeman wrote in the statement. "Despite Mr. Brodkorb's efforts to disrupt the work of the Senate in the current legislative session, to distract members of the Senate, to extort a payment from the Senate, and to try his so-called claims in the media, the Senate will not allow that to succeed."

The response from Brodkorb's attorneys was swift and equally blunt. After acknowledging what most Capitol insiders had long taken for granted – that Brodkorb and Koch did indeed have an affair — they threatened to air years' worth of the Senate's dirty laundry in an effort to prove Brodkorb's claim that he was subjected to unequal treatment because he is a man.

"Mr. Brodkorb has evidence that similarly situated female legislative employees, from both political parties, were not terminated from their employment positions despite intimate relationships with male legislators," reads the notice of claims filed by Brodkorb's lawyers with the Minnesota attorney general's office on Tuesday. "It is clear that Mr. Brodkorb was terminated based on his gender. He intends to depose all of the female legislative staff employees who participated in intimate relationships, as well as the legislators who were party to those intimate relationships, in support of his claims of gender discrimination."

The notice of claims was released at a press briefing called by Brodkorb's attorneys to rebut Ludeman's accusations. "Mr. Ludeman's statement is false and dishonest in many ways," said Phil Villaume, one of Brodkorb's attorneys. "We believe the statement was meant to intimidate a former state employee from pursuing a claim against the state of Minnesota and the Minnesota Senate for wrongful termination."

Brodkorb's attorneys had been in negotiations with the Senate over a possible mediated settlement to the employment dispute, but that now looks unlikely given the rancor between the two sides.

Villaume said Brodkorb will file a discrimination claim with the Equal Employment Opportunity Commission and is prepared to proceed with a lawsuit in either state or federal court. He is seeking upward of $500,000 in damages. "We've been prepared to go to litigation from the get-go," Villaume said. "Our client has indicated to us that if we can't get the matter settled through mediation, which is what his preference was, that we should proceed to litigation."

Villaume made it clear that he intends to cut a broad swath in potentially deposing senators and

staffers who have been involved in affairs. "It could be present members, could be past members, could be present members of the staff, past members of the staff," Villaume said. "Basically anybody in the current government structure is a potential witness in this case."

Ludeman doesn't anticipate additional efforts at mediation. He argues that Brodkorb's decision to move forward with filing a notice of claims while mediation discussions were in progress fatally undermined those talks. "I don't see any behavior yet that would even cause us to re-contemplate mediation at all," he said.

Ludeman further said that he is not aware of any other inappropriate relationships between senators and staffers. "Rumors run around this Capitol forever," he said. "But there's no personnel information, no ethics complaints or reports, that reveal any of that. Do I know of any of these circumstances? The answer's no."

Ludeman also told reporters on Thursday that he would block efforts by Brodkorb's attorney to depose lawmakers about extramarital affairs. But legal experts question whether that's possible. Stephen Cooper, a former commissioner of the Minnesota Department of Human Rights and an employment law specialist, says that there is some special protection for lawmakers against being forced to testify in legal matters but that it only pertains to situations in which they're being asked to explain why they voted as they did.

Marshall Tanick, another specialist in employment law, says legislators can sometimes avoid providing testimony while the Legislature is in session, but he doesn't think that will shield House and Senate members. "I don't think that'd be applicable here," Tanick said. "If they have knowledge about an event, I think they're fair game."
Cooper says that if the case moves forward, it will likely hinge on whether Brodkorb can establish that female staffers who were "similarly situated" received different treatment. That likely means that if the women involved in affairs were low-level employees with little authority, their situation wouldn't be deemed comparable to Brodkorb's case because he wielded considerable influence within the GOP caucus. "If it turns out that the other people were in a similar situation, then he has a good case," Cooper said.

Cooper points out that the fact that Brodkorb was an at-will employee — frequently cited in news reports — is irrelevant to determining the merits of the case. The only thing that will matter is whether illegal grounds were used to justify his firing. "If it was not illegal, than he has no case whatsoever," Cooper said. "If it is illegal, he has a case regardless of whether he's an at-will employee."

Cooper further criticizes how the Senate has handled the case, from the initial news conference announcing the Koch affair to Ludeman's blistering critique of Brodkorb on Wednesday. "One thing he's really got going for him is this was probably the most blundered handling of a termination [imaginable]," Cooper said. "Virtually everything they did made this worse."

Of course, it remains uncertain whether a gender discrimination case will ever be filed. The posturing on both sides is surely designed to create leverage and build public support for their conflicting positions. The two parties could eventually return to mediation to settle the conflict.

At Thursday's news conference, Villaume denied that there was any threat being delivered in his statement that senators and staffers will be deposed to discuss extramarital affairs. "We don't threaten," Villaume said. "We're trial lawyers. We litigate cases. We believe Mr. Brodkorb has a meritorious claim of discrimination based on disparate treatment. These are not threats. This is not blackmail. ... We're talking about litigation, and that's what this is all about."

Complete URL: **http://politicsinminnesota.com/2012/03/michael-brodkorb%e2%80%99s-bitter-fight-with-his-former-senate-employers-goes-public/**

Daily Globe

Published June 28, 2012 1_ 00 AM

# Letter: State taxpayers are left holding the bill

I read the article Minnesota Senators troubled over costs in sex scandal (June 21, 2012) with interest I have been following the story since Mr. Brodkorb announced his intention to file a gender discrimination and defamation suit against the state after being dismissed from his job as a consequence his affair with his boss, GOP Senate Majority Leader Amy Koch

By Douglas Bauman, Brewster Worthington Daily Globe

I read the article Minnesota Senators troubled over costs in sex scandal (June 21, 2012) with interest I have been following the story since Mr. Brodkorb announced his intention to file a gender discrimination and defamation suit against the state after being dismissed from his job as a consequence his affair with his boss, GOP Senate Majority Leader Amy Koch.

At the time of his termination, Mr. Brodkorb was employed by the Minnesota Senate GOP caucus as Director of Communications. This is a state job and therefore the cost of defending the GOP leadership in what is essentially an inter-party war will be assumed by the state. The current legal defense bill is $84,000 As Brodkorb shows no sign of going away, the legal bill will continue to climb Legal expenses could easily reach the six figure range and possibly top a million if and when a settlement is reached. Negotiating a settlement with Michael Brodkorb, short of giving him everything he asks for, will not be easy. Mr. Brodkorb has a reputation as a master of divisive politics, sharp elbows, and scorched earth political strategies The give and take of negotiation is not in Brodkorb's nature

Brodkorb developed his reputation for divisive politics maintaining an online blog specializing in sensationalist attacks on Minnesota Democrats Brodkorb blogged anonymously until he was publicly named in a law suit. Brodkorb's reputation for digging dirt made him an attractive choice as deputy chair of the Minnesota Republican Party in 2009. While continuing as the GOP deputy party chair, Brodkorb was also hired by the Republican Senate Caucus In his Senate job, Brodkorb was paid a state salary of $90,070 a year Brodkorb's dual role as a party officer and a senate staffer was unique in the legislature where traditionally staffers, as state employees, avoid outright politicking. Brodkorb, however, is not one to be limited by niceties or tradition.

It quickly became clear that Brodkorb intended to raise the level of partisan fighting at the legislature. He attacked, often in highly personal ways, senators he disagreed with or got in the way of his agenda. Brodkorb's style of fighting rather than negotiating cumulated in the entirely unnecessary and expensive shutdown of state government.

Brodkorb once said he regards politics as a combat sport." He brought that philosophy to his fight with the Minnesota Senate. Brodkorb and his attorneys plan to name colleagues who have engaged in affairs with staffers, lobbyists or legislators as proof that Brodkorb's dismissal was discriminatory. The threat to name names lead to this year's spat of unexpected Senate retirements Cal Ludeman, the new GOP Senate leader, issued a press release accusing Brodkorb of extortion, which is an accurate description

When the GOP Senate leadership hired Brodkorb they knew they were employing a divisive, no-holds-barred, politics as war, loose cannon. The GOP should not be surprised that Brodkorb is now aiming his cannons at them.

As your article noted, approval of the costs created by this avoidable legal mess broke along party lines Democrats opposed payment, Republicans voted for it Unfortunately the Minnesota taxpayers are on the hook for it

Douglas Bauman

Brewster

**Tags:** opinion, bauman, brodkorb



# Brodkorb lawsuit could face limits on naming Capitol affairs

By Cyndy Brucato | 07/24/12

MinnPost photo by Brian Halliday

His lawyer, Greg Walsh, discusses Michael Brodkorb's complaint filed with the Equal Employment Opportunity Commission.

There could be court-ordered limits on any steamy tales of love and lust in Capitol corridors, as threatened by the sex discrimination case that Michael Brodkorb has brought against the state and the Minnesota Senate.

To prove his lawsuit, Brodkorb, former communications director for the Senate Republican caucus, says he's prepared to name names. He plans to identify similarly situated female legislative employees who had intimate relationships with legislators but were not fired from their jobs. He claims he was let go because of his relationship with former Republican Senate

Majority Leader Amy Koch.

But that list of examples may not be long.

"Similarly situated is not just anybody who had an affair," said Sara McGrane, an employment attorney with the Felhaber law firm in Minneapolis, in an interview about the case. "The court will be careful before it allows a widespread fishing expedition [in order to protect] innocent parties who have nothing to do with this."



The Loft's Nature Writing Conference at the Audubon Center (Sep 21–23)
www.loft.org

The court would determine how many depositions are allowed. "The parties may say, '15 depositions,' which the court may limit," said McGrane.

In addition, McGrane said, depositions that would reveal the names and positions of legislators and their employees are private, up to point. They become public when used in a trial or if a defendant files for a summary judgment. It's unlikely they'd be leaked — "Highly unusual," she said.

McGrane, who is a defense lawyer in unemployment cases, declined to judge whether Brodkorb has a winnable claim of sex discrimination. But she picked up on some of the fine print in the complaint.

In March, Brodkorb filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission. Last week, the EEOC dismissed the charge but told Brodkorb he could proceed with a lawsuit. That could be telling, said McGrane. "The EEOC took a pass on probable cause. If I had to pick a side, I'd rather be on the defendants' side in this case."

Senate Majority Leader David Senjem indicated he's prepared to fight to the legal finish line. "I believe the Senate has done nothing wrong. In fact, the Senate has acted carefully and appropriately in regards to this employment issue. I am not interested in a mediated settlement, and I believe the Senate will prevail in court," Senjem said in a statement.

That will be expensive, said McGrane, because a typical employment case can reach six figures in legal fees. The Senate — i.e., the taxpayer — has already spent $85,000 in preparation for the lawsuit and now will pay legal fees for any employee who becomes

involved in litigation.

"It is expensive for the defense to go forward," she said. "It's not uncommon for it to be cheaper to pay a plaintiff to settle the case."

Expenses can multiply if lawyers go beyond the basics of investigation and discovery.

McGrane ticked off the cost drivers: "cases with a lot of motion issues; expert witnesses; independent medical examinations – for example, if there is claim of severe emotional distress." Another expensive item, she said, is multiple depositions.

Brodkorb's attorneys will ask to depose current and former members of the Republican leadership, including Sens. David Hann, Claire Robling, Chris Gerlach, Geoff Michel, Senjem, and Koch.

They also will want to depose Cal Ludeman, the secretary of the Senate, who personally fired Brodkorb and who is named directly in a charge of defamation.

Add to that the female employees that Brodkorb will want to depose to prove his case, and the plaintiff's list could reach 20 or more.

Who is allowed on this list by the court is critical. "This becomes your playbook. This is what I'm allowed – where I have to make my best case," said McGrane.

So it may not be multiple cases of private affairs between public people that Brodkorb will be allowed to offer up to the court. It may be just one. But that will be enough to encourage a Capitol guessing game and to maintain the public's interest into the election season.

**Related Tags:**

**ABOUT THE AUTHOR:**

**Cyndy Brucato**
Cyndy Brucato has a three-decade career as a journalist and political strategist.

## COMMENTS (6)

### The taxpayers have spent

SUBMITTED BY NEAL ROVICK ON JULY 24, 2012 - 1:17PM.

The taxpayers have spent $85,000 to defend the Republicans in the legislature from a lawsuit stemming from a Republican employee/employer issue.

Was a State of Minnesota HR person consulted on the pitfalls of their action? I doubt it.

Could the State of Minnesota fire Brodkorb? I doubt it.

They're like the kids playing with matches, eventually burning the house down.

Who buys the new house? Not the kids.

### Republicans will pay the price

SUBMITTED BY TOM CHRISTENSEN ON JULY 24, 2012 - 3:52PM.

This suit will nasty, long, and very interesting for democrats just before the elections in November. If you want to shorten the case tell the republicans it is on their nickel not the public's tax money. The case will be solved in private tomorrow if they have to pay for it. Let's see if they deserve the self imposed title fiscal conservative. It turns out they don't deserve the title because they have already spent about $100,000.00 just lawyering up. They will play the legal game as long as possible on your tax dollars. It won't matter to them though because fiscal conservatives are more than willing to spend your money on themselves. You are about to see how MEANINGLESS the republican self imposed title of "fiscal conservative" really is. When are they going to work the real problems this state has vs their own personal poor indiscretions. Voters the republicans are sending you a very big message. The republicans are morally and leadership bankrupt. The choice is your in November voters.

### Defense of Brodkorp suit

SUBMITTED BY DAVID BASTIEN ON JULY 24, 2012 - 4:20PM.

The $85,000+ bill we, Minnesota's taxpayers, will have to pay for Republican misconduct is the extreme of hypocrisy. The Republican dominated legislature can't come up with the money to pay for education (elementary, secondary, or post-secondary), restoring the state capitol, infrastructure development and maintenance, and all of the other things we really need in Minnesota, but they have no problems coming up with state funds to pay for the defense of a philandering Senate majority leader and for defending Republican legislators' covering this whole ugly mess up. They ought to pay for it out of party funds.

Oops!! I forgot. The party of fiscal responsibility is all but bankrupt -- they can't pay for it. On every single issue facing Minnesota their hypocrisy is stunning. The hired a scam artist to run their party they anointed a philanderer as their Senate chief just because she said same sex marriage was a threat to the institution of marriage, and they are now on the verge of bankrupting the State of Minnesota. In a more just time, these deceitful hypocrites would have been horse whipped, tarred, feathered, and ridden out of the state on a rail.

### What? Brodkorb thinks he has a right to work?

SUBMITTED BY CLAYTON HAAPALA ON JULY 24, 2012 - 10:16PM.

Nah, I know that "Right to Work" [for less] is not what is meant, here, but the pun is too tempting.

I am kind of with Senjem on the "MN is an At-will employment" State. MB's manager was canned (role change) , and his services were no longer needed. Why are we paying for this, again?

Feature presentations of "MN GOP Exposed" are going to be attention-getting, this Fall.

### I wonder

SUBMITTED BY ROBERT GAUTHIER ON JULY 24, 2012 - 10:32PM.

If Mr.. Broadkorp and his squeeze thought the rules of the blogosphere applied in the court. Next thing you know they will be calling Bachmann and Sutton for character witnesses

### Interesting

SUBMITTED BY CAROLE HEFFERNAN ON JULY 25, 2012 - 7:27PM.

A reigning member of the party that has turned "trail lawyer" into a pejorative, continually whines of frivolous lawsuits, wants to kill unions with "right to work for less laws" because they have "too many rights" gets fired.
He gets fired because he no longer has a boss so his position doesn't have anyone to report to and what does he do? File a law suit against the state. His reason is "others have done it".
I don't recall a case of anyone in the legislature resigning and their staff being kept on.

StarTribune

# Judge in Brodkorb case addresses confidential docs

Article by BRIAN BAKST
Associated Press
June 7, 2013 - 12 42 PM

Michael Brodkorb

Glen Stubbe Star Tribune

ST PAUL, Minn - A federal judge has ruled that either party in fired aide Michael Brodkorb's lawsuit against the Minnesota Senate can designate materials or witness depositions as confidential, an order the former staffer said Friday was too broad but that an opposing attorney classified as routine

U S. Chief Magistrate Judge Arthur Boylan issued the order Thursday, covering information sought and exchanged in the pre-trial phase of a case headed for trial next summer Brodkorb is suing over his dismissal, which followed disclosures of an affair he was having with then-Republican Senate Majority Leader Amy Koch.

The order covers depositions of former lawmakers and others. Brodkorb claims that his termination after the affair became public was handled differently than similarly situated employees in Capitol romances His side planned to seek depositions of current and former lawmakers as he tries to prove he case

Koch gave up her leadership post when the affair surfaced and didn't seek re-election after serving out the final year of her term.

Senate lawyers have said Brodkorb was an at-will employee who could be fired at any time

Dayle Nolan, a Minneapolis attorney defending the Senate, said the protective order is normal in civil cases but is more beneficial in this instance due to the "the heightened prurient interest in this case and the type of allegations lodged by the plaintiff"

Nolan added, "The press coverage has been fast but fact-free, and would support the idea that a protective order would be making the litigation be more normal litigation"

Brodkorb said he agrees that aspects of public officials' private lives should be handled in a delicate manner But he said the judge's order goes beyond that

"Every aspect of this case is likely under seal," he said Friday It will "deny the public an opportunity to understand what happened in this case and the nature of it."

Either side can object to the designation of the other on any material. In such disputes, a judge would have to weigh in Should the case go to trial, proceedings would presumably occur in public view. Boyle's order said the court "may take such steps as it deems reasonably necessary to preserve the confidentiality of such documents or information."

The Senate has amassed more than $200,000 in legal costs fighting the lawsuit An updated invoice was expected soon

While the pre-trial proceedings move ahead, the sides have been ordered into a settlement conference in late September A prior attempt to settle the case fizzled last fall.

Brodkorb, a former deputy chairman of the Minnesota Republican Party, is seeking a six-figure award

© 2013 Star Tribune

Brought to you today by UCare

# Judge's order in Brodkorb case reveals existence of audiotapes

By Cyndy Brucato | 06/07/13

A judge's order that would allow confidential sealing of pre-trial information and depositions in Michael Brodkorb's wrongful termination lawsuit against the Minnesota Senate has revealed the existence of audiotapes.

Those tapes might show that elected officials had affairs with staff members who were not terminated, as Brodkorb was for his relationship with former Senate Majority Leader Amy Koch.

Brodkorb attorney, Greg Walsh, in a statement, said that lawyers for the Senate asked for the protective order after they learned that Brodkorb had "audiotapes from meetings between Mr. Brodkorb and representatives of the Minnesota Senate which we believe support Mr. Brodkorb's claim the he was wrongfully terminated."

One source familiar with but not directly involved in the case said that Brodkorb, the former communications director for the Senate Republican caucus, recorded a conversation with the former president of the Senate, Michelle Fischbach.



According to the source, Fischbach told Brodkorb that several state senators had been involved with staff members who were not terminated as a consequence, and she acknowledged he was treated differently as a result of his affair with Koch.

Attorney Walsh said that Brodkorb wants to protect specific names but that "actions involving his wrongful termination should be available to the public."

The state has already spent more than

$200,000 in legal fees on its defense. Walsh said, "The net effect of this protective order will only cost the taxpayers of Minnesota more money."

Dayle Nolan, the attorney from the Larkin Hoffman law firm representing the Senate, was not immediately available for a response.

Judge Arthur Boylan's order allows the opposing counsel to object to a request for confidentiality, which the court then may either grant or deny.

**Related Tags:**

**ABOUT THE AUTHOR:**

**Cyndy Brucato**
Cyndy Brucato has a three-decade career as a journalist and political strategist.

**COMMENTS (7)**

**Can you say $1,000,000 total**

SUBMITTED BY TOM CHRISTENSEN ON JUNE 8, 2013 - 8:46AM.

$200,000 is a months old number. I will be surprised if this ridiculous suit doesn't get to be $1,000,000 by the time the lawyers doing their thing and then there will be an appeal. Hanky panky needs to be on Brodkorb's nickel not the tax payers of Minnesota who had nothing to do with his sexual escapade. Had he not chosen to do what he did he wouldn't have to worry about how others have been treated. The taxpayers should not have to pay for bad judgment on his part!

**Just a technical point**

SUBMITTED BY DONALD LARSSON ON JUNE 8, 2013 - 9:06AM.

Are the "audiotapes" actually tapes (you know, on big or little reels, magnetic coating and all that--what you threw out or squirreled away in the attic over a decade ago)? I don't mean to be nitpicky but we need to have our terminology catch up with our technology. "Audio recording" is clunkier, but more accurate.

**Brodkorb**

SUBMITTED BY BARBARA MILLER ON JUNE 8, 2013 - 9:58AM.

I find it fascinating that almost no one dares speak out publicly about this man. It is an apparent measure of the level of fear he has instilled in pretty much everyone. Ergo schadenfreude in his wake.

### Lovely....

SUBMITTED BY MIKE WORCESTER ON JUNE 8, 2013 - 10:11AM.

So my hard earned tax dollars (and what is the tab up to now?) are being used for a lawsuit, and all the information that is a part of that suit might be sealed?

Because?

Sorry Minnesota Senate, but you guys screwed up. Badly. And now you are using my remittances to you to cover it up?

Lovely......

Sincerely,
One pissed off taxpayer.

### Recording?

SUBMITTED BY CHELLE BLAKELY ON JUNE 8, 2013 - 11:53AM.

Just curious, are there any Minnesota laws about recording without disclosure? Are phone calls treated differently?

### Recording conversations

SUBMITTED BY DOUG DUWENHOEGGER ON JUNE 10, 2013 - 7:54AM.

In Minnesota as long as one side knows you are recording it is legal. It is not legal to covertly record conversations were none of the participants know you are recording their conversation.

### Sealed Documents

SUBMITTED BY KENNETH KJER ON JUNE 10, 2013 - 7:09AM.

Every taxpayer in the state should be mad at this. We are the employers and pay their salaries, we have a right to know what is going on. Every taxpayer in the state should write their representatives and demand that all info in this case be made public.



FOR IMMEDIATE RELEASE
June 7, 2013

Contact: Greg Walsh
(651) 379-0973

STATEMENT FROM MICHAEL BRODKORB'S ATTORNEY ON PROTECTIVE ORDER

(St. Paul, MN) – Greg Walsh, attorney for Michael Brodkorb, released the following statement regarding the protective order issued by United States Chief Magistrate Judge Boylan:

"The attorneys for the Minnesota Senate have collected over one hundred thousand dollars from the taxpayers of Minnesota defending a wrongful termination lawsuit. The Senate's lawyers, knowing they have an open check book, have persuaded the Court to issue a Protective Order to potentially hide from public view all the misdeeds of the Minnesota Senate.

The net affect of this Protective Order will only cost the taxpayers of Minnesota more money.

While Mr. Brodkorb wishes to protect other families from the public glare he continues to endure, other actions involving his wrongful termination should be available to the public.

Mr. Brodkorb fought against the potential overreaching aspects of the protective order issued today by the Court, which could unfortunately deny taxpayers an opportunity to learn the full details of the actions taken by certain members of the Minnesota Legislature involving Mr. Brodkorb's employment at the Minnesota Senate.

In December of 2012, Senate Majority leader Dave Senjem said, "this case needs to go forward in the openness of a court session" as he feared the perception of "a cover-up." It was only minutes after disclosing to counsel for the Minnesota Senate hundreds of pages of documents, including audiotapes from meetings between Mr. Brodkorb and representatives of the Minnesota Senate which we believe support Mr. Brodkorb's claim the he was wrongfully terminated, did counsel for the Minnesota Senate immediately request a protective order to potentially hide this information from public view.

It is our goal that this case will proceed in the normal, open and transparent legal process, that is afforded to all parties in federal court."

StarTribune

# List surfaces of lawmakers who Brodkorb believes had affairs

Article by Rachel E Stassen-Berger
Star Tribune
July 11, 2013 - 11 36 PM

Michael Brodkorb

Glen Stubbe Star Tribune

Brodkorb

Feed Loader

Former Minnesota Senate employee Michael Brodkorb revealed the list that has long kept the Capitol abuzz names of legislators he believes had affairs with staffers

Brodkorb, who was fired as the Senate's communications director in 2011 after he had an affair with a former Senate majority leader, says he was fired even though female legislative employees were allowed to keep their jobs after having affairs He is suing the Senate, claiming gender discrimination

The list, which the Associated Press captured after it was posted on a court website, but then taken down, purported to include the names of 10 legislators and six staffers who allegedly had Capitol affairs

According to the AP, which did not name the lawmakers or staffers who were on the list, all but one of the 10 legislators are no longer in office

The AP said the list was in a mistaken filing by Brodkorb's attorneys last week.

The AP said the document "offers scant evidence to back up [the] allegations" and does not include examples of affairs between a supervisor and a direct subordinate

Since Brodkorb first threatened his lawsuit, which would require him to prove what happened in other alleged statehouse affairs, the question of what names might be on the list has caused much speculation and some titillation under the Capitol's marble dome

"It's dirty laundry, true or not," said Sen Sean Nienow, R-Cambridge

He said he recalls thinking when Brodkorb first aired his claims, "I'm sure glad that I haven't done anything that would put me on that list."

On Thursday, after the AP wrote about the list's brief release, Brodkorb attorneys and the Senate attorneys met in court on other issues regarding the case

After that hearing, which focused on whether Brodkorb has released enough information to the Senate legal team, Brodkorb's lawyers had nothing to say about the list.

"We're not making any comment," attorney Phil Villaume said

In an interview late Thursday, Brodkorb said that the release was unintentional and noted that his legal team has said for months that it hoped to keep the names of the people who he believes had affairs from public scrutiny.

The Senate's attorneys plan to ask the court to penalize Brodkorb's team for violating a confidentiality order in the case by releasing the list

"We're bringing a motion for sanctions," said Dayle Nolan, a private attorney the Senate hired to handle the case "I have no information that would tell me it was inadvertent, mistaken or anything I know it was done You know it was done That's all I know at this point"

Senate Minority Leader David Hann, R-Eden Prairie, said he found the public release of the list "reprehensible"

"It is deliberately trying to cause harm to people," said Hann, who was an assistant majority leader when Brodkorb was fired

Brodkorb shot back that Hann was among the senators who, in 2011, publicly disclosed that Senate Majority Leader Amy Koch had stepped down from leadership after an "inappropriate relationship" with a staffer. Brodkorb was the staffer

Senate leaders from both parties have long maintained that Brodkorb's firing was perfectly legal because he was an at-will employee who could be let go at any time

Brodkorb was dismissed after Koch resigned from leadership in the wake of their affair

Brodkorb, like communications directors who served before him, was then let go because he no longer had a direct supervisor, Senate Majority Leader Tom Bakk, DFL-Cook, said recently

Brodkorb has said that he reported to the Senate chief of staff and the Senate secretary, not to Koch

Rachel E. Stassen-Berger • Twitter: @RachelSB

© 2013 Star Tribune



Customize your BringMeTheNews experience: Register now

73° Mostly Sunny in Minneapolis

Rick Kupchella's BringMeTheNews

My BMTN

News

Get the best local news daily

Get News

BringMeTheNews

Like

Follow @BringMN

# AP: Brodkorb's lawsuit filing details alleged Capitol affairs

+1 0

Email

July 11, 2013
Curated by Liz O'Connell

The Associated Press gained access to documents in Michael Brodkorb's wrongful termination lawsuit that identify those involved in alleged "secret" affairs at the state Capitol dating back to the 1980s.

The Associated Press said the list was included in a mistaken filing last week by Brodkorb's attorneys. The case is under protective seal, but was briefly made public on a federal courts website and later taken down. The Associated Press downloaded a copy before it was removed.

Brodkorb had been a top aide to former Senate Majority Leader Amy Koch, but was fired in December 2011 after it was revealed that he and Koch had an affair.

Brodkorb argues that he was discriminated against in his firing, noting that female staffers have had affairs with lawmakers, but were not fired.

The Associated Press report does not reveal the identities of the 10 legislators and six employees mentioned, but the news service says they attempted to contact those named and only one confirmed the filing's assertion about her.

The case is scheduled to go to trial July, 2014.

Minnesota Senate leaders have maintained that they don't intend to settle the case and recently approved a budget of more than $500,000 of taxpayer money to pay for legal fees until the start of the trial. They've already spent at least $228,000

Brodkorb is seeking $600,000 in damages.

## Related Stories

Customize your BringMeTheNews experience: Register now
73° Mostly Sunny in Minneapolis
Rick Kupchella's BringMeTheNews
My BMTN
suit
recordings' surface in lawsuit
Tweet 2
+1 0
Like 27
Send
Email
Add a comment...
Comment
Warning: this comments plugin is operating in compatibility mode, but has no posts yet. Consider specifying an explicit 'href' as suggested in the comments plugin documentation to take advantage of all plugin features.

# Brodkorb papers mistakenly made public include list of alleged legislative affairs

By Joe Kimball | 07/11/13

The Associated Press says a list of legislative affairs involving 10 Minnesota lawmakers — all but one no longer in office — was mistakenly made public in the case of Michael Brodkorb.

Names of people named as being involved in the affairs were not included in the story.

Brodkorb sued the state Senate last summer, saying he was wrongly fired, after his extramarital affair with then-Senate Majority Leader Amy Koch was made public.

Brodkorb has maintained that he was treated differently from other legislative staffers who had affairs at the Capitol. While he has said he had examples of other cases, the filings in the case were supposed to stay under wraps.

Says the AP story:

> *Since Brodkorb filed the lawsuit last July, the litigation has cast a cloud over the Capitol with its suggestion that he would allege infidelities by other members of the Legislature. The list of affairs was included in a mistaken filing last week by Brodkorb's attorneys in a case that is under protective seal. It was put up briefly on a publicly accessible electronic federal courts website, then taken down, but not before The Associated Press downloaded the filing. A hearing in the case was scheduled for Thursday and court-ordered settlement talks could resume this fall.*

The story says there is "scant evidence" to back up Brodkorb's allegations of the other affairs.

While not naming those implicated, the AP tried to contact them. Four denied the allegations; others declined comment or couldn't be reached.



**Related Tags:**

## ABOUT THE AUTHOR:

**Joe Kimball**
Joe Kimball, formerly of the Star Tribune, reports on state politics and St. Paul City Hall.

## COMMENTS (2)

### How has this escaped official notice?

SUBMITTED BY MARK GISLESON ON JULY 11, 2013 - 4:59PM.

Given that this leak served Brodkorb's interests, I do not understand why a judge hasn't called his legal team in to discuss punishment.

Is the entire state too afraid of this muck slinger to hold him accountable?

### Brodkorb now at risk?

SUBMITTED BY JOHN FERMAN ON JULY 11, 2013 - 6:31PM.

By naming names might Brodkorb have exposed himself to being sued. I would guess none of the persons would have confided their dalliences to Brodkorb, so he is either guessing or lying. Wouldn't be rich to see all of Brodkorb's Senate suit winnings pass into someone else's hands, other than his lawyers. BTW, how is he paying them anyway?

MinnPost | 900 6th Avenue SE | Minneapolis, MN 55414 | 612.455.6950

StarTribune

# Fired Minnesota Senate aide's lawsuit cites other affairs at Capitol

Michael Brodkorb

Glen Stubbe, Star Tribune

Article by: BRIAN BAKST
Associated Press
July 11, 2013 - 1:27 PM

ST. PAUL, Minn. — For the first time, a fired Minnesota Senate operative has made detailed accusations central to his federal wrongful termination lawsuit: a list of other lawmakers and staff members who allegedly carried on affairs over the years without losing their jobs.

The list opens the possibility that those people — some long gone from the Legislature — could ultimately be asked to testify about allegations of secret affairs that date back to the 1980s. Whether it helps Michael Brodkorb prove his case is an open question, experts say, because many of the alleged affairs are old and happened under different circumstances.

Brodkorb was the Senate GOP's communications director when he was fired after his extramarital affair with then-Senate Majority Leader Amy Koch became public in December 2011. Koch resigned from her leadership post immediately and left the Legislature following her term. Now, Brodkorb is seeking more than $500,000 in damages with an unusual gender discrimination claim that argues he was fired for an affair while many female staffers romantically linked to lawmakers were not.

Since Brodkorb filed the lawsuit last July, the litigation has cast a cloud over the Capitol with its suggestion that he would allege infidelities by other members of the Legislature. The list of affairs was included in a mistaken filing last week by Brodkorb's attorneys in a case that is under protective seal. It was put up briefly on a publicly accessible electronic federal courts website, then taken down, but not before The Associated Press downloaded the filing. A hearing in the case was scheduled for Thursday and court-ordered settlement talks could resume this fall.

Senate attorney Dayle Nolan said she will seek sanctions against Brodkorb's side for violating the protective order, but said the details don't change the case. Brodkorb's attorneys did comment ahead of the hearing.

"To the extent there could possibly be a grain of truth to any of the allegations, which we do not concede, nothing supports the plaintiff's claims and nothing will have any impact on the litigation going forward," Nolan said Thursday.

Messages left with Brodkorb attorney Greg Walsh at his office and on his cell weren't returned, and a second attorney, Phil Villaume, deferred comment to Walsh.

Top senators and the Senate's attorneys have long maintained that past romances don't matter in defending against Brodkorb's lawsuit because he was an "at-will" employee who could be terminated at any time. The case has already cost taxpayers $225,000 and another $500,000 has been set aside for ongoing defense fees.

That his list became public now probably won't help Brodkorb build pressure for a deal in a case at least a year away from a possible trial, said Columbia University Law Professor Vivian Berger, who specializes in employment cases.

"The guillotine is more effective when the blade is hanging over you, not when the guillotine comes down," Berger said.

The document offers scant evidence to back up his allegations. Several of the supposed affairs involved no direct boss-subordinate relationship, as Brodkorb had with Koch. The alleged affairs would have occurred under different leaders than those who fired Brodkorb.

Brodkorb names 10 legislators — all but one now out of office — whom he claims had an "intimate sexual relationship" with legislative staff members who remained employed afterward. It names six of the employees.

The AP is not naming the people identified on Brodkorb's list because they have not yet been called to testify or been accused of anything illegal. Many didn't know they were on it.

Brodkorb names both Republican and Democratic lawmakers of varying stature. The brief narratives make repeated references to the relationships being "widely known" in the Legislature. In one case, it suggests a male senator also had relationships with female members of the Legislature.

The AP attempted to contact those named and reviewed court records for those involved in divorces or other proceedings. Four flatly denied allegations read to them, with some expressing anger at being pulled into the case. Six declined comment or indicated they were consulting with an attorney. Five didn't respond.

One person confirmed the filing's assertion about her, which was backed up by a court record showing the other party to the affair admitting paternity of a child born during his time in office. Two sets of allegations include a lawmaker-staffer pairing who are now married.

One staff member named said she had been contacted by a private investigator while another told AP that a law firm asked a while back to speak with her about the affair. She said she declined.

In one case, the lawmaker and staff member independently denied the existence of an affair and said close working relationships that are routine at the Capitol can be easily misconstrued. The former senator said he regularly gave the staff member rides to and from the Capitol to spare her parking fees and to provide safe transportation after late-night shifts.

Employment law experts caution that allegations involving differing circumstances are viewed skeptically — if they are

admitted as evidence at all at trial. Attorneys commonly spar over what information produced in the discovery phase is allowed at trial, and whether Brodkorb's examples involve similarly situated affairs will be up for debate as the case progresses.

There is little evidence to prove the affairs in the filing, though Brodkorb's attorneys could provide more details as the case goes on. "Discovery is continuing," the filing said.

Stephen Befort, an authority in employment law at the University of Minnesota Law School, said Brodkorb could find a discrimination claim more difficult to make if the other examples he cites vary widely from the lead-up to his own firing or happened under previous Senate regimes.

"I think it weakens the claims if it's not identical circumstances," Befort said. He added that the dated nature of some of Brodkorb's examples could also undermine his case. "The closer you are both in time and circumstances, the stronger the discrimination claim."

Beth Brascugli De Lima, president of California-based human resources firm HRM Consulting Inc., pointed out that employee codes of conduct could have evolved over time. She also said that the close connection between a supervisor and employee matters in workplace relationships because closer proximity can expose an organization to sexual harassment actions.

"The issue of direct report is very important when you're talking about relationships in any organization," she said.

Yet employment lawsuits like Brodkorb's are rare enough that older cases or those that aren't identical could be valuable, said David Larson, an employment law scholar at Hamline Law School in St. Paul.

"As long as the facts are roughly analogous, they can be very helpful to the plaintiff," he said. However, Larson also stressed that those alleging employment discrimination have a high legal bar and "it remains extremely difficult to prove."

© 2013 Star Tribune

Create Account WorldNow 74° Clear Go Further Web Search...

# AP: Fired Senate staffer details other affairs

*Posted: Jul 11, 2013 1:40 PM CDT*
*Updated: Jul 11, 2013 8:53 PM CDT*

By BRIAN BAKST and PATRICK CONDON
Associated Press

ST. PAUL, Minn (AP) -- For the first time, a fired Minnesota Senate operative has made detailed accusations central to his federal wrongful termination lawsuit: a list of other lawmakers and staff members who allegedly carried on affairs over the years without losing their jobs.

The list opens the possibility that those people -- some long gone from the Legislature -- could ultimately be asked to testify about allegations of secret affairs that date back to the 1980s. Whether it helps Michael Brodkorb prove his case is an open question, experts say, because many of the alleged affairs are old and happened under different circumstances

Brodkorb was the Senate GOP's communications director when he was fired after his extramarital affair with then-Senate Majority Leader Amy Koch became public in December 2011. Koch resigned from her leadership post immediately and left the Legislature following her term. Now, Brodkorb is seeking more than $500,000 in damages with an unusual gender discrimination claim that argues he was fired for an affair while many female staffers romantically linked to lawmakers were not

Since Brodkorb filed the lawsuit last July, the litigation has cast a cloud over the Capitol with its suggestion that he would allege infidelities by other members of the Legislature. The list of affairs was included in a mistaken filing last week by Brodkorb's attorneys in a case that is under protective seal. It was put up briefly on a publicly accessible electronic federal courts website, then taken down, but not before The Associated Press downloaded the filing. A hearing in the case was scheduled for Thursday and court-ordered settlement talks could resume this fall.

Senate attorney Dayle Nolan said she will seek sanctions against Brodkorb's side for violating the protective order, but said the details don't change the case. Brodkorb's attorneys did not comment ahead of the hearing.

"To the extent there could possibly be a grain of truth to any of the allegations, which we do not concede, nothing supports the plaintiff's claims and nothing will have any impact on the litigation going forward," Nolan said Thursday

Top senators and the Senate's attorneys have long maintained that past romances don't matter in defending against Brodkorb's lawsuit because he was an "at-will" employee who could be terminated at any time. The case has already cost taxpayers $225,000 and another $500,000 has been set aside for ongoing defense fees.

That his list became public now probably won't help Brodkorb build pressure for a deal in a case at least a year away from a possible trial, said Columbia University Law Professor Vivian Berger, who specializes in employment cases.

"The guillotine is more effective when the blade is hanging over you, not when the guillotine comes down," Berger said.

The document offers scant evidence to back up his allegations. They also would have occurred under different leaders than those who fired Brodkorb. Most of the supposed affairs involved no direct boss-subordinate relationship.

Despite her position as majority leader and his as chief caucus spokesman, Koch said Thursday she had no such relationship with Brodkorb, noting he reported to the GOP caucus chief of staff, not her.

Brodkorb names 10 legislators -- all but one now out of office -- whom he claims had an "intimate sexual relationship" with legislative staff members who remained employed afterward. It names six of the employees.

The AP is not naming the people identified on Brodkorb's list because they have not yet been called to testify or accused of anything illegal. Many didn't know they were on it.

Brodkorb names both Republican and Democratic lawmakers of varying stature. The brief narratives make repeated references to the relationships being "widely known" in the Legislature. In one case, it suggests a male senator also had relationships with female members of the Legislature.

The AP attempted to contact those named and reviewed court records for those involved in divorces or other proceedings. Four flatly denied allegations read to them, with some expressing anger at being pulled into the case. Six declined comment or indicated they were consulting with an attorney Five didn't respond.

One person confirmed the filing's assertion about her, which was backed up by a court record showing the other party to the affair admitting paternity of a child born during his time in office Two sets of allegations include a lawmaker-staffer pairing who are now married.

One staff member named said she had been contacted by a private investigator while another told AP that a law firm asked a while back to speak with her about the affair. She said she declined

In one case, the lawmaker and staff member independently denied the existence of an affair and said close working relationships that are routine at the Capitol can be easily misconstrued. The former senator said he regularly gave the staff member rides to and from the Capitol to spare her parking fees and to provide safe transportation after late-night shifts.

Employment law experts caution that allegations involving differing circumstances are viewed skeptically -- if they are admitted as evidence at all at trial Attorneys commonly spar over what information produced in the discovery phase is allowed at trial, and whether Brodkorb's examples involve similarly situated affairs will be up for debate as the case progresses.

There is little evidence to prove the affairs in the filing, though Brodkorb's attorneys could provide more details as the case goes on "Discovery is continuing," the filing said

Stephen Befort, an authority in employment law at the University of Minnesota Law School, said Brodkorb could find a discrimination claim more difficult to make if the other examples he cites vary widely from the lead-up to his own firing or happened under previous Senate regimes.

"I think it weakens the claims if it's not identical circumstances," Befort said. He added that the dated nature of some of Brodkorb's examples could also undermine his case. "The closer you are both in time and circumstances, the stronger the discrimination claim."

Beth Brascugli De Lima, president of California-based human resources firm HRM Consulting Inc., pointed out that employee codes of conduct could have evolved over time. She also said that the close connection between a supervisor and employee matters in workplace relationships because closer proximity can expose

an organization to sexual harassment actions.

"The issue of direct report is very important when you're talking about relationships in any organization," she said.

Yet employment lawsuits like Brodkorb's are rare enough that older cases or those that aren't identical could be valuable, said David Larson, an employment law scholar at Hamline Law School in St. Paul.

"As long as the facts are roughly analogous, they can be very helpful to the plaintiff," he said. However, Larson also stressed that those alleging employment discrimination have a high legal bar and "it remains extremely difficult to prove."

## RECOMMENDED VIDEOS

Flight 214 crash animation

Alyson Hannigan: Sarah Michelle Gellar Was 'Most Tired' At End

Mother of hit-and-run victim says intersection filled with 'drunks'

Why Stylists Hate Boxed Haircolor

Men: Diet Soda Makes You Fat!

Prince's jet parked at MSP airport

## FROM AROUND THE WEB

- 'Why I Had A Wedding-Day Quickie' (HuffPost Live)
- I HAVE SEEN MY HAT: Six Inappropriate Children's Books (The Allegiant)
- The 5 Warning Signs of Prostate Cancer (Newsmax Health)
- Child Stars: Where Are They Now? (Parent Society)
- Top 10 Athletes Turned Actors of All Time (Rant Sports)
- U.S. Economy Headed For Largest Crash Since Great Depression (Money Morning)

## YOU MIGHT BE INTERESTED IN

- Body found in parked car in New Hope, Minn. - KMSP-TV
- Man shot in rear end in north Minneapolis - KMSP-TV
- Cat owners: Be careful with kitty litter - KMSP-TV
- St. Paul man found guilty for killing woman while robbing home - KMSP-TV
- 2 killed in head-on collision near Duluth - KMSP-TV
- Coon Rapids couple killed in motorcycle crash near Crosby - KMSP-TV

Add a comment...

Comment

Facebook social plugin

worldnow

my FOX9.COM

SEARCH FOR IT HERE

Privacy Policy Terms of Service Ad Choices

Mobile: mobile.Marshallindependent.com Sign In | Create an Account | Subscribe | Submit News | Contact Us | Home

INDEPENDENT Southwestern Minnesota's Daily Newspaper

You said Why not remove high fructose corn syrup?

News Sports Opinion Forums Lifestyle Sections Ads Jobs Classifieds CU Extras Customer Service

Minnesota News
- Local News
- Obituaries
- Lifestyle
- Business
- News of Record
- Features
- Minnesota News
- Ag and Extension
- National News
- International News
- SUBMIT News

udis Gluten Free
Gluten free getaways

/ News / Minnesota News /

# Fired Minn. aide's lawsuit cites other affairs

July 12, 2013

Associated Press

Save |

By BRIAN BAKST

Associated Press

ST. PAUL, Minn. (AP) — For the first time, a fired Minnesota Senate operative has made detailed accusations central to his federal wrongful termination lawsuit: a list of other lawmakers and staff members who allegedly carried on affairs over the years without losing their jobs.

The list opens the possibility that those people — some long gone from the Legislature — could ultimately be asked to testify about allegations of secret affairs that date back to the 1980s. Whether it helps Michael Brodkorb prove his case is an open question, experts say, because many of the alleged affairs are old and happened under different circumstances.

Brodkorb was the Senate GOP's communications director when he was fired after his extramarital affair with then-Senate Majority Leader Amy Koch became public in December 2011. Koch resigned from her leadership post immediately and left the Legislature following her term. Now, Brodkorb is seeking more than $500,000 in damages with an unusual gender discrimination claim that argues he was fired for an affair while many female staffers romantically linked to lawmakers were not.

Since Brodkorb filed the lawsuit last July, the litigation has cast a cloud over the Capitol with its suggestion that he would allege infidelities by other members of the Legislature. The list of affairs was included in a mistaken filing last week by Brodkorb's attorneys in a case that is under protective seal. It was put up briefly on a publicly accessible electronic federal courts website, then taken down, but not before The Associated Press downloaded the filing. A hearing in the case was scheduled for Thursday and court-ordered settlement talks could resume this fall.

Senate attorney Dayle Nolan said she will seek sanctions against Brodkorb's side for violating the protective order, but said the details don't change the case.

"To the extent there could possibly be a grain of truth to any of the allegations, which we do not concede, nothing supports the plaintiff's claims and nothing will have any impact on the litigation going forward," Nolan said.

Brodkorb's attorneys didn't comment either before or after a previously scheduled hearing on the case Thursday before U.S. Magistrate Judge Arthur Boylan. Brodkorb's allegations about affairs between other senators and staffers came up only in passing, with Senate attorney Chris Harristhal noting his side's plan to seek sanctions for the document disclosure. The hearing involved disputes between the two sides about the extent to which Brodkorb has disclosed personal information to Senate lawyers, with Boylan taking the matter under advisement.

Top senators and the Senate's attorneys have long maintained that past romances don't matter in defending against Brodkorb's lawsuit because he was an "at-will" employee who could be terminated at

Marshall, MN 76°F Extended Forecast Find Another Location
Data provided by The Weather Channel ®

News, Blogs & Events
I am looking for: SEARCH
In: News, Blogs & Events Web

udis Gluten Free
Gluten free getaways

Employment Discrimination
www.halunenlaw.com
Contact Halunen Law If You Feel You've Been Discriminated Against! AdChoices

BP Committed to the Gulf
www.BP.com
Waters & Restaurants are Open. The Gulf is Back. Learn More on BP.com. AdChoices

Property Auction Sale
www.Auction.com/MN
MN Foreclosures at Auction Now. Banks must sell. See them & bid. AdChoices

any time. The case has already cost taxpayers $225,000 and another $500,000 has been set aside for ongoing defense fees.

That his list became public now probably won't help Brodkorb build pressure for a deal in a case at least a year away from a possible trial, said Columbia University Law Professor Vivian Berger, who specializes in employment cases.

"The guillotine is more effective when the blade is hanging over you, not when the guillotine comes down," Berger said.

The document offers scant evidence to back up his allegations. The affairs would have occurred under different leaders than those who fired Brodkorb. Most of the supposed affairs involved no direct boss-subordinate relationship.

Despite her position as majority leader and his as chief caucus spokesman, Koch said Thursday she had no such relationship with Brodkorb, noting he reported to the GOP caucus chief of staff and then to the secretary of the Senate, not her. But the pair's working relationship is an issue in the case, with Senate leaders having argued in their defense that caucus communications directors have typically served as members of the majority leader's team and moved on when the lawmaker does.

Brodkorb names 10 legislators — all but one now out of office — whom he claims had an "intimate sexual relationship" with legislative staff members who remained employed afterward. It names six of the employees.

Brodkorb names 10 legislators — all but one now out of office — whom he claims had an "intimate sexual relationship" with legislative staff members who remained employed afterward. It names six of the employees.

The AP is not naming the people identified on Brodkorb's list because they have not yet been called to testify or been accused of anything illegal. Many didn't know they were on it.

Brodkorb names both Republican and Democratic lawmakers of varying stature. The brief narratives make repeated references to the relationships being "widely known" in the Legislature. In one case, it suggests a male senator also had relationships with female members of the Legislature.

The AP attempted to contact those named and reviewed court records for those involved in divorces or other proceedings. Four flatly denied allegations read to them, with some expressing anger at being pulled into the case. Six declined comment or indicated they were consulting with an attorney. Five didn't respond.

One person confirmed the filing's assertion about her, which was backed up by a court record showing the other party to the affair admitting paternity of a child born during his time in office. Two sets of allegations include a lawmaker-staffer pairing who are now married.

One staff member named said she had been contacted by a private investigator while another told AP that a law firm asked a while back to speak with her about the affair. She said she declined.

In one case, the lawmaker and staff member independently denied the existence of an affair and said close working relationships that are routine at the Capitol can be easily misconstrued. The former senator said he regularly gave the staff member rides to and from the Capitol to spare her parking fees and to provide safe transportation after late-night shifts.

Employment law experts caution that allegations involving differing circumstances are viewed skeptically — if they are admitted as evidence at all at trial. Attorneys commonly spar over what information produced in the discovery phase is allowed at trial, and whether Brodkorb's examples involve similarly situated affairs will be up for debate as the case progresses.

There is little evidence to prove the affairs in the filing, though Brodkorb's attorneys could provide more details as the case goes on. "Discovery is continuing," the filing said.

Stephen Befort, an authority in employment law at the University of Minnesota Law School, said Brodkorb could find a discrimination claim more difficult to make if the other examples he cites vary

widely from the lead-up to his own firing or happened under previous Senate regimes.

"I think it weakens the claims if it's not identical circumstances," Befort said. He added that the dated nature of some of Brodkorb's examples could also undermine his case. "The closer you are both in time and circumstances, the stronger the discrimination claim."

Beth Brascugli De Lima, president of California-based human resources firm HRM Consulting Inc., pointed out that employee codes of conduct could have evolved over time. She also said that the close connection between a supervisor and employee matters in workplace relationships because closer proximity can expose an organization to sexual harassment actions.

"The issue of direct report is very important when you're talking about relationships in any organization," she said.

Yet employment lawsuits like Brodkorb's are rare enough that older cases or those that aren't identical could be valuable, said David Larson, an employment law scholar at Hamline Law School in St. Paul.

"As long as the facts are roughly analogous, they can be very helpful to the plaintiff," he said. However, Larson also stressed that those alleging employment discrimination have a high legal bar and "it remains extremely difficult to prove."

Copyright 2013 The Associated Press.

Save |

Subscribe to Marshall Independent

Sponsored From Around the Web


How Cruise Ships Fill Their Unsold Cabins


How to Exercise Your Brain to Make It Strong


How Penny Stocks Create Millionaires Every Day


#1 Golf Distance Killer: Fix it Right Now!


What Happens When You Take a Testosterone Supplement


How to Speed Up Your PC - Tricks Manufacturers Hate


Why Snoring Can Kill - and How to Stop It


How New iPads are Selling for Under $40




Marshall Independent
508 W. Main St. , Marshall, MN 56258 | 507-537-1551
© 2013. All rights reserved.| Terms of Service and Privacy Policy



# Fired Minn. aide's lawsuit cites other affairs

Thursday July 11, 2013 4:00 PM
By BRIAN BAKST and PATRICK CONDON
The Associated Press

ST. PAUL, Minn. (AP) — For the first time, a fired Minnesota Senate operative has made detailed accusations central to his federal wrongful termination lawsuit: a list of other lawmakers and staff members who allegedly carried on affairs over the years without losing their jobs.

The list opens the possibility that those people — some long gone from the Legislature — could ultimately be asked to testify about allegations of secret affairs that date back to the 1980s. Whether it helps Michael Brodkorb prove his case is an open question, experts say, because many of the alleged affairs are old and happened under different circumstances.

Brodkorb was the Senate GOP's communications director when he was fired after his extramarital affair with then-Senate Majority Leader Amy Koch became public in December 2011. Koch resigned from her leadership post immediately and left the Legislature following her term. Now, Brodkorb is seeking more than $500,000 in damages with an unusual gender discrimination claim that argues he was fired for an affair while many female staffers romantically linked to lawmakers were not.

Since Brodkorb filed the lawsuit last July, the litigation has cast a cloud over the Capitol with its suggestion that he would allege infidelities by other members of the Legislature. The list of affairs was included in a mistaken filing last week by Brodkorb's attorneys in a case that is under protective seal. It was put up briefly on a publicly accessible electronic federal courts website, then taken down, but not before The Associated Press downloaded the filing. A hearing in the case was scheduled for Thursday and court-ordered settlement talks could resume this fall.

Senate attorney Dayle Nolan said she will seek sanctions against Brodkorb's side for violating the protective order, but said the details don't change the case. Brodkorb's attorneys did not comment ahead of the hearing.

"To the extent there could possibly be a grain of truth to any of the allegations, which we do not concede, nothing supports the plaintiff's claims and nothing will have any impact on the litigation going forward," Nolan said Thursday.

Top senators and the Senate's attorneys have long maintained that past romances don't matter in defending against Brodkorb's lawsuit because he was an "at-will" employee who could be terminated at any time. The case has already cost taxpayers $225,000 and another $500,000 has been set aside for ongoing defense fees.

That his list became public now probably won't help Brodkorb build pressure for a deal in a case at least a year away from a possible trial, said Columbia University Law Professor Vivian Berger, who specializes in employment cases.

"The guillotine is more effective when the blade is hanging over you, not when the guillotine comes down," Berger said.

occurred under different leaders than those who fired Brodkorb. Most of the supposed affairs involved no direct boss-subordinate relationship.

Despite her position as majority leader and his as chief caucus spokesman, Koch said Thursday she had no such relationship with Brodkorb, noting he reported to the GOP caucus chief of staff, not her.

Brodkorb names 10 legislators — all but one now out of office — whom he claims had an "intimate sexual relationship" with legislative staff members who remained employed afterward. It names six of the employees.

Brodkorb names 10 legislators — all but one now out of office — whom he claims had an "intimate sexual relationship" with legislative staff members who remained employed afterward. It names six of the employees.

The AP is not naming the people identified on Brodkorb's list because they have not yet been called to testify or been accused of anything illegal. Many didn't know they were on it.

Brodkorb names both Republican and Democratic lawmakers of varying stature. The brief narratives make repeated references to the relationships being "widely known" in the Legislature. In one case, it suggests a male senator also had relationships with female members of the Legislature.

The AP attempted to contact those named and reviewed court records for those involved in divorces or other proceedings. Four flatly denied allegations read to them, with some expressing anger at being pulled into the case. Six declined comment or indicated they were consulting with an attorney. Five didn't respond.

One person confirmed the filing's assertion about her, which was backed up by a court record showing the other party to the affair admitting paternity of a child born during his time in office. Two sets of allegations include a lawmaker-staffer pairing who are now married.

One staff member named said she had been contacted by a private investigator while another told AP that a law firm asked a while back to speak with her about the affair. She said she declined.

In one case, the lawmaker and staff member independently denied the existence of an affair and said close working relationships that are routine at the Capitol can be easily misconstrued. The former senator said he regularly gave the staff member rides to and from the Capitol to spare her parking fees and to provide safe transportation after late-night shifts.

Employment law experts caution that allegations involving differing circumstances are viewed skeptically — if they are admitted as evidence at all at trial. Attorneys commonly spar over what information produced in the discovery phase is allowed at trial, and whether Brodkorb's examples involve similarly situated affairs will be up for debate as the case progresses.

There is little evidence to prove the affairs in the filing, though Brodkorb's attorneys could provide more details as the case goes on. "Discovery is continuing," the filing said.

Stephen Befort, an authority in employment law at the University of Minnesota Law School, said Brodkorb could find a discrimination claim more difficult to make if the other examples he cites vary widely from the lead-up to his own firing or happened

Wipe Out Credit Card Debt
www getoutofdebtaid
Reducing Credit Card Debt is Easier Than You Think. Learn More Now

AdChoices

Rexall Glucosamine
www GlucosamineS
If You Took Rexall Glucosamine You May Qualify For Settlement. See Now

AdChoices

Square Credit Card Reader
www Squareup com
Accept Credit Cards On Your iPhone, iPad or Android

AdChoices

under previous Senate regimes.

"I think it weakens the claims if it's not identical circumstances," Befort said. He added that the dated nature of some of Brodkorb's examples could also undermine his case. "The closer you are both in time and circumstances, the stronger the discrimination claim."

Beth Brascugli De Lima, president of California-based human resources firm HRM Consulting Inc., pointed out that employee codes of conduct could have evolved over time. She also said that the close connection between a supervisor and employee matters in workplace relationships because closer proximity can expose an organization to sexual harassment actions.

"The issue of direct report is very important when you're talking about relationships in any organization," she said.

Yet employment lawsuits like Brodkorb's are rare enough that older cases or those that aren't identical could be valuable, said David Larson, an employment law scholar at Hamline Law School in St. Paul.

"As long as the facts are roughly analogous, they can be very helpful to the plaintiff," he said. However, Larson also stressed that those alleging employment discrimination have a high legal bar and "it remains extremely difficult to prove."

©2013 by The Associated Press  All rights reserved  This material may not be published, broadcast, rewritten or redistributed

## Brodkorb's lawsuit over firing names other staffers' affairs

*By Brian Bakst and Patrick Condon Associated Press TwinCities.com-Pioneer Press*
*Posted:*                                                      TwinCities.com

For the first time, a fired Minnesota Senate operative has made detailed accusations central to his federal wrongful-termination lawsuit: a list of other lawmakers and staff members who allegedly carried on affairs over the years without losing their jobs.

The list opens the possibility that those people -- some long gone from the Legislature -- could be asked to testify about allegations of secret affairs that date back to the 1980s.

But whether it helps Michael Brodkorb prove his case is an open question, experts say, because many of the alleged affairs are old and happened under different circumstances.

Brodkorb was the Senate GOP's communications director when he was fired after his extramarital affair with then-Senate Majority Leader Amy Koch became public in December 2011. Koch resigned from her leadership post immediately and left the Legislature after her term.

Now, Brodkorb is seeking more than $500,000 in damages with an unusual gender-discrimination claim that argues he was fired for an affair while many female staffers romantically linked to lawmakers were not.

Since Brodkorb sued in July 2012, the litigation has cast a cloud over the Capitol with its suggestion that he would allege infidelities by other lawmakers. The list of affairs was included in a mistaken filing last week by Brodkorb's lawyers in a case that is under protective seal.

It was put up briefly on a publicly accessible electronic federal courts website and then taken down, but not before the Associated Press downloaded the filing.

Court-ordered settlement talks could resume this fall.

The Associated Press is not naming the people on Brodkorb's list because they have not yet been called to testify or been accused of anything illegal.

Senate attorney Dayle Nolan said she would seek sanctions against Brodkorb's side for violating the protective order, but she said the details don't change the case.

Brodkorb's attorneys didn't comment either before or after a previously scheduled hearing on the case Thursday before U.S. Magistrate Judge Arthur Boylan.

Brodkorb's allegations about affairs between other senators and staffers came up only in passing, with Senate attorney Chris Harristhal noting his side's plan to seek sanctions for the document disclosure.

The hearing involved disputes between the two sides about the extent to which Brodkorb has disclosed personal information to Senate lawyers, with Boylan taking the matter under advisement.

Top senators and the Senate's attorneys have maintained that past romances don't matter in defending against Brodkorb's lawsuit because he was an "at-will" employee who could be terminated at any time.

The case has cost taxpayers $225,000, and an additional $500,000 has been set aside for ongoing defense fees.

That his list became public probably won't help Brodkorb build pressure for a deal in a case at least a year away from a possible trial, said Columbia University law professor Vivian Berger, who specializes in employment cases.

"The guillotine is more effective when the blade is hanging over you, not when the guillotine comes down," Berger said.

The document offers scant evidence to back up his allegations. The affairs would have occurred under different leaders than those who fired Brodkorb. Most of the supposed affairs involved no direct boss-subordinate relationship.

Despite her position as majority leader and his as chief caucus spokesman, Koch said Thursday that she had no such relationship with Brodkorb, noting he reported to the GOP caucus chief of staff and then to the secretary of the Senate, not her.

But the pair's working relationship is an issue in the case, with Senate leaders having argued in their defense that caucus communications directors have typically served as members of the majority leader's team and moved on when the lawmaker does.

* Brodkorb names 10 legislators -- all but one now out of office -- whom he claims had an "intimate sexual relationship" with staff members who remained employed afterward. It names six of the employees.

Brodkorb names both Republican and Democratic lawmakers of varying stature. Brief narratives say the relationships being "widely known" in the Legislature.

In one case, it suggests a male senator also had relationships with female members of the Legislature.

The AP tried to contact those named and reviewed court records for those involved in divorces or other proceedings. Four denied the allegations. Six declined to comment or indicated they were consulting with attorneys. Five didn't respond.

One person confirmed the filing's assertion about her, which was backed up by a court record showing the other party to the affair admitting paternity of a child born during his

time in office. Two sets of allegations include a lawmaker-staffer pairing who are now married.

In one case, the lawmaker and staff member denied the existence of an affair and said close working relationships that are routine at the Capitol can be easily misconstrued.

Employment law experts caution that allegations involving differing circumstances are viewed skeptically -- if they are admitted as evidence at all at trial. Attorneys commonly spar over what information produced in the discovery phase is allowed at trial, and whether Brodkorb's examples involve similarly situated affairs will be up for debate as the case progresses.

There is little evidence to prove the affairs in the filing, though Brodkorb's attorneys could provide more details as the case goes on. "Discovery is continuing," the filing said.

Stephen Befort, an authority in employment law at the University of Minnesota Law School, said Brodkorb could find a discrimination claim more difficult to make if the other examples he cites vary widely from the lead-up to his own firing or happened under previous Senate regimes.

"I think it weakens the claims if it's not identical circumstances," Befort said.

He said the dated nature of some of Brodkorb's examples could also undermine his case.

"The closer you are both in time and circumstances, the stronger the discrimination claim," he said

Beth Brascugli De Lima, president of California-based human resources firm HRM Consulting Inc., pointed out that employee codes of conduct could have evolved over time.

She also said the close connection between a supervisor and employee matters in workplace relationships because closer proximity can expose an organization to sexual harassment actions.

Yet employment lawsuits like Brodkorb's are rare enough that older cases or those that aren't identical could be valuable, said David Larson, an employment law scholar at Hamline Law School in St. Paul.

"As long as the facts are roughly analogous, they can be very helpful to the plaintiff," he said.

However, Larson stressed that those alleging employment discrimination have a high legal bar and "it remains extremely difficult to prove."

Create Account | WorldNow | 84° Clear | Go Further | Web | Search

# BRODKORB'S LIST: Filing mistakenly reveals other lawmaker affairs online

*Posted: Jul 11, 2013 8:50 PM CDT*
*Updated: Jul 11, 2013 9:55 PM CDT*

**by Tom Lyden - bio . email**

ST. PAUL, Minn. (KMSP) - From the moment he fired, Michael Brodkorb warned he was willing to name other state lawmakers who had affairs and kept their jobs as he sought to prove gender discrimination in federal court. Now, he has.

The names of 10 state lawmakers most Minnesotans would surely recognized were revealed by mistake in a court filing that was uploaded to a public website but later sealed.

For Capitol insiders, the names won't come as a huge surprise -- and the biggest question in the air seems to be whether or not Brodkorb accidentally showed his hand too soon.

Each time the lawyers defending both Brodkorb and the Minnesota Senate head back to the court room, taxpayers are picking up the tab. So far, the bill has topped $225,000 and it's growing fast.

Brodkorb's key evidence is a list of lawmakers -- both Democrats and Republicans -- who he claims were "widely known" to be engaging in affairs with female staffers. In the mistaken filing, Brodkorb names six of the women -- one who allegedly had affairs with three lawmakers -- and claims all kept their jobs.

**While FOX 9 News has verified all of the names contained in the filing, they will not be released since none have been subpoenaed or accused of illegal conduct.**

Brodkorb's personal story played out very differently. Just 48 hours after his affair with former Senate Majority Leader Amy Koch went public, he was fired. Republicans claim he was an at-will employee who could be terminated for any reason, but Brodkorb sees it differently.

"It was a palace coup," he told FOX 9 News in a one-on-one interview last October. "It was an attempt to take over the Senate leadership."

Although Brodkorb acknowledges he was an at-will employee, he claims he was a victim of gender discrimination.

"You can't fire an at-will employee for reasons that are illegal," he contends.

Yet, as salacious as a list of lawmaker affairs may be, employment attorney Stephen Cooper says it may be a problem that only one of the names on the list is still in office. Some of the names date back to the 80s, and different leadership could pose a problem for someone trying to show a pattern.

"You have to have apples to apples. It's not good enough to have apples to oranges," Cooper explained. "Does that mean this information is meaningless? No, it does not, but ... if 10 names had all been during the same time period and the same people had been involved in the decision-making, then it would be very persuasive evidence."

Cooper, a former human rights commissioner, says there seems to be little dispute over the facts of the case. Rather, motive is the fulcrum on which the decision rests. Was it just raw politics or discrimination?

No current settlement talks are scheduled.

The Associated Press was the first to get their hands on the list. They reported that in at least two of the cases Brodkorb referenced, the lawmaker and staffer ended up getting married. In another case, a child was born out of wedlock.

It remains unclear whether any of the lawmakers may be asked to testify about their alleged affairs if the case goes to trial.

**RECOMMENDED VIDEOS**

**Prince's jet parked at MSP airport**

**5 Signs You'll Get Cancer**

**Men: Diet Soda Makes You Fat!**

# EXHIBIT Q

# Brodkorb: List of names isn't my only evidence of Capitol affairs

*By Brian Bakst Associated Press TwinCities.com-Pioneer Press*
*Posted:*

TwinCities.com

The fired Minnesota Senate aide alleging multiple sexual affairs at the Capitol said Friday that a sensitive list of names is not the only evidence he has produced about past relationships between legislators and staff.

Ex-GOP aide Michael Brodkorb refuted the notion that he has provided limited proof that the affairs happened with knowledge of leadership and that those involved weren't punished like he was. It's a key link in his federal discrimination lawsuit claiming he was treated differently than other employees engaged in affairs with lawmakers. He was fired in 2011 in connection with an extramarital affair involving then-Senate Majority Leader Amy Koch.

His lawsuit, seeking at least $500,000 in damages, is in the discovery phase ahead of a potential trial next summer.

The Associated Press reported Thursday on a list of 10 alleged affairs that Brodkorb's lawyers said they accidentally filed publicly on a federal courts website. The list, which contained names and some circumstances, came in response to a list of questions from Senate attorneys asking him to produce facts about his allegations. The document has since been removed from public view.

The AP hasn't revealed the identities of those accused but has attempted to contact all of them, with many refusing comment or issuing denials. One confirmed the assertion.

"This is not the only piece of evidence that has been submitted on other Capitol relationships," Brodkorb told the AP on Friday. He added, "That document that was up there momentarily -- to say it scratched the surface is an insult to the surface."

Brodkorb refused to elaborate on the other evidence of affairs, citing a protective seal in the case. He said he has turned over significant amounts of paperwork, audiotapes and videotapes in relation to his case.

Senate lawyer Dayle Nolan said Brodkorb hasn't provided more details about the affairs than were listed in the recent filing.

Brodkorb said he wants the names of people accused of affairs to remain private during the case. A federal judge is considering whether to sanction Brodkorb's side for not properly securing the document containing the allegations of other affairs.

EXHIBIT
tabbies
Q

17 comments ▾ **Add a comment**

**Bruce Kelley** · Puerto Vallarta, Jalisco
Anyone with any self respect would go quietly into the night.
Reply · 7 · Like · July 12 at 7:20pm

**Ray Marshall** · Top Commenter · Minnesota
Isn't this a case of extortion? Maybe criminal charges should be filed?
Reply · 4 · Like · Saturday at 5:22am

**Douglas McKee** · Top Commenter
Man up. Take responsibility. Move on.
Reply · 4 · Like · Saturday at 3:32am

**Greg Magnuson** · Top Commenter · Las Vegas, Nevada
What a creep.
Reply · 3 · Like · July 12 at 7:16pm

**Drew Jansen** · Top Commenter · Minneapolis, Minnesota
What a class act. Oh, MN GOP...will you EVER fail to amuse with your innate hypocrisy?
Reply · 2 · Like · July 12 at 10:29pm

**Adam Heskin** · Top Commenter · University of Minnesota
Which hypocrisy would that be? Democrats getting a pass with their affairs, but Republicans getting fired for theirs? You should look up "hypocrisy" in the dictionary, because you are pointing at the wrong side.
Reply · 2 · Like · Saturday at 6:47am

**Paul Weber** · Top Commenter
Go away loser!
Reply · 2 · Like · Saturday at 7:17am

**Mark Gisleson** · Top Commenter · Works at Freelance Writer/Editor
This is today's Republican party. Nothing conservative about it, just sex, racism, private parties and huge tax breaks for the already rich and powerful with crumbs for everyone else.

This is not the party of Barry Goldwater. This is the party of Strom Thurmond, Jesse Helms, David Vitter and Larry Craig.
Reply · 1 · Like · Saturday at 8:00am

**Joe Merlot** · Top Commenter · University of Minnesota
Mark, Mark, Mart. Don't turn this into something political. It's the state of our culture and that knows no party lines. For every one Republican Scandal there is another from Democrats. And neither side is more hypocritical than the other as they both claim to be high and might; one side religiously and the other morally.
Reply · Like · Saturday at 2:40pm

**Mark Gisleson** · Top Commenter · Works at Freelance Writer/Editor
Unlike religion, morality does exist. I do not think this is any kind of tit for tat. This is all predictable. Back in the day when the Democrats were the sleazemasters, it was thanks to the Southern Democratic wing of the party. Now those folks are Republican and the sleaze followed as surely as night follows day.
Reply · Like · 22 hours ago



**Don Seaquist** · President at UFCW Local 1189
A list of names is an accusation, not evidence of anything. Without proof, it is a witch hunt.
Reply · 1 · Like · Saturday at 7:05am

**Deb Rankin-Moore** · Retired!!! at None
Brodkorb has been and always will be a tool.
Reply · Like · Saturday at 1:44pm

**Don Seaquist** · President at UFCW Local 1189
Shades of Joe McCarthy. I hope we are smarter than in the '50's
Reply · Like · Saturday at 3:53pm

**Ken Kjer** · ☆ Top Commenter · UW-River Falls University Center
The public has a right to know what type of tomfoolery the legislators are spending our tax's on. All of this needs to be made public. I defy any of you to try and find out if there is a procedure for a taxpayer to file a complaint against a legislator, get a copy of the policy and procedure manual for legislators, or for that matter even get a job description. In the past it has been reported that there is drinking and partying going on while the legislators are convened. Who knows what else? I think there needs to be a full investigation into what goes on behind close doors at the capital and if any taxpayers money is being used, sanctions should brought. I am not a fan of Brodkorb, as a matter of fact I sent an email to Hann almost 11/2 years before Brodkorb was fired telling Hann to do just that. But, the dirty laundry needs to be aired and somebody needs to do it. Maybe the PP should be assigned the task.
Reply · Like · Saturday at 7:50am

**Gary Stephanson** · ☆ Top Commenter · Owner at GLS Appraising
I thought in an "at will" state you could fire anyone for any reason or even no reason with no exception of the usual protacted groups? which I don't think he is one of.
Reply · Like · Saturday at 6:38am

**Lee Bowskee** · ☆ Top Commenter · Minneapolis, Minnesota
The poster boy for the Family Values party makes another appearance. Too funny. I hope he's still in the headlines in the fall of 2014.
Reply · Like · Saturday at 7:06am

**Ron Fresquez** · ☆ Top Commenter · Edina, Minnesota
The party of Family Values. Don't do as I do, do as I say.
Reply · Like · 23 hours ago

# Brodkorb: List of names isn't my only evidence of Capitol affairs

*By Brian Bakst Associated Press TwinCities.com-Pioneer Press*
*Posted:*

TwinCities.com

The fired Minnesota Senate aide alleging multiple sexual affairs at the Capitol said Friday that a sensitive list of names is not the only evidence he has produced about past relationships between legislators and staff.

Ex-GOP aide Michael Brodkorb refuted the notion that he has provided limited proof that the affairs happened with knowledge of leadership and that those involved weren't punished like he was. It's a key link in his federal discrimination lawsuit claiming he was treated differently than other employees engaged in affairs with lawmakers. He was fired in 2011 in connection with an extramarital affair involving then-Senate Majority Leader Amy Koch.

His lawsuit, seeking at least $500,000 in damages, is in the discovery phase ahead of a potential trial next summer.

The Associated Press reported Thursday on a list of 10 alleged affairs that Brodkorb's lawyers said they accidentally filed publicly on a federal courts website. The list, which contained names and some circumstances, came in response to a list of questions from Senate attorneys asking him to produce facts about his allegations. The document has since been removed from public view.

The AP hasn't revealed the identities of those accused but has attempted to contact all of them, with many refusing comment or issuing denials. One confirmed the assertion.

"This is not the only piece of evidence that has been submitted on other Capitol relationships," Brodkorb told the AP on Friday. He added, "That document that was up there momentarily -- to say it scratched the surface is an insult to the surface."

Brodkorb refused to elaborate on the other evidence of affairs, citing a protective seal in the case. He said he has turned over significant amounts of paperwork, audiotapes and videotapes in relation to his case.

Senate lawyer Dayle Nolan said Brodkorb hasn't provided more details about the affairs than were listed in the recent filing.

Brodkorb said he wants the names of people accused of affairs to remain private during the case. A federal judge is considering whether to sanction Brodkorb's side for not properly securing the document containing the allegations of other affairs.

17 comments ▾ Add a comment

**Bruce Kelley** · Puerto Vallarta, Jalisco
Anyone with any self respect would go quietly into the night.
Reply · 7 · Like · July 12 at 7:20pm

**Ray Marshall** · ☆ Top Commenter · Minnesota
Isn't this a case of extortion? Maybe criminal charges should be filed?
Reply · 4 · Like · Saturday at 5:22am

**Douglas McKee** · ☆ Top Commenter
Man up. Take responsibility. Move on.
Reply · 4 · Like · Saturday at 3:32am

**Greg Magnuson** · ☆ Top Commenter · Las Vegas, Nevada
What a creep.
Reply · 3 · Like · July 12 at 7:16pm

**Drew Jansen** · ☆ Top Commenter · Minneapolis, Minnesota
What a class act. Oh, MN GOP...will you EVER fail to amuse with your innate hypocrisy?
Reply · 2 · Like · July 12 at 10:29pm

**Adam Heskin** · ☆ Top Commenter · University of Minnesota
Which hypocrisy would that be? Democrats getting a pass with their affairs, but Republicans getting fired for theirs? You should look up "hypocrisy" in the dictionary, because you are pointing at the wrong side.
Reply · 2 · Like · Saturday at 6:47am

**Paul Weber** · ☆ Top Commenter
Go away loser!
Reply · 2 · Like · Saturday at 7:17am

**Mark Gisleson** · ☆ Top Commenter · Works at Freelance Writer/Editor
This is today's Republican party. Nothing conservative about it, just sex, racism, private parties and huge tax breaks for the already rich and powerful with crumbs for everyone else.

This is not the party of Barry Goldwater. This is the party of Strom Thurmond, Jesse Helms, David Vitter and Larry Craig.
Reply · 1 · Like · Saturday at 8:00am

**Joe Merlot** · ☆ Top Commenter · University of Minnesota
Mark, Mark, Mart. Don't turn this into something political. It's the state of our culture and that knows no party lines. For every one Republican Scandal there is another from Democrats. And neither side is more hypocritical than the other as they both claim to be high and mighty; one side religiously and the other morally.
Reply · Like · Saturday at 2:40pm

**Mark Gisleson** · ☆ Top Commenter · Works at Freelance Writer/Editor
Unlike religion, morality does exist. I do not think this is any kind of tit for tat. This is all predictable. Back in the day when the Democrats were the sleazemasters, it was thanks to the Southern Democratic wing of the party. Now those folks are Republican and the sleaze followed as surely as night follows day.
Reply · Like · 22 hours ago

 **Don Seaquist** · President at UFCW Local 1189

A list of names is an accusation, not evidence of anything. Without proof, it is a witch hunt.

Reply · 1 · Like · Saturday at 7:05am

**Deb Rankin-Moore** · Retired!!! at None

Brodkorb has been and always will be a tool.

Reply · Like · Saturday at 1:44pm

**Don Seaquist** · President at UFCW Local 1189

Shades of Joe McCarthy. I hope we are smarter than in the '50's

Reply · Like · Saturday at 3:53pm

**Ken Kjer** · ☆ Top Commenter · UW-River Falls University Center

The public has a right to know what type of tomfoolery the legislators are spending our tax's on. All of this needs to be made public. I defy any of you to try and find out if there is a procedure for a taxpayer to file a complaint against a legislator, get a copy of the policy and procedure manual for legislators, or for that matter even get a job description. In the past it has been reported that there is drinking and partying going on while the legislators are convened. Who knows what else? I think there needs to be a full investigation into what goes on behind close doors at the capital and if any taxpayers money is being used, sanctions should brought. I am not a fan of Brodkorb, as a matter of fact I sent an email to Hann almost 11/2 years before Brodkorb was fired telling Hann to do just that. But, the dirty laundry needs to be aired and somebody needs to do it. Maybe the PP should be assigned the task.

Reply · Like · Saturday at 7:50am

**Gary Stephanson** · ☆ Top Commenter · Owner at GLS Appraising

I thought in an "at will" state you could fire anyone for any reason or even no reason with no exception of the usual protacted groups? which I don't think he is one of.

Reply · Like · Saturday at 6:38am

**Lee Bowskee** · ☆ Top Commenter · Minneapolis, Minnesota

The poster boy for the Family Values party makes another appearance. Too funny. I hope he's still in the headlines in the fall of 2014.

Reply · Like · Saturday at 7:06am

**Ron Fresquez** · ☆ Top Commenter · Edina, Minnesota

The party of Family Values. Don't do as I do, do as I say.

Reply · Like · 23 hours ago

# EXHIBIT R

WALSH & GAERTNER, P.A.

**Gregory J. Walsh**
Attorney at Law
Direct: 651-379-0973
Email: greg@walsh-gaertner.com

**Walsh & Gaertner Building**
24 East Fourth Street
St. Paul, MN 55101
T 651-228-9968
F 651-224-2672

May 9, 2013

Mr. Christopher J. Harristhal
Larkin Hoffman
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, MN 55431

Re: Michael B. Brodkorb vs. Minnesota Senate, et al.
Our File No.: 12096B

Dear Mr. Harristhal:

Enclosed herein please find Plaintiff's fully executed Answers to Defendant's First Set of Interrogatories.

Very truly yours,

G J Walsh

Gregory J. Walsh

GJW/tas

cc: Michael B. Brodkorb
Jeffrey D. Schiek, Esq.

EXHIBIT
tabbies
R

**United States District Court for the**

**District of Minnesota**

| | | |
|---|---|---|
| Michael Brodkorb, | ) | Case type: Employment |
| | ) | |
| Plaintiff, | ) | Case No.: 12-1958 SRN/AJB |
| vs. | ) | |
| | ) | **PLAINTIFF'S ANSWERS TO** |
| | ) | **DEFENDANT'S FIRST SET OF** |
| The Minnesota Senate, | ) | **INTERROGATORIES** |
| | ) | |
| Defendant. | ) | |

TO: DEFENDANT, BY AND THROUGH ITS ATTORNEYS, CHRISTOPHER HARRISTHAL AND DAYLE NOLAN, LARKIN HOFFMAN DALY & LINDGREN, LTD, 7900 XERXES AVENUE SOUTH, MINNEAPOLIS, MINNESOTA 55431.

## INTRODUCTION

Plaintiff, Michael Brodkorb, pursuant to the Rules of Civil Procedure, answers Defendant's Interrogatories as follows:

## GENERAL OBJECTIONS AND RESERVATIONS

1. Plaintiff object to Defendant's Interrogatories to the extent that those Interrogatories seek to impose discovery obligations upon Plaintiff which are contrary to, or exceed those set forth in the Rules of Civil Procedure.

2. All information produced in response to Defendant's Interrogatories are produced for use in this action only and for no other purposes. Plaintiff reserves the right to apply to the Court for an appropriate protective order pursuant to the Rules of Civil Procedure.

3. Plaintiff has responded to each of Defendant's Interrogatories based on his own understanding of those Interrogatories to the best of their knowledge and recollection at

the date these responses were served.  Plaintiff expressly reserves the right to amend, supplement, or correct his answers as he deems necessary.

4.      Plaintiff limits his responses to these Interrogatories to information regarding Defendant.

5.      Plaintiff has set forth such objections as are apparent at this time based on his understanding of Defendant's Interrogatories.  Plaintiff expressly reserves the right to assert additional objections, including those based on excessive burden, which may become apparent in the course of producing information to Defendant.

6.      Plaintiff objects to producing any information which is protected as attorney work-product, or by the attorney-client privilege.

7.      Plaintiff objects to and declines to be bound by the Definitions and Instructions section of Defendant's Interrogatories to the extent said Definitions and Instructions attempt to impose burdens greater than those required by the Rules and applicable case law.

8.      The foregoing general objections are incorporated into each of Plaintiff's responses to each of Defendant's Interrogatories, whether or not express reference is made to the general objections and reservations in response to any particular Interrogatory and/or Production.

## INTERROGATORIES

1.      Identify every state legislative staff member who you allege was similarly situated to your with respect to your relationship with Amy Koch, as alleged in paragraphs 20, 21, 38, 39, 41, 42, 56, 57, 59, and 60 of the Amended Complaint, and for each such staff person provide:

a.      The staff person's name and title at the time of any intimate relationship with an elected member of the legislature and the date(s) of the alleged relationship.

b.      The name and title of the elected member of the legislature who you believe or allege engaged in an intimate relationship with the staff member.

c.      All facts, if any, upon which you base a belief that the intimate relationship between the staff member and elected member of the legislature was known to the leadership of the

house in which the elected member of the legislature served at the time of the relationship.

d. The source(s) of your information about the relationship.

**ANSWER: Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory as improper to the extent that it seeks information already in the Defendant's possession, custody, or control. Subject to and without waiving any objections Plaintiff will produce the information relative to this Interrogatory to the Court under seal pursuant to the Court's Order issued April 25, 2013, after the Rule 16 Conference.**

2. State the current nature of your personal relationship with Amy Koch, specifically indicating whether it is "intimate" as that expression is used in paragraph 7, 9, 12, 14, 17 – 19, 34, 35, 38, 52, and 53 of the Amended Complaint and indicate when it became intimate. If the relationship has ceased to be intimate in nature, state when that occurred.

**ANSWER: Plaintiff objects to this Interrogatory because it is not reasonably calculated to lead to admissible evidence, and is intended to simply harass, embarrass, annoy, and impose undue expense upon Plaintiff. Subject to and without waiving any objections Plaintiff states that Plaintiff and Senator Koch were involved in an intimate relationship between September 2011 and December 16, 2011.**

3. State the facts which you believe the following people would have which are relevant to this lawsuit: Doug Dahl, Bryant Wallgren, David Billips, Tim Conley, Claire Robling, and Chris Gerlach.

**ANSWER: Plaintiff objects to this interrogatory because it seeks information protected by the attorney-client privilege and/or the work-product doctrine. Plaintiff also objects to this interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory as improper to the extent that it seeks information already in the Defendant's possession, custody, or control. Subject to and without waiving any objections Plaintiff states:**

**Plaintiff is unaware of the exact information known by Doug Dahl, Bryant Wallgren, David Billips or Tim Conley. However, Plaintiff's Counsel did receive an anonymous letter stating these individuals have knowledge related to the subject matter of this case.**

**Upon information and belief Clare Robling and Chris Gerlach have information related to Plaintiffs termination from the Minnesota Senate; details of the meeting held at the Minneapolis Club where Sen. Koch was confronted by various members of the Minnesota Senate about the relationship with Plaintiff; and names of legislative staffers who have had relationships with legislators prior to and subsequent to Plaintiffs termination.**

**Gerlach may also possess information relating to the leaking of Plaintiffs termination to members of the media.**

**Discovery is continuing.**

4. Describe all efforts that Plaintiff has made to mitigate his alleged economic and emotional damages claimed in this case, including, but not limited to, the identify of:

a. All potential employers to whom Plaintiff has submitted an application, resume or request for employment since January 2010 and the outcome of that application.

b. For each of those employers and prospective employers, please execute an authorization for the release of information attached to Defendant's Requests for Production of Documents to Plaintiff.

c. The identity of all doctors, psychiatrists, psychologists, counselors, health care institutions, clinics, hospitals, therapists, or the like that Plaintiff has seen for the purpose of addressing any harm caused by Defendant.

ANSWER: **Plaintiff objects to this interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory because it seeks information protected by the attorney-client privilege and/or the work-product doctrine. Plaintiff also objects to this interrogatory because it is premature and vague. Plaintiff understands the request is continual, and will furnish the information requested, upon completion in accordance with the Court's scheduling order.**

5. Describe all emotional distress you allege to have suffered as a result of the actions of Defendant, including all symptoms and diagnoses related to such distress and provide the dates and diagnosis and dates when the symptoms were present.

ANSWER: **Plaintiff objects to this Interrogatory as premature and vague. Plaintiff understands the request is continual, and will furnish the information requested, upon completion in accordance with the Court's scheduling order. Subject to and without waiving objections Plaintiff states:**

**As to damages, Plaintiff was injured in mind so that he has in the past, and will in the future, suffer great mental pain and anguish subject to but not limited to extreme and severe anguish, humiliation, emotional distress, nervousness, tension, sleeplessness, and anxiety, the extent of which is not fully known at this time, and the amount of damages caused by Defendant's conduct is not yet fully ascertained, the precise amount to be proven at the time of trial. Further, as a result, Plaintiff has suffered and will continue to suffer severe and permanent emotional distress, physical manifestations of emotional distress, humiliation, loss of self-esteem, and other psychological injuries. Plaintiff's career has also been irreparably harmed as a result of the actions of the Defendant. Plaintiff has also suffered wage loss, loss of health benefits, pension, past pain and suffering and future pain and suffering, and reasonable attorneys' fees. See also Production of Documents.**

6.   Identify all doctors, psychiatrists, psychologists, counselors, health care institutions, clinics, hospitals, therapists, or the like that Plaintiff has seen, been evaluated by, consulted with, received services from or been admitted to since 2008 and for each individual or institution state:

a.   Name and complete address of said individual or institution, including, if naming an individual, the name of the institution in which the doctors, psychiatrists, psychologists, counselors, and therapists are employed, as well as zip code information.

b.   For ever individual and institution named above, state the type of services or treatment rendered.

c.   For every individual and institution named above, state the type of services or treatment rendered.

d.   For each individual and institution listed above, please execute an authorization for the release of medical information attached to Defendant's Requests for Production of Documents to Plaintiff Set One. Please provide Plaintiff's date of birth and social security number and complete the address portion of the form for each individual and institution.

ANSWER:   **Plaintiff objects to this interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory because it seeks information protected by privilege or the work-product doctrine. Plaintiff also objects to this interrogatory because it is premature and vague. Plaintiff understands the request is continual, and will furnish the information requested, upon completion in accordance with the Court's scheduling order. Subject to and without waiving any objections Plaintiff will produce the information relative to this Interrogatory to the Court under seal pursuant to the Court's Order issued April 25, 2013, after the Rule 16 Conference.**

7. Describe all income, commissions, earnings or monetary payments from any source which Plaintiff received since and including 2010, including the source of these payments or income, the dates of receipt, and the total amount of payment from each source.

ANSWER: **Plaintiff objects to this interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory because it is premature and vague. Plaintiff understands the request is continual, and will furnish the information requested, upon completion in accordance with the Court's scheduling order. Subject to and without waiving any objections Plaintiff will produce the information relative to this Interrogatory to the Court under seal pursuant to the Court's Order issued April 25, 2013, after the Rule 16 Conference.**

8. Identify and describe all written and oral communications which Plaintiff or anyone acting on his behalf, including legal counsel and investigators, ever had with any current or former agent, representative, or employee of Defendant, including any member of the Minnesota Senate or its past or present staff, concerning the matters referenced in the Amended Complaint or Answer in this action. Specifically identify such communication by date, name of the person with whom Plaintiff communicated and that person's job title, as well as the substance of the communication.

ANSWER: **Plaintiff objects to this interrogatory as improper to the extent that it seeks information already in the Defendant's possession, custody, or control. Plaintiff also objects to this interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory because it seeks information protected by the attorney-client privilege and/or the work-product doctrine. Plaintiff objects to this Interrogatory as premature and vague. Plaintiff understands the request is continual, and will furnish the information requested, upon completion in accordance with the Court's scheduling order. Plaintiff also is anticipating calling an actuary to assess Plaintiff's damages. Subject to and without waiving any objections Plaintiff will produce the information relative to this Interrogatory to the Court under seal pursuant to the Court's Order issued April 25, 2013, after the Rule 16 Conference.**

9. Identify and provide the date of the charge or conviction of any crimes with which the Plaintiff has been charged or convicted, include a description of the nature of the action and disposition for each charge or conviction.

ANSWER: **Plaintiff objects to this interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence, and is intended to simply harass, annoy, and impose undue expense upon Plaintiff.**

10.   Since 2002, has Plaintiff been a party to a legal action of any kind (other than New School Corporations, Inc. and Blois Olson vs. Michael Brodkorb and www. MinnesotaDemocratsExposed.com, case No. CX-06-6432, filed in the First Judicial District (Dakota County), State of Minnesota; and University of MN Duluth Financial Collections vs. Michael Brodkorb, 69-S2-96-601708, filed in Conciliation Court, County of St. Louis, City of Duluth), including any action in State or Federal Court, arbitration, or a proceeding before the Minnesota Human Rights Department or EEOC?  If yes, state the nature of the proceeding, the title and file number of the proceeding, including the venue or jurisdiction and the ultimate determination or resolution.

**ANSWER:   Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Subject to and without waiving any objections Plaintiff states as follows:**

**Claim of Michael Brodkorb with the EEOC**
**EEOC Number:  444-2010-00750**

**State of Minnesota v. Michael B. Brodkorb**
**Court file number - 19WS-CR-13-2193**

11.   State your attorneys fees and costs incurred to date, and provide monthly updates.

**ANSWER: Plaintiff objects to this interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory because it seeks information protected by the attorney-client privilege and/or the work-product doctrine.  Plaintiff also objects to this interrogatory because it is premature and vague.**

12.   Identify every person that Plaintiff believes has knowledge of the allegations alleged in the Amended Complaint and specifically state for each person identified the knowledge they have regarding the allegations in the Amended Complaint.

**ANSWER: Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory as improper to the extent that it seeks information already in the Defendant's possession, custody, or control.  Plaintiff also objects to this interrogatory because it seeks information protected by the attorney-client privilege and/or the work-product doctrine.   Plaintiff also objects to this interrogatory because it is premature and vague. Plaintiff understands the request is**

**accordance with the Court's scheduling order. Subject to and without waiving any objections Plaintiff will produce the information relative to this Interrogatory to the Court under seal pursuant to the Court's Order issued April 25, 2013, after the Rule 16 Conference.**

13. State whether and when you have destroyed or deleted any text or email message you exchanged with Amy Koch since February 1, 2012, the date they were destroyed and the reason for destruction.

**ANSWER: Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory as improper to the extent that it seeks information already in the Defendant's possession, custody, or control. Plaintiff also objects to this interrogatory because it seeks information protected by the attorney-client privilege and/or the work-product doctrine.**

Date: 5/8/2013

Michael B. Brodkorb

As to form and objections:

**WALSH & GAERTNER, P.A.**

Dated: 5/8/2013

HELEN R WISENBARGER
NOTARY PUBLIC
State of South Dakota
SEAL

for Michael B Brodkorb hrb
MY COMMISSION EXPIRES: 5/30/2017
Helen R. Wisenbarger

, 2012
Gregory J. Walsh, #0291705
Attorney for Plaintiff
24 East Fourth Street
St. Paul, MN 55101
651-228-9968

**VILLAUME & SCHIEK, P.A.**

Philip G. Villaume, #112859

**continual, and will furnish the information requested, upon completion in accordance with the Court's scheduling order. Subject to and without waiving any objections Plaintiff will produce the information relative to this Interrogatory to the Court under seal pursuant to the Court's Order issued April 25, 2013, after the Rule 16 Conference.**

13. State whether and when you have destroyed or deleted any text or email message you exchanged with Amy Koch since February 1, 2012, the date they were destroyed and the reason for destruction.

**ANSWER: Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, not reasonably calculated to lead to admissible evidence and is intended to simply harass, annoy, and impose undue expense upon Plaintiff. Plaintiff also objects to this interrogatory as improper to the extent that it seeks information already in the Defendant's possession, custody, or control. Plaintiff also objects to this interrogatory because it seeks information protected by the attorney-client privilege and/or the work-product doctrine.**

Date: ____________________

____________________________________
Michael B. Brodkorb

As to form and objections:

**WALSH & GAERTNER, P.A.**

Dated: May 7, 2013

____________________________________
Gregory J. Walsh, #0291705
Attorney for Plaintiff
24 East Fourth Street
St. Paul, MN 55101
651-228-9968

**VILLAUME & SCHIEK, P.A.**

Philip G. Villaume, #112859
Villaume & Schiek, P.A.
Attorney for Plaintiff
BLN Office Park
2051 Killebrew Drive
Bloomington, MN 55424
952-851-9500